United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBER KRISTI MARSH and STACIE EVANS, individually and on behalf of a class of similarly situated persons, | Case No.: 11-cv-05226-YGR |
| | **NOTICE OF TENTATIVE RULINGS AND QUESTIONS FOR HEARING** |
| Plaintiffs, | |
| v. | |
| ZAAZOOM SOLUTIONS, LLC, et al., | |
| Defendants. | |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING TENTATIVE RULINGS AND QUESTIONS FOR THE HEARINGS SCHEDULED ON FEBRUARY 28, 2012 AT 2:00 P.M.

The Court has reviewed the parties' papers and, thus, does not wish to hear the parties re-argue matters addressed in those pleadings. If the parties intend to rely on authorities not cited in their briefs, they are ORDERED to notify the Court and opposing counsel of these authorities reasonably in advance of the hearing and to make copies available at the hearing. If the parties submit such additional authorities, they are ORDERED to submit the citations to the authorities only, with reference to pin cites and without argument or additional briefing. *Cf.* Civ. L.R. 7-3(d). The parties will be given the opportunity at oral argument to explain their reliance on such authority. The Court suggests that associates or of counsel attorneys who are working on this case be permitted to address some or all of the Court's questions contained herein.

There are four pending motions and a request for judicial notice before the Court. The Court addresses each motion in turn.

I.    **Motion to Dismiss Pursuant to F.R.Civ.P. 12(b)(1) and (6) in Response to Second Amended Complaint ("Zaazoom Motion") (Dkt. No. 12)**

Defendants Zaazoom Solutions, LLC, Zaza Pay LLC, and Automated Electronic Processing Systems, Inc. filed the Zaazoom Motion on November 8, 2011.[1]  As to the issue of preemption, the moving parties shall briefly address the following questions:

1. Where has Congress expressed its intent for ROSCA to be the exclusive law for ROSCA-underline{related} state law claims?

2. Field preemption occurs "where the scheme of federal regulation is 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.'"  *Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1028 (N.D. Cal. 2011) (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98, 112 S. Ct. 2374 (1992)); *see Bank of America v. City and County of San Francisco*, 309 F.3d 551, 558 (9th Cir. 2002) ("'mere volume and complexity' of federal regulations demonstrate an implicit congressional intent to displace all state law") (internal citations omitted).  There must be persuasive reasons to imply field preemption—either the nature of the regulated subject matter permits no other conclusion, or Congress has unmistakably so ordained. *Valentine*, 804 F. Supp. 2d at 1028–29 (such preemption arises in only extraordinary circumstances).

   a. How is ROSCA so pervasive or complex such that the most reasonable conclusion is that Congress intended to prohibit states from supplementing it with its own laws?

   b. What requirement(s) do(es) ROSCA impose on third-party sellers other than providing clear and conspicuous disclosures to consumers regarding material terms of transactions?  *See* 15 U.S.C. §§ 8402–8403.  Explain how ROSCA seeks to substantively require more than transparency to consumers.

---

[1] Defendants First Bank of Delaware, Jack Henry & Associates, Data Processing Systems, LLC, and First National Bank of Central Texas have joined in the Zaazoom Motion, either by separate motion or joinder.  Dkt. Nos. 53, 83–84, 86, 88–89 & 91.  Defendants Moe Tassoudji and Bill Cuevas are the only defendants that did not join the Zaazoom Motion.

United States District Court
Northern District of California

United States District Court
Northern District of California

3.  A conflict arises when "compliance with both federal and state regulations is a physical impossibility." *Bank of America*, 309 F.3d at 558 (internal citations omitted). Similarly, there may be a conflict where "state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (internal citations omitted).

a.  How do the State Claims[2] present an obstacle to the prohibitions set forth in ROSCA at sections 8402–8403?  Do not address the existence of a conflict to the extent that Plaintiffs cannot comply with ROSCA's enforcement provisions because they are not the Federal Trade Commission or an Attorney General.

b.  How is it "physically impossible" for *defendants* to comply with both federal and state law?

c.  How do the State Claims risk interfering with the efforts or purpose of ROSCA?

d.  If there is no identifiable risk of interference, is there any support for the argument that Congress would not want to provide an additional layer of consumer protection that complements ROSCA?  *See Wyeth v. Levine*, 555 U.S. 555, 578, 129 S. Ct. 1187 (2009).

With respect to the arguments for dismissal of the first, second, fourth, and fifth claims, Plaintiffs have offered to amend the SAC to clearly allege they were in California when they entered their personal information into the payday loan websites and when they suffered resultant harm.  Opp. (Dkt. No. 31) at 13 n.2.  The Court is inclined to allow Plaintiffs to amend their complaint to clarify these issues.  The Court refers Plaintiffs to the tentative ruling below regarding the Arizona claim as it relates to First Bank of Delaware and the defendants that joined that motion.

## II.   Motion to Dismiss Pursuant to F.R.Civ. P. 12(b)(2) (Dkt. No. 14)

As to Defendants Moe Tassoudji's and Bill Cuevas' Motion to Dismiss, the Court is inclined to grant the motion and to dismiss Messrs. Tassoudji and Cuevas ("Individual Defendants") from this

---

[2] For the purposes of these questions, the phrase "State Claims" refers to the first, second, fourth, and fifth causes of action in the Second Amended Complaint.

1    action.  This dismissal would be without prejudice to Plaintiffs seeking leave to amend the complaint

2    and add them as parties, *if* Plaintiffs later obtain facts indicating such amendment is proper.  One

3    required element for specific personal jurisdiction is that Individual Defendants: purposefully directed

4    their activities or consummated some transaction with the forum or resident thereof; or performed

5    some act by which they purposefully availed themselves of the privilege of conducting activities in

6    the forum.  *Kremen v. Cohen*, No. 5:11-cv-05411 LHK, 2012 WL 44999, at *6 (N.D. Cal. Jan. 7,

7    2012).  Under the Ninth Circuit test for the element of purposeful direction, the defendant must

8    allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing

9    harm that the defendant knows is likely to be suffered in the forum state.  *Id.* at *7 (citing *Yahoo! Inc.*

10   *v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006)).  Plaintiffs' evidence fails to

11   establish that the Individual Defendants themselves have each committed an intentional act expressly

12   aimed at California to warrant the exercise specific jurisdiction.

13        The Second Amended Complaint ("SAC") is devoid of any allegations of a specific act,

14   instead alleging, for example, that Individual Defendants were principals and members of companies

15   that operated the scam and that they actively participated in that misconduct.  SAC ¶¶ 30–32, 69; *see*

16   *also* Opp. (Dkt. No. 32) at 5 (they "had to have known" that California residents were using the

17   payday loan websites).  Individual Defendants' roles in marketing of websites at issue, collecting

18   personal information through those websites, and designing the websites are acts that occurred by

19   virtue of their roles with defendant-companies.  Opp. at 11–14.  In addition, the volumes of exhibits

20   submitted in support of Plaintiffs' Opposition show only that the Individual Defendants either held

21   ownership or member status with defendant-companies, signed documents on behalf of the

22   companies, or were performing their duties on behalf of the companies.  "[A] person's mere

23   association with a corporation that causes injury in the forum state is not sufficient in itself to permit

24   that forum to assert jurisdiction over the person."  *Davis v. Metro Productions, Inc.*, 885 F.2d 515,

25   520 (9th Cir. 1989) (further stating that "there must be a reason for the court to disregard the corporate

26   form"); *see HealthMarkets, Inc. v. Superior Court*, 171 Cal. App. 4th 1160, 1169–70 (Cal. Ct. App.

27   2009) (mere ownership of a subsidiary does not subject a non-resident parent company to specific

28   personal jurisdiction based on the subsidiary's forum contacts; a separate purposeful availment

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1    analysis must be performed).  Without more evidence that Individual Defendants purposefully

2    directed activities toward California, other than conduct performed on behalf of their companies, the

3    Court is inclined to dismiss them without prejudice.

4    **III.    Motion to Dismiss the Second Amended Complaint, or, in the Alternative, for a More**

5           **Definite Statement  ("Bank Motion") (Dkt. No. 53)**

6           Defendant First Bank of Delaware filed this motion on December 9, 2011.[3]  The Court is

7    inclined to rule as follows:

8           A.  Negligence (Lack of Duty)

9           The Banks seek dismissal of all claims because they owe no duty to Plaintiffs and there is no

10   privity between the parties.  However, the Court views this argument as relating more specifically to

11   the negligence claim.   In narrow factual circumstances, courts have found that banks owe a duty of

12   care toward non-depositors where specific allegations of "suspicious circumstances" warrant such a

13   finding.  *Sun 'N Sand Inc. v. United California Bank*, 21 Cal.3d 671 (1978); s*ee also Chazen v.*

14   *Centennial Bank*, 61 Cal. App. 4th 532, 544–45 (Cal. Ct. App. 1998) (duty of care may be created

15   where plaintiffs allege specific actions presenting a foreseeable risk of harm to third parties).  With

16   respect to the Banks' arguments regarding the claim of negligence, the Court is inclined to grant the

17   motion to dismiss the claim but allow Plaintiffs leave to amend to identify with more specificity the

18   "suspicious circumstances" that may create a duty between Plaintiffs and the Banks.  If Plaintiffs

19   allege there is a statutory duty imposed on defendants, the amended complaint must clearly state the

20   statutory basis of that duty and provide sufficient allegations regarding the same.

21          B.  California Business and Professions Code section 17200, *et seq.*

22          First, the Court is inclined to deny the motion on the ground that Plaintiffs have no standing.

23   *Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1554 (Cal. Ct. App. 2011) (elements of

24   standing); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011) ("lost money or property—

25   economic injury—is itself a classic form of injury in fact").

26

27   _____

     [3] Defendant First National Bank of Central Texas filed a joinder in the Bank Motion.  Dkt. Nos. 86 & 88.  For
28   the purposes of the Bank Motion, the Court will refer to these moving defendants as "Banks."  Defendant Data
     Processing Systems has joined the Bank Motion with respect to the arguments for dismissal of the third claim
     (Wiretap Act).  Dkt. Nos. 83–84 & 91.

United States District Court
Northern District of California

Second, the Court agrees that common law fraud and a fraudulent practice under the UCL are distinct; but where a plaintiff chooses to allege fraudulent conduct and relies on that course of conduct as the basis for its UCL claim, the claim is grounded in fraud and "the pleading of that claim as a whole must satisfy the particularity requirements of Rule 9(b)."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003).  While Plaintiffs may have otherwise been required to only plead the "existence of a duty to disclose," Plaintiffs elected to allege a rather elaborate scam involving multiple groups of actors who each served their own role in a course of conduct intended to deceive consumers.  *See Kilgore v. Keybank*, 712 F. Supp. 2d 939, 952 (N.D. Cal. 2010).  As such, Plaintiffs must allege this fraud with particularity.  Plaintiffs must further: clarify their allegations against all defendants and the alleged actions of each defendant that constitute an unfair business act or practice; identify whether the theory of liability against each defendant is direct or for aiding and abetting; identify whether the predicate business act or practice is an unfair, unlawful, and/or fraudulent practice; and specifically identify all statutes underlying the "unlawful" prong under section 17200.  Accordingly, the Court is inclined to grant the dismissal with leave to amend to the extent that Plaintiffs have not pled with sufficient particularity the allegations supporting the "fraudulent" prong of section 17200.

Third, the Court is further inclined to deny the Banks' argument that restitution by the Banks is non-restitutionary disgorgement under *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003).  The Banks have not provided any direct authority for the proposition that a bank's holding of  Plaintiffs' money in another holder's account cannot be considered a taking of funds as a matter of law.  The Court currently has no information regarding the identity of the defendant actually holding Plaintiffs' funds, and as Plaintiffs amend the complaint and conduct discovery, that identity may become apparent.

With regard to Plaintiffs' ability to amend the SAC with sufficient particularity, the Court will hear argument from the parties regarding whether limited and targeted discovery from Defendants is appropriate.

United States District Court
Northern District of California

1    C.  Conversion

2        The Court is inclined to deny the motion to dismiss the conversion claim.  To establish a cause

3   of action for conversion, the plaintiff must establish: (1) ownership or right to possession of the

4   property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of

5   property rights; and (3) damages.  *Brantley v. Boyd*, No. 07-6139 SC, 2011 WL 1225630, at *4 (N.D.

6   Cal. Apr. 1, 2011) ("Conversion is an intentional tort that consists of the wrongful exercise of

7   dominion or control over the property of another.").  Plaintiffs have sufficiently alleged facts

8   satisfying these elements.

9    D.  Arizona Consumer Protection Statute (A.R.S. § 44-1521, *et seq.*)

10       The Court is inclined to grant the motion to dismiss the claim brought under A.R.S. section

11  44-1521, *et seq.* ("Arizona Statute").  Plaintiffs have failed to identify any connection between

12  Arizona, Plaintiffs, and the Banks.[4]  Moreover, the elements of a claim under the Arizona Statute are

13  "a false promise or misrepresentation made in connection with the sale or advertisement of

14  merchandise and the hearer's consequent and proximate injury."  *Dunlap v. Jimmy GMC of Tuscon,*

15  *Inc.*, 136 Ariz. 338, 342, 666 P.2d 83 (Ariz. Ct. App. 1983); A.R.S. § 44-1522.  As defined in the

16  Arizona Statute, the Court questions whether Plaintiffs can state a claim against the Banks for

17  deceptive or fraudulent conduct "in connection with the sale or advertisement of any merchandise."

18  *See* A.R.S. §§ 44-1522 & 44-1521(1), (5) & (7).  No relationship is alleged between Plaintiffs and the

19  Banks.  Indeed, the only conceivable merchandise or services allegedly offered to Plaintiffs are those

20  provided through the payday loan websites.  Plaintiffs will be permitted to address whether the Court

21  should grant leave to amend.

22       Given that the Delaware Consumer Fraud Act, 6 Del. C. section 2511, *et seq.* has a similar

23  requirement that the deceptive or fraudulent conduct be "in connection with the sale, lease, or

24  advertisement of any merchandise," Plaintiffs will be permitted to address whether they can amend

25  the complaint to sufficient allege a claim under the Delaware statute.  *See* 6 Del. C. § 2513.

26

27  [4] While Data Processing Services ("DPS") joined the Bank Motion regarding the Wiretap Act claim
    only, it also joined the Zaazoom Motion, which addressed the Arizona claim. Dkt. No. 84.  The
28  Court's inclination to dismiss the Arizona claim against the Banks applies equally to DPS.  *See id.* at
    3 (DPS neither resides nor conducts business in Arizona).

United States District Court
Northern District of California

E.   Wiretap Act (18 U.S.C § 2510, *et seq.*)

The Court is inclined to grant the Banks' and DPS's motion to dismiss the Wiretap Act claim. As the terms "intercept" and "electronic, mechanical, or other device" are defined in 18 U.S.C. section 2510(4) & (5), respectively, Plaintiffs have not sufficiently alleged that an "interception" occurred. *See Crowley v. Cybersource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001) (holding no interception because the information was not acquired using a device other than the drive or server on which the e-mail was received).  Plaintiffs only summarily conclude that after entering their personal information on the payday loan websites, "the Zaazoom Defendants intercepted [the] personal information from the Payday Loan Website." SAC ¶¶101–02, 113–14; *see also id.* ¶ 161; Opp. (Dkt. No. 60) at 23.  Plaintiffs must, and have not, alleged the device used to intercept the information from the payday loan website.  *Crowley*, 166 F. Supp. 2d at 1268 ("The Court need not accept a conclusory allegation that conduct alleged in the complaint constituted an interception under the Wiretap Act."); 18 U.S.C. § 2510(4).  Plaintiffs are incorrect in arguing that "captur[ing] or redirect[ing]" a communication in any way suffices under the Wiretap Act.  Opp. at 22.  Further, Plaintiffs' contention that any consent to the interception is waived where it was made for the purpose of committing a criminal or tortious act overlooks the fact that there is no interception to begin with.  *Id.* at 22–23. Plaintiffs will be permitted to make a proffer as to what device exists which would allow this cause of action to proceed and therefore whether the Court should grant leave to amend.

F.   Motion for a More Definite Statement

Based on the Court's tentative rulings on the substantive issues raised in the Bank Motion, the Court is inclined to deny the Motion for a More Definite Statement as moot.

**IV.   Request for Judicial Notice (Dkt. No. 61)**

As to Plaintiff's Request for Judicial Notice in Support of Opposition to the Bank Motion, the Court denies the request under Fed. R. Evid. 401 & 403.  Plaintiffs do not allege a statutory duty of care or statutory negligence in the SAC, and—from what the Court can tell—raises the statutory negligence from for the first time in its Opposition.  *Compare* Opp. (Dkt. No. 60) at 12–13 *with* SAC ¶¶ 132, 183–188.  As such, the Court finds this request relates to matter that is not relevant to the current allegations in SAC.

V.     **Motion to Strike Portions of the Second Amended Complaint ("Motion to Strike")**
       **(Dkt. No. 54)**

Defendant First Bank of Delaware filed the Motion to Strike on December 9, 2011.[5]  The Court is inclined to deny the motion as moot, given that the Court's tentative ruling will allow leave to amend a number of claims.

VI.    **Conclusion**

If the moving parties wish to submit to the Court's tentative ruling on any of the above-referenced issues, they must notify the Court and all parties via ECF no later than 5:00 p.m. on Monday, February 27, 2012.  The Court reminds the parties that oral argument should not be used to re-argue matters already addressed in their briefs and encourages parties to use the limited time available to address the questions the Court has posed.

IT IS SO ORDERED.

Dated: February 24, 2012

_____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE

---

[5] Defendant First National Bank of Central Texas joined in the Motion to Strike.  Dkt. Nos. 86 & 88.