UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBER KRISTI MARSH and STACIE EVANS, individually and on behalf of a class of similarly situated persons,<br><br>     Plaintiffs,<br><br>     vs.<br><br>ZAAZOOM SOLUTIONS, LLC, et al.,<br><br>     Defendants. | Case No.: C-11-05226-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS, AND DENYING MOTION TO STRIKE AND REQUEST FOR JUDICIAL NOTICE** |

Plaintiffs Amber Kristi Marsh ("Marsh") and Stacie Evans ("Evans") bring this class action against Defendants Zaazoom Solutions, LLC; Zaza Pay LLC; MultiECom, LLC; Online Resource Center, LLC; Moe Tassoudji; Bill Cuevas; First Bank of Delaware; First National Bank of Central Texas; Jack Henry & Associates, Inc.; Automated Electronic Checking, Inc.; and Data Processing Systems, LLC (collectively, "Defendants").[1]  (Dkt. No. 1.)  In the SAC, Plaintiffs allege claims for: (1) unfair business practices in violation of California Business and Professions Code section 17200, *et seq.*; (2) consumer fraud under Arizona Revised Statute section 44-1521, *et seq.*; (3) violation of the Wiretap Act, 18 U.S.C. section 2510, *et seq.*; (4) conversion; and (5) negligence.  While the first four claims are asserted against all Defendants, the fifth claim for negligence is asserted against the Processors and Depository Banks.

---

[1]  The Second Amended Complaint ("SAC") categorizes Defendants into three groups: (1) the "Zaazoom Defendants," comprised of Zaazoom Solutions, LLC, Zaza Pay LLC, MultiECom, LLC, Online Resource Center, LLC, Moe Tassoudji, and Bill Cuevas; (2) the "Depository Banks," comprised of First Bank of Delaware and First National Bank of Central Texas; and (3) the "Processors," comprised of Jack Henry & Associates, Inc., Automatic Electronic Checking, Inc., and Data Processing Systems, LLC.  SAC ¶¶ 1–2. SunFirst Bank has been dismissed from this action.  (Dkt. No. 58.)

United States District Court
Northern District of California

United States District Court
Northern District of California

The following four motions and a request for judicial notice are pending before the Court:

1. Motion to Dismiss Pursuant to F.R.Civ.P. 12(b)(1) and (6) in Response to Second Amended Complaint filed by Defendants Zaazoom Solutions, LLC; Zaza Pay LLC; and Automated Electronic Processing Systems, Inc. ("Zaazoom Motion"). (Dkt. No. 12.) Defendants MultiECom, LLC; Online Resource Center, LLC; First Bank of Delaware; Jack Henry & Associates, Inc.; Data Processing Systems, LLC; and First National Bank of Central Texas joined in the Zaazoom Motion. (Dkt. Nos. 37, 53, 83–84, 86, 88–89 & 91.)[2]

2. Motion to Dismiss Pursuant to F.R.Civ.P. 12(b)(2) filed by Defendants Moe Tassoudji ("Tassoudji") and Bill Cuevas ("Cuevas") ("Motion to Dismiss Individual Defendants"). (Dkt. No. 14.)

3. Motion to Dismiss the Second Amended Complaint, or, in the Alternative, for a More Definite Statement filed by Defendant First Bank of Delaware ("Bank Motion"). (Dkt. No. 53.) Defendant First National Bank of Central Texas joined in the Bank Motion. (Dkt. Nos. 86 & 88.) Defendant Data Processing Systems joined the Bank Motion with respect to the arguments for dismissal of the third claim (Wiretap Act). (Dkt. Nos. 83–84 & 91.)

4. Plaintiffs' Request for Judicial Notice in Support of Opposition to Defendant First Bank of Delaware's Motion to Dismiss Second Amended Complaint ("Request for Judicial Notice"). (Dkt. No. 61.)

5. Motion to Strike Portions of Plaintiffs' Second Amended Complaint filed by Defendant First Bank of Delaware ("Motion to Strike"). (Dkt. No. 54.) Defendant First National Bank of Central Texas joined in the Motion to Strike. (Dkt. Nos. 86 & 88.)

Having carefully considered the papers submitted and the pleadings in this action, oral argument at the hearing held on February 28, 2012, and for the reasons set forth below, the Court hereby:

---

[2] In its discussion of each motion, the Court uses the term "Moving Defendants" to refer to the defendant(s) that filed a particular motion *and* any defendants that have joined in such motion.

1.   **GRANTS IN PART** and **DENIES IN PART** the Zaazoom Motion **WITH LEAVE TO AMEND**;

2.   **GRANTS** the Motion to Dismiss Individual Defendants **WITHOUT PREJUDICE** to Plaintiffs seeking leave to amend to add Tassoudji and Cuevas as defendants if Plaintiffs later obtain facts indicating such amendment is proper;

3.   **GRANTS** the Bank Motion **WITHOUT LEAVE TO AMEND** the first, second, third, and fourth claims; **GRANTS** the Bank Motion **WITH LEAVE TO AMEND** the fifth claim for negligence; and **DENIES** the Motion for a More Definite Statement as moot;

4.   **DENIES** Plaintiffs' Request for Judicial Notice; and

5.   **DENIES** the Motion to Strike as moot.

# I.   FACTUAL AND PROCEDURAL BACKGROUND

This action was removed from San Francisco County Superior Court on October 26, 2011. (Dkt. No. 1.)  At that time, the operative complaint was the Second Amended Complaint.  Plaintiffs allege that Zaazoom Defendants operate an internet scam in which remotely-created checks ("RCCs") are created to pay for monthly membership fees for coupon services using Plaintiffs' personal and banking information entered on websites for the purpose of obtaining payday loans ("Payday Loan Websites").  SAC ¶¶ 1 & 58–65.  Plaintiffs allege that they did not consent to the sharing or use of their personal and banking information to sign up for the coupon memberships, and that the creation of RCCs was done without their knowledge or authorization.  *Id.*  ¶¶ 61–65.  Zaazoom Defendants allegedly operate the Payday Loan Websites and are affiliated with the various online coupon services.  *Id.* ¶¶ 55–60.  The actual drafting of the RCCs for coupon services, which are made payable to the Zaazoom Defendants, is done with the knowing and material assistance of the Processors.  *Id.* ¶¶ 2, 10 & 72–86.  Further, Plaintiffs allege that, with the material assistance and knowledge of the scam (or in reckless disregard of the same), the Depository Banks authenticated the RCCs and sent the checks for settlement with Plaintiffs' banks, and that the Zaazoom Defendants subsequently received the settled funds and deposited them in their bank accounts.  *Id.* ¶¶ 11–13, 66–68 & 87–97.

Named Plaintiffs Marsh and Evans are California residents who have fallen victim to the scam alleged above.  *Id.* ¶¶ 39–40 & 98–126.  The SAC is brought on behalf of "all persons: a) whose checking accounts were drawn on by way of remotely created checks created by the Zaazoom

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Defendants for . . . online coupon or discount service[s] [as specified in the SAC] operated by the

2  Zaazoom Defendants after May 6, 2007, <u>and</u> b) who never consented to the creation of a remotely

3  created check to pay for the Zaazoom Defendants' services" for those online coupon or discount

4  services specified in the SAC.  SAC ¶ 127.  In addition, Plaintiffs bring this action on behalf of a sub-

5  class of all California residents from the larger class.  *Id.* ¶ 128.

6      In the first claim for violation of Cal. Bus. & Prof. Code section 17200, *et seq.* ("17200

7  Claim"), Plaintiffs allege that the process by which Zaazoom Defendants obtained Plaintiffs' personal

8  and banking information from the Payday Loan Websites, registered them for coupon membership,

9  drafted RCCs drawn on their checking accounts, and deposited the same in Zaazoom Defendants'

10  bank accounts—all without Plaintiffs' authorization or consent—constitutes unlawful, unfair, and/or

11  fraudulent business acts.  *Id.* ¶¶ 134–143.  The Processors and Depository Banks are alleged to have

12  violated Section 17200 by providing substantial assistance to the Zaazoom Defendants in the

13  commission of this misconduct and either knew about or acted with reckless disregard of this

14  misconduct.  *Id.* ¶¶ 140–142.

15      In the second claim for violation of Arizona Revised Statute ("A.R.S.") section 44-1521, *et*

16  *seq.* ("Arizona Statute" and "Arizona Claim"), Plaintiffs allege that the above-described misconduct

17  involved deception, deceptive acts and practices, fraud, false pretenses, false promises,

18  misrepresentations, concealment, and the suppression or omission of material facts with the intent that

19  others rely on such concealment.  *Id.* ¶ 154.  Plaintiffs further allege that the misconduct occurred in

20  connection with the sale or advertisement of objects, wares, goods, intangibles, and services as

21  defined in A.R.S. section 44-1521, and that the Zaazoom Defendants (except for Tassoudji and

22  Cuevas) are LLCs with principal places of business in Arizona.  *Id.* ¶¶ 20–21, 24, 27 & 154.

23  Defendants Tassoudji and Cuevas allegedly run the day-to-day operations of Zaazoom Defendant-

24  companies and make all significant strategic decisions for them.  *Id.* ¶¶ 30–31 & 69.

25      In the third claim for violation of 18 U.S.C. section 2510, *et seq.* ("Wiretap Act Claim"),

26  Plaintiffs allege that their submission of personal and banking information to the Payday Loan

27  Websites constituted "electronic communications" under the Act and that the Zaazoom Defendants

28  "intercepted" said information from Payday Loan Websites to draft the RCCs for the coupon

4

United States District Court
Northern District of California

1   websites.  *Id.* ¶¶ 158–65.  The Processors and Depository Banks allegedly provided substantial

2   assistance to Zaazoom Defendants and either knew or acted in reckless disregard of the alleged

3   misconduct.  *Id.* ¶¶ 166–67.  Plaintiffs also allege that "Defendants intentionally used and endeavored

4   to use the contents of an electronic communication, knowing or having reason to know that the

5   information was obtained through the interception of an electronic communication in violation of 18

6   U.S.C. [section] 2511," and that "Defendants intercepted and used Plaintiffs' . . . electronic

7   communications for the purpose of committing criminal and tortious acts in violation of the laws of

8   the United States and other states."  SAC ¶¶ 168–69.

9        In the fourth claim for conversion and aiding and abetting conversion ("Conversion Claim"),

10  Plaintiffs allege that, without their authorization or consent, money was wrongfully transferred from

11  their checking accounts to the Zaazoom Defendants' bank accounts through RCCs.  *Id.* ¶¶ 174–76 &

12  179–180.  The specific, identifiable sums of money taken were done so with the substantial assistance

13  of the Processors and Depository Banks, and with their knowledge or in reckless disregard of

14  Zaazoom Defendants' misconduct.  *Id.* ¶¶ 177–78 & 181.

15       In the fifth claim for negligence against the Processors and Depository Banks ("Negligence

16  Claim"), Plaintiffs allege that these Defendants "owed a duty of reasonable care to Plaintiffs and the

17  other Class members, where they deposited and collected checks purportedly drawn on the Class

18  members' accounts."  *Id.* ¶ 184.  In so doing, they "breached their duty of care when they provided

19  substantial assistance to the Zaazoom Defendants in their commission of the above-described

20  misconduct" and "knew or should have known that their assistance . . . was likely to cause injury to

21  Plaintiffs and the other Class members, as the risk to the Class members was apparent."  *Id.* at ¶¶ 186–

22  87.

23       Moving Defendants filed their various motions on November 8, 2011 and December 9, 2011.

24  (Dkt. Nos. 12, 14, 53 & 54.)  Plaintiffs filed oppositions to each motion (Dkt. Nos. 31, 32, 60 & 62)

25  and Moving Defendants filed their replies in turn (Dkt. Nos. 38, 51, 65 & 66).  Following the various

26  joinders filed following a Case Management Conference on February 8, 2012, Plaintiffs filed a

27  collective opposition to those joinders.  (Dkt. Nos. 83–84, 86, 88–89 & 91–94; *see also* Dkt. No. 37.)

28

1    In advance of the hearing on the pending motions, which occurred on February 28, 2012, the

2    Court issued a Notice of Tentative Rulings and Questions for Hearing.  (Dkt. No. 95.)

3    **II.      DISCUSSION**

4         **A.      Zaazoom Motion (Dkt. No. 12)**

5              **1.      Summary of Zaazoom Motion**

6              In the Zaazoom Motion, Moving Defendants primarily argue that the first, second,

7    fourth, and fifth claims are preempted by the Restore Online Shoppers' Confidence Act ("ROSCA"),

8    15 U.S.C. section 8401, *et seq*.[3]  Zaazoom Motion at 5–7.  By enacting ROSCA, Moving Defendants

9    argue that "federal law preempts actions by the class members to enforce state statutes governing []

10   internet schemes" such as where websites "use[] information supplied online from class members to

11   apply for payday loans to also register (and process the payments for) class members to subscribe for

12   online coupon services without the customer's permission." *Id.* at 4.  Moving Defendants interpret

13   Sections 8404 and 8405, which provide for enforcement of ROSCA by the Federal Trade Commission

14   ("FTC") and State attorneys general ("State AGs"), respectively, as evidencing Congressional intent

15   to prohibit private citizens from maintaining actions under ROSCA or state laws for conduct that falls

16   under ROSCA's purview.  *Id.* at 4 & 7.[4]  Per Moving Defendants, enforcement regarding such

17   internet schemes must fall to the federal government and/or State AGs.  *Id.*  Moving Defendants also

18   argue that the Arizona Claim is preempted because Arizona's consumer protection laws do not apply

19   to advertisements "which [are] subject to and compl[y] with the rules and regulations of, and the

20   statutes administered by the [FTC]."  *Id.* at 9.

21             In opposition, Plaintiffs contend that ROSCA neither expressly nor impliedly (through field or

22   conflict preemption) preempts the State Claims.  (Dkt. No. 31 ("Opp. to Zaazoom Motion") at 5–12.)

23   Noting that a presumption against preemption exists, Plaintiffs further contend that "[c]ourts have

24

25   [3] Moving Defendants in the Zaazoom Motion do not seek dismissal of the third claim (Wiretap Act Claim).
     For the purposes of the preemption issues in the Zaazoom Motion, the Court will refer to the first, second,

26   fourth, and fifth claims in this action as the "State Claims."

27   [4] While they generally argue that preemption applies, Moving Defendants specifically argue that the State
     Claims asserted by Plaintiff Marsh are preempted because she did not apply for her payday loan until after

28   ROSCA took effect on December 29, 2010.  Zaazoom Motion at 7.  Because the Court finds that ROSCA does
     not preempt Plaintiffs' State Claims, the timing of Plaintiffs' claims is not relevant here.

United States District Court
Northern District of California

routinely found that federal laws, which do not include private rights of action, do not preempt otherwise consistent state laws that do provide a right of action," including "federal statutes without private rights of action as predicates for [S]ection 17200 claims." *Id.* at 6 & 10. Moreover, Plaintiffs argue that Congress did not intend to occupy the field of consumer protection, which has been "traditionally regulated concurrently by both the states and the federal government," and that no actual conflict between ROSCA and the State Claims exists. *Id.* at 8–9.

In their Reply, Moving Defendants emphasize that ROSCA was intended to "address the national problem of the unauthorized use of confidential consumer information obtained over the [i]nternet to sell products to consumers without their express permission" and, in doing so, intended to occupy the field of internet scams. (Dkt. No. 38 ("Zaazoom Reply") at 2 & 4.) In addition, they assert that "ROSCA is not silent" on the issue of preemption because "enforcement is entrusted only to the federal government and to state attorneys general, with federal approval, as long as there is no pending federal enforcement action." *Id.* at 3. Finally, Moving Defendants contend that the State Claims "do conflict with ROSCA" because Plaintiffs do not allege they are the FTC or a State AG. *Id.* at 4.

Moving Defendants' sole non-preemption argument is that the State Claims fail under Rule 12(b)(6) because the SAC does not allege where Plaintiffs' actions took place. Zaazoom Motion at 8. Plaintiffs respond that to the extent there is ambiguity where they were when their banking information was misappropriated, they are prepared to amend the complaint to state they were in California. Opp. to Zaazoom Motion at 13 & n.2. Moving Defendants do not contest Plaintiffs' ability to amend. Zaazoom Reply at 4.

### 2.     Preemption Analysis

#### a.     General Preemption Principles

Preemption is fundamentally a question of Congressional intent. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). Federal law may preempt state law in three ways:

> First, Congress may preempt state law by so stating in express terms. Second, preemption may be inferred when federal regulation in a particular field is 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.' . . . Third, preemption may be implied when state law actually conflicts with federal law.

United States District Court
Northern District of California

1   *Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1028 (N.D. Cal. 2011) (quoting *Bank of America v.*

2   *City and County of San Francisco*, 309 F.3d 551, 558 (9th Cir. 2002)) (alteration in original).  In

3   analyzing the issue, courts begin with the assumption that unless a "clear and manifest purpose of

4   Congress" exists, federal acts should not supersede the historic police powers of the States.  *Wyeth*,

5   555 U.S. at 565; *cf Bank of America*, 309 F.3d at 558 (no presumption when the State regulates in an

6   area where there has been a history of significant federal presence).  Preemption is express where

7   Congress has considered the issue of preemption and included in the enacted legislation a provision

8   explicitly addressing that issue.  *Valentine*, 804 F. Supp. 2d at 1028 (quoting *Cipollone v. Liggett*

9   *Group*, 505 U.S. 504, 517 (1992)).

10          In the absence of explicit preemptive language, Congressional intent to preempt can be

11   implied under two scenarios.  First, field preemption occurs "where the scheme of federal regulation

12   is 'so pervasive as to make reasonable the inference that Congress left no room for the States to

13   supplement it.'"  *Valentine*, 804 F. Supp. 2d at 1028 (quoting *Gade v. Nat'l Solid Wastes Mgmt.*

14   *Ass'n*, 505 U.S. 88, 98 (1992).  Field preemption should not be found in the absence of persuasive

15   reasons—either that the nature of the regulated subject matter permits no other conclusion, or that,

16   without question, Congress has so ordained.  *Valentine*, 804 F. Supp. 2d at 1028–29 (such preemption

17   arises in only extraordinary circumstances); *see Bank of America*, 309 F.3d at 558 ("'mere volume

18   and complexity' of federal regulations demonstrate an implicit congressional intent to displace all

19   state law") (internal citations omitted).

20          Second, conflict preemption arises when "compliance with both federal and state regulations is

21   a physical impossibility."  *Id.* (internal citations omitted).  Conflict preemption may also exist where

22   "state law 'stands as an obstacle to the accomplishment and execution of the full purposes and

23   objectives of Congress.'"  *Id.* (internal citations omitted).  Showing preemption by impossibility is a

24   "demanding defense."  *Wyeth*, 555 U.S. at 573.

25                          **b.     Express Preemption**

26          ROSCA became effective on December 29, 2010.  The language of ROSCA

27   itself does not expressly indicate that Congress considered the issue of preemption.  Nor did it

28   explicitly address the issue.  *See Valentine*, 804 F. Supp. 2d at 1028.  Further, the parties have not

1   provided the Court (nor has the Court located) any legislative history to support a finding of express

2   preemption.  The ROSCA enforcement provisions at 15 U.S.C. sections 8404 and 8405 speak only to

3   the FTC and the State AGs' abilities (respectively) to enforce ROSCA itself—they do not speak to

4   non-ROSCA claims brought under state law.  While the Congressional findings in ROSCA itself

5   express a generalized concern that internet consumers were being misled by third-party sellers about

6   additional charges after making an initial purchase, the conclusion does not necessarily follow that,

7   through ROSCA, Congress sought to: (1) define the sole legal metric upon which consumers could

8   bring claims; or (2) foreclose all state actions in those cases, regardless of the claim asserted.  *See*

9   Zaazoom Reply at 3.  To the contrary, such an interpretation undermines the Congressional concern.

10   Based on these enforcement provisions and the statement of Congressional findings in ROSCA, the

11   Court discerns neither a "clear" nor "manifest" purpose of Congress to preempt the non-ROSCA State

12   Claims in this action.  *Wyeth*, 555 U.S. at 565; *Bank of America*, 309 F.3d at 558 (presumption against

13   preemption).[5]

### c.       Field Preemption

15            To find field preemption, a Court must determine whether the scheme of

16   federal regulation is so pervasive as to make reasonable the conclusion that Congress sought to leave

17   no room for states to supplement it.  *Valentine*, 804 F. Supp. 2d at 1028 (quoting *Gade*, 505 U.S. at

18   98).  Moving Defendants contend that Congress has enacted a "comprehensive statutory scheme to

19   address [i]nternet fraud" and "sought to occupy the field of [i]nternet scams by which consumers are

20   tricked into purchases they did not authorize."  Zaazoom Reply at 2 & 4.

21            Both Moving Defendants and Plaintiffs have focused on the 17200 Claim and consumer

22   protection statutes in their arguments regarding field preemption.  Moving Defendants urge that

23   Congress left no room for state law to supplement federal law to the extent that the former provides a

---

[5] Moving Defendants' argument that Congress knew how to write a provision for a private right of action (and could have if it wanted to) can be equally applied to the fact that it chose *not to* expressly draft a preemption clause.  *Consumer Justice Center v. Olympian Labs, Inc.*, 99 Cal. App. 4th 1056, 1059 (Cal. Ct. App. 2002) ("It bears remarking . . . that Congress knows how to write a preemption clause if it wanted to.  One of the most famous is found in the federal retirement and pension laws (ERISA).");  *cf. Wyeth*, 555 U.S. at 575 ("silence on the issue" where Congress is aware of state tort litigation can be "powerful evidence" that it did not intend for federal law to preempt state law).  Given that this Court should not find preemption unless the purpose of Congress to preempt was "clear and manifest," the Court believes that the lack of inclusion of a provision addressing either a private right of action or preemption weighs against finding preemption.

United States District Court
Northern District of California

1   private right of action and the latter does not.  Preliminarily, the Court notes that consumer protection

2   laws fall within the States' historic police powers to protect the health and welfare of their citizens.

3   *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112, 1122 (C.D. Cal. 2009).

4   In California, Section 17200 "defines 'unfair competition' to include 'any unlawful, unfair or

5   fraudulent business act or practice.'"  *Cel-Tech Communications, Inc. v. Los Angeles Cellular*

6   *Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (quoting Cal. Bus. & Prof. Code § 17200).  This section

7   governs anti-competitive business practices, as well as injuries to consumers, and has a major purpose

8   of preserving fair business competition.  *Id.* at 180.

9          The absence of a provision for a private right of action is not dispositive in a preemption

10  analysis.  Nor must the Court construe such an absence as incontrovertible proof of Congress' intent

11  to prohibit the same.  In fact, the lack of a private right of action in Section 17200 can be, and has

12  been, reconciled with federal statutes that do not provide one.  As one court aptly concluded: "[t]he

13  obvious conclusion to be drawn from the absence of a private cause of action is that Congress did not

14  intend the Federal Trade Commission to 'occupy the field' of redressing false advertising claims."

15  *Consumer Justice Center*, 99 Cal. App. 4th at 1060 (analyzing preemption in the context of the

16  Federal Trade Commission Act (which provides no private right of action) and Section 17200 (which

17  does provide such right)).  The absence of private right of action was construed as an indication that

18  Congress "left plenty of room for the states to supplement" federal law by providing for private rights

19  of action.  *Id.* at 1061 (internal citations and quotations omitted).

20         Federal courts are in accord that a lack of a federal private right of action is not dispositive in a

21  field preemption inquiry.  In *VP Racing Fuels, Inc. v. General Petroleum Corp.*, 673 F. Supp. 2d

22  1073, 1081–82 (E.D. Cal. 2009), the court found that the Petroleum Marketing Practices Act

23  ("PMPA") did not preempt a 17200 claim.  In that case, the court addressed defendant's argument that

24  the "claim must fail because the PMPA does not provide for a private right of action for its violation

25  but rather gives the FTC the enforcement authority." *Id.* at 1081.  As part of its holding that the

26  17200 claim was not preempted, the court stated that "Plaintiff is not attempting to bring an action

27  under the PMPA; therefore, the fact that the PMPA does not provide a private right of action is not

28  determinative." *Id.*  (further stating that "it is not necessary that the predicate law provide for private

United States District Court
Northern District of California

1   civil enforcement"); *see also Smith v. Chase Mortgage Credit Group*, 653 F. Supp. 2d 1035, 1044

2   (E.D. Cal. 2009) ("The California courts have held that it is not relevant whether the underlying

3   statute serving as a basis for a UCL claim also provides for a right of action; section 17200 can form

4   the basis for a private cause of action even if the underlying statute does not.").

5        Moreover, the Court is not persuaded by Moving Defendants' reliance on *Cel-Tech*

6   *Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163 (1999) for the

7   proposition that permitting the State Claims will allow a right that Congress explicitly sought to

8   prohibit.  *Cel-Tech* stated that "a plaintiff may not bring an action under the unfair competition law *if*

9   *some other provision bars it*.  That other provision *must actually bar it*, however, and not merely fail

10  to allow it."  *Id.* at 184 (emphasis supplied).  In those circumstances, a plaintiff may not "plead

11  around" a statutory bar to relief under the guise of "unfair competition."  *Id.*  As discussed in Section

12  II.A.2.b, *supra,* this case falls squarely in the category of a federal law that merely fails to allow a

13  private right of action.  As such, the Court does not find that Plaintiffs are attempting to use Section

14  17200 to "plead around" an explicit prohibition in ROSCA.  *See id.* at 182.

15       With respect to ROSCA, the premise of the statute is simple—it requires transparency by post-

16  transaction third-party sellers where the consumers are in the process of completing a transaction with

17  an initial merchant.  In essence, before a consumer is charged, third-party sellers must disclose to the

18  consumer that "the post-transaction third party seller is not affiliated with the initial merchant."  15

19  U.S.C. § 8402(a)(1)(B).  Further, the consumer must give express informed consent to the third-party

20  seller before the transaction may be completed. 15 U.S.C. § 8402(a)(2).  With regard to trial-

21  membership periods for online services where consumers understood they would have an opportunity

22  to accept or reject the membership offer at the end of the trial period ("negative options"), ROSCA

23  requires "simple mechanisms for [] consumer[s] to stop recurring charges" from occurring on their

24  credit cards.  15 U.S.C. §§ 8401(8) & 8403(3) (also requiring full disclosure of terms and that the

25  consumer give express informed consent).  The statute does not mandate a significant regulatory

26  structure, nor is it part of a series of statutes occupying a particular field.  ROSCA merely requires full

27  disclosure and transparency to consumers.  Accordingly, the absence of Congressional action

28  dissuades the Court from concluding that Congress intended to implement such a complex or

1    "pervasive" scheme and thereby foreclose the States from the option of supplementing these

2    requirements.  *See Bank of America*, 309 F.3d at 558–59 (discussing the strong federal presence in the

3    field of banking and states' ability to regulate national banks in areas such as contracts, debt

4    collection, acquisition and transfer of property, and taxation, zoning, criminal, and tort law).

5         Without any indication that Congress enacted a comprehensive or pervasive statutory scheme

6    intended to displace consumer protection state laws, the Court finds that field preemption does not bar

7    the State Claims in this action.[6]

8                              **d.    Conflict Preemption**

9         Conflict preemption arises when compliance with both federal and state

10   regulations is a "physical impossibility" or where state law "stands as an obstacle" to complying with

11   federal law.  *Bank of America*, 309 F.3d at 558 (internal citations omitted); *see Geier v. American*

12   *Honda Motor Co., Inc.*, 529 U.S. 861, 881–82, 886 (2000) (actual conflict existed between state law

13   requiring that car manufacturers install airbags and federal regulation's deliberate imposition of a

14   "gradual passive restraint phase-in" that allowed for restraints other than airbags).  Moving

15   Defendants argued during the hearing that one could not discern whether compliance was possible

16   under federal and state law because Section 17200 is too vague in that it broadly prohibits business

17   practices that are unfair, unlawful, or fraudulent.  The Court is not persuaded.

18        ROSCA contemplates full disclosure and transparency of transactions to consumers.  It does

19   not place onerous requirements on online merchants and sellers, nor does it specify precisely how the

20   disclosure and transparency must occur—it simply states that it must occur and that express and

21   informed consent must be obtained.  15 U.S.C. §§ 8402–8403.  While Section 17200 may be a statute

22   that broadly prohibits unfair competition, the Court cannot conceive how compliance with ROSCA

23   and any State Claims is impossible.  Indeed, Moving Defendants have provided no concrete argument

24   or persuasive authority supporting the conclusion that ROSCA will be obstructed or that state laws

25

26

---

27   [6] The Court further notes that at the hearing on the pending motions, Moving Defendants focused their argument on the lack of a private right of action in ROSCA.  They did not address the interplay between the

28   fields of "internet scams" and unfair competition or consumer protection.

United States District Court
Northern District of California

1    present an obstacle in any way, thus precluding a finding of impossibility.[7]  Without articulating even

2    a single example of how compliance with both ROSCA and state law is a "physical impossibility,"

3    conflict preemption does not exist.

4           For the reasons set forth above, the Court finds that neither express, field, nor conflict

5    preemption serve as a bar to the State Claims.  The Zaazoom Motion and subsequent joinders are

6    **DENIED** to the extent that dismissal of any claim is based on preemption.

                    **3.      Sufficiency of Allegations Regarding the Location of the Actions at Issue**

8           Moving Defendants seek dismissal of the State Claims because Plaintiffs do not allege

9    where Plaintiffs' actions took place.  Zaazoom Motion at 8.  Plaintiffs respond that to the extent there

10   is ambiguity where they were when their banking information was misappropriated, they are prepared

11   to amend the complaint to indicate they were in California.  Zaazoom Opp. at 13 & n.2.  Moving

12   Defendants reply that Plaintiffs should be allowed the opportunity to amend.  Zaazoom Reply at 4.

13          Accordingly, the Court **DISMISSES** the First, Second, Fourth, and Fifth Claims against Moving

14   Defendants **WITH LEAVE TO AMEND** to allow Plaintiffs to allege their locations when the underlying

15   actions or harm occurred.  To the extent that Plaintiffs intend to amend the Arizona Claim against

16   Moving Defendants, they must plead the claim subject to FED. R. CIV. P. 9(b).  *See Williamson v.*

17   *Allstate Ins. Co.*, 204 F.R.D. 641, 644 (D. Ariz. Aug. 21, 2001) (claim brought under A.R.S. § 44-

18   1521, *et seq.* that relies on classic allegations of fraud and misrepresentation is subject to Rule 9(b)'s

19   specificity requirement).  The pleading standard for the 17200 Claim will be addressed by the Court

20   with regard to the Bank Motion at Section II.C.4, *infra* at 19–21.

21          **B.      Motion to Dismiss Individual Defendants (Dkt. No. 14)**

22          In the Motion to Dismiss Individual Defendants, Tassoudji and Cuevas sought dismissal of the

23   claims against them based on FED. R. CIV. P. 12(b)(2) for lack of personal jurisdiction.   One required

24   element for specific personal jurisdiction is that a defendant purposefully directed his activities or

26   ---
     [7] Moving Defendants' argument that it is impossible for Plaintiffs to comply with both federal and state law

27   because they are not the FTC or a State AG misses the point.  Zaazoom Reply at 4.  The preemption inquiry
     focuses on whether compliance is impossible for the party that must adhere to the state or federal laws—not
     Plaintiffs, in this case.  E. Chemerinsky, Constitutional Law: Principles and Policies § 5.2.4 (4th ed. 2011)

28   (conflict preemption deals with whether federal law was intended to be the standard or if federal law sets a
     minimum standard and permits states to set stricter standards of conduct).

United States District Court
Northern District of California

1  consummated some transaction with the forum or resident thereof, or performed some act by which he

2  purposefully availed himself of the privilege of conducting activities in the forum.  *Kremen v. Cohen*,

3  No. 5:11-cv-05411-LHK, 2012 WL 44999, at *6 (N.D. Cal. Jan. 7, 2012).  Under the Ninth Circuit

4  test for the element of purposeful direction, the defendant must allegedly have (1) committed an

5  intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is

6  likely to be suffered in the forum state.  *Id.* at *7 (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme*,

7  433 F.3d 1199, 1206 (9th Cir. 2006)).

8        The SAC is devoid of any allegations of a specific act, instead alleging, for example, that

9  Individual Defendants were principals and members of companies that operated the scam and that

10  they actively participated in that misconduct.  SAC ¶¶ 30–32, 69; *see also* Dkt. No. 32 ("Opp. to

11  Individual Defendants' Mot.") at 5 (they "had to have known" of the alleged scam being perpetrated

12  on California residents).  Individual Defendants' roles in marketing of websites at issue, collecting

13  personal information through those websites, and designing the websites are acts that occurred by

14  virtue of their roles with defendant-companies.  Opp. to Individual Defendants' Mot. at 11–14.  In

15  addition, the volumes of exhibits submitted in support of Plaintiffs' Opposition show only that the

16  Individual Defendants either held ownership or member status with defendant-companies, signed

17  documents on behalf of the companies, or were performing their duties on behalf of the companies.

18  "[A] person's mere association with a corporation that causes injury in the forum state is not sufficient

19  in itself to permit that forum to assert jurisdiction over the person."  *Davis v. Metro Productions, Inc.*,

20  885 F.2d 515, 520 (9th Cir. 1989) (further stating that "there must be a reason for the court to

21  disregard the corporate form"); *see HealthMarkets, Inc. v. Superior Court*, 171 Cal. App. 4th 1160,

22  1169–70 (Cal. Ct. App. 2009) (mere ownership of a subsidiary does not subject a non-resident parent

23  company to personal jurisdiction based on the subsidiary's forum contacts; a separate purposeful

24  availment analysis must be performed).

25        Without more evidence that Individual Defendants purposefully directed activities toward

26  California, the motion is **GRANTED WITHOUT PREJUDICE**.  Plaintiffs may request leave to amend the

27  complaint if they obtain facts in the future indicating that such an amendment would be warranted.

28

**C.      Bank Motion (Dkt. No. 53)**

**1.      Summary of Bank Motion**

In this motion, Moving Defendants seek dismissal of each claim in the SAC.  Moving Defendants generally contend that Plaintiffs were not in privity with them as Depository Banks and that they did not owe a duty to Plaintiffs as non-depositors.  Bank Motion at 6.  These arguments are also specifically made with respect to the Negligence Claim.  *Id.* at 15.  As to the 17200 Claim, Moving Defendants argue that: (1) Plaintiffs lack standing under California law; (2) *Korea Supply Co. v. Lockheed Martin Corp.* prohibits Plaintiffs from seeking indirect and non-restitutionary disgorgement from Depository Banks; and (3) Plaintiffs fail to plead their 17200 Claim, which is based on fraud, with particularity as required by FED. R. CIV. P. 9(b).  *Id.* at 8–12.  As to the Arizona Claim, Moving Defendants contend that Plaintiffs fail to allege conduct by Depository Banks within Arizona which could constitute a violation of the Arizona Statute, but that even if such conduct is has been pled, it fails to satisfy the particularity requirements of Rule 9(b).  *Id.* at 16.  With respect to the Wiretap Act Claim, they contend there is no legally cognizable claim for aiding and abetting under the statute.  *Id.* at 16–17.  Moving Defendants also argue there are insufficient facts alleged that show the Depository Banks aided and abetted conversion by the Zaazoom Defendants, and specifically that allegations of actual knowledge or substantial assistance in the acts of conversion are absent.  *Id.* at 13–14.  Moving Defendants alternatively move for a more definite statement on the grounds that the claims against them are so vague and ambiguous that they cannot reasonably prepare a response.  *Id.* 4–5.

**2.      Legal Standards under Rule 12(b)(6)**

Pursuant to FED. R. CIV. P. 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted against that defendant.  Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533–34 (9th Cir. 1984).  For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party."  *Usher v. City of Los*

15

1   *Angeles,* 828 F.2d 556, 561 (9th Cir. 1987).  Any existing ambiguities must be resolved in favor of the

2   pleading.  *Walling v. Beverly Enters.,* 476 F.2d 393, 396 (9th Cir. 1973).

3          However, mere conclusions couched in factual allegations are not sufficient to state a cause of

4   action.  *Papasan v. Allain,* 478 U.S. 265, 286 (1986); *see also McGlinchy v. Shell Chem. Co.,* 845

5   F.2d 802, 810 (9th Cir. 1988).  The complaint must plead "enough facts to state a claim [for] relief

6   that is plausible on its face."  *Bell Atlantic. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  A claim is

7   plausible on its face "when the plaintiff pleads factual content that allows the court to draw the

8   reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556

9   U.S. 662, 129 S.Ct. 1937, 1949 (2009).  Thus, "for a complaint to survive a motion to dismiss, the

10  non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly

11  suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969

12  (9th Cir. 2009).  Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the

13  defect by amendment. *Lopez v. Smith,* 203 F.3d 1122, 1129 (9th Cir. 2000).

14          3.      **Negligence Claim (Fifth Claim)**

15          Moving Defendants make the blanket argument that they were not in privity with Plaintiffs

16  and do not owe a legal duty to Plaintiffs because banks, at common law, generally do not owe a duty

17  of care to third party non-depositors.  Bank Motion at 6–8.  Although seemingly argued as a ground

18  for dismissal of all claims, the Court views this argument as more specifically relating to the

19  Negligence Claim.  *Id.* at 15.  Moving Defendants contend that the Negligence Claim must be

20  dismissed because it is "predicated on a purported banking relationship between [Depository Banks]

21  and the Zaazoom Defendants *or* some unspecific Processor" and, thus, there is no basis to create a

22  relationship or duty with Plaintiffs based on Zaazoom Defendants or Processors holding a depository

23  account with them.  *Id.* at 6 & 15.  Without a direct relationship or privity with Plaintiffs, Depository

24  Banks owe no duty to investigate or disclose suspicious activities on the part of an account holder.  *Id.*

25  at 7 & 15.  Further, Moving Defendants never had ownership of Plaintiffs' funds because the banking

26  relationship is that of a debtor and creditor.  *Id.*[8]

27

28  [8] Moving Defendants note that under the California Commercial Code, Depositor Banks may have had a
    warranty duty to Plaintiffs' banks, but not to Plaintiffs themselves.  Bank Motion at 8.  However, as Moving
    Defendants point out, there is no claim in the SAC arising from the Commercial Code.  *Id.*  For the purposes of

United States District Court
Northern District of California

1    In their Opposition, Plaintiffs respond that "a depository bank owes a duty of care to a drawer

2    of a check where the risk of harm to the drawer is foreseeable due to suspicious circumstances

3    surrounding the check."  (Dkt. No. 60 ("Opp. to Bank Motion") at 8.)  Claiming that the SAC alleges

4    "extremely suspicious circumstances that should have put [Depository Banks] on notice that the RCCs

5    at issue were forgeries," Plaintiffs argue that Depository Banks' continued acceptance of such RCCs

6    is the basis of their liability for negligence.[9]  *Id.* at 10–11.

7        As to the "suspicious circumstances" exception, Moving Defendants point out that Plaintiffs

8    seek to expand the exception beyond its intended scope.  As they describe, the exception applies "only

9    when checks, not insignificant in amount, are drawn payable to the order of a bank and are presented

10   to the payee bank by a third party seeking to negotiate the checks for his own benefit."  Bank Reply at

11   6 (quoting *Sun 'N Sand Inc. v. United California Bank*, 21 Cal. 3d 671, 695–96 (1978)).  Put another

12   way, suspicious circumstances existed where the bank "allow[ed] a person to deposit a check, payable

13   to someone else, into [his/her] personal account, under circumstances that should have alerted the

14   bank to the possibility of fraud."  Bank Reply at 6 (quoting *Chazen v. Centennial Bank*, 61 Cal. App.

15   4th 532, 544–45 (Cal. Ct. App. 1998)) (emphasis omitted).

16       Having reviewed the authority provided by the parties regarding a duty of care and the

17   suspicious circumstances exception, the Court agrees with Moving Defendants that the exception

18   should be "narrowly circumscribed" and applied where there are "danger signals inherent in [] an

19   attempted [check] negotiation."  *Sun 'N Sand*, 21 Cal. 3d at 695.  In *Sun 'N Sand* and its progeny, the

20   circumstances under which a duty was imposed were more suspicious than the allegations in the SAC.

21   In all these cases, a duty was triggered based on "the particular circumstances of the checks,

22   endorsements or depositors, where the person attempting to negotiate the check is not the payee."

23   *Software Design and Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal. App. 4th 472, 480–81 (Cal.

25   this motion, statutory warranty claims that may belong to Plaintiffs' banks are irrelevant because they are not parties to this action and no such claims are alleged in the SAC.  (*See also* Dkt. No. 65 ("Bank Reply") at 2–4.)

26
27   [9] In examining a motion to dismiss, the Court must accept as true all of the factual allegations *in the complaint*. *Twombly*, 550 U.S. at 555–56.  Allegations made for the first time in response to a motion to dismiss need not be taken as true.  The Court finds Plaintiffs' arguments regarding a claim for statutory negligence are irrelevant to the Bank Motion because no such claim is asserted in the SAC.  *See* Opp. to Bank Motion at 12–13.  The SAC alleges only common law negligence.  SAC ¶¶ 132 & 183–88.

United States District Court
Northern District of California

1  Ct. App. 1996); *Joffe v. United California Bank*, 141 Cal. App. 3d 541, 556 (Cal. Ct. App. 1983)

2  (duty imposed where "the face of the check itself d[id] not provide sufficient objective indicia from

3  which the bank could reasonably conclude that the party presenting the check [wa]s authorized to

4  transact [it] in the manner proposed") (internal citations and quotations omitted); *E.F. Hutton & Co. v.*

5  *City National Bank*, 149 Cal. App. 3d 60, 65, 68 (Cal. Ct. App. 1983) (duty imposed where employee

6  obtained 18 checks from employer-drawer of checks, made payable to various named individual

7  payees, and deposited into personal bank account using forged endorsements).

8       Here, the RCCs were made payable to Zaazoom Defendants, were endorsed by them, and were

9  deposited into those Defendants' accounts with Depository Banks, not the personal account of a

10  seemingly unrelated party.  SAC ¶¶ 10–13, 66–68 & 87–97; *cf. Chazen*, 61 Cal. App. 4th at 545 ("The

11  decisions appear, at least in part, to reflect policy applying specifically to the negotiation of a check

12  by a person who is not the named payee.").  While the cases cited above did not hold that suspicious

13  circumstances arise *only* in the aforementioned contexts, the Court does not believe facts are

14  sufficiently alleged in the SAC warranting expansion of this otherwise narrow exception.[10]  *Id.*

15       Moving Defendants note that in the Opposition, Plaintiffs seek to introduce new facts

16  regarding the rate of returned checks in an attempt to show there are suspicious circumstances.  Bank

17  Reply at 4 n.2; *see* Opp. to Bank Motion at 1:22–26, 6:27–28, 7:8–11, 10:27–28 & 11:1–6.  The Court

18  agrees (and Plaintiffs seem to concede) that at least some of these allegations are outside of the scope

19  of the SAC, and will consider the new allegations only to the extent that it affects the determination of

20  whether to grant leave to amend.  The Court will allow Plaintiffs to amend the Negligence Claim

21  against Moving Defendants because it is not clear to the Court that Plaintiffs cannot plead additional

22  facts to support the existence of a duty under the suspicious circumstances exception.  However, the

23  Court notes that Plaintiffs' "new" allegations regarding rates of returned checks (referenced above)

24  will not be sufficient, on their own, to state suspicious circumstances.  That is, the rates of returned

25  _____

26  [10] Moving Defendants have asserted that common law negligence is displaced by the Commercial Code section creating a statutory duty of warranty by Depository Banks to Plaintiffs' banks, but not to Plaintiffs themselves.

27  Bank Reply at 3.  In light of the fact that such displacement would result in the dismissal of the Negligence Claim and the Court has found that the Negligence Claim must be dismissed due to an absence of suspicious

28  circumstances, the Court need not consider Moving Defendants' argument that the common law has been displaced in this case.

United States District Court
Northern District of California

1    checks do not change the fact that Zaazoom Defendants were depositing RCCs made payable to them

2    into their accounts held with Depository Banks, and from the faces of the RCCs themselves, there

3    were no visible dangers, risks, or forged endorsements apparent to the Banks.

4            Accordingly, the Negligence Claim against Moving Defendants is hereby **DISMISSED WITH**

5    **LEAVE TO AMEND** to the extent that Plaintiffs can allege a claim within the narrow exception

6    articulated herein.

7                    **4.        California Business and Professions Code Section 17200 (First Claim)**

8            Moving Defendants contend that the 17200 Claim fails because Plaintiffs: (1) lack

9    standing; (2) seek remedies that are prohibited as a matter of law; and (3) fail to allege the claims with

10   sufficient particularity under FED. R. CIV. P. 9(b).  Bank Motion at 8–12.

11           With respect to the issues of standing and the remedy sought, Moving Defendants argue that

12   Plaintiffs have not established a loss or deprivation of money or property sufficient to qualify as an

13   injury in fact (economic injury), nor have they shown the economic injury was the result of (caused

14   by) the unfair business practice or false advertising that underlies the claim—both of which are

15   requirements to have standing to bring a claim under Section 17200.  *Id.* at 9.  At most, "Plaintiffs

16   allege [] that some of their money was deposited into another defendant's account at [Depository

17   Bank]—but that is not the same as alleging that [the Banks] took their money or that [they] ha[ve]

18   Plaintiffs' funds to restore to them."  *Id.*  Because Depository Banks "never obtained any funds from

19   Plaintiffs" and any taking that may have occurred was the result of unfair competition by other

20   Defendants, Moving Defendants contend that the 17200 Claim against them is a disguised tort claim

21   seeking non-restitutionary disgorgement, which is prohibited by *Korea Supply Co. v. Lockheed

22   Martin Corp.*, 29 Cal. 4th 1134, 1150–51 (2003).  *Id.* at 9–10; Bank Reply at 10 (Depository Banks

23   "cannot restore funds to Plaintiffs" because they did not take any funds, so no restitution is possible).

24           Plaintiffs counter that the SAC sufficiently alleges both elements of standing.  They argue,

25   first, money was wrongfully taken from their bank accounts when RCCs were drawn on their

26   accounts, thereby establishing a loss or deprivation of money or property; and second, the causation

27   requirement of standing is met because "Plaintiffs incurred losses when [Depository Banks] presented

28   forged RCCs to Plaintiffs' drawee banks for collection, and when [Depository Banks] used these

forged RCCs to remove funds from Plaintiffs' accounts, without [their] knowledge or consent."  Opp. to Bank Motion at 13–14 (further arguing that "a UCL plaintiff need only allege that he or she suffered a loss as a direct result of the defendant's unfair practices").  As to whether the remedy sought is non-restitutionary disgorgement, Plaintiffs claim they "seek to restore the money that [Depository Banks] wrongfully withdrew from [their] bank accounts."  *Id.* at 15.  Plaintiffs urge *Korea Supply* is inapposite and that, for UCL purposes, restitution is simply the return of money to those persons from whom it was taken.  *Id.* at 15–16.  Under this theory, Plaintiff seek return of the funds withdrawn from their accounts allegedly as a result of the Depository Banks' unfair business practices.  *Id.* at 16.

Under a 17200 Claim, "'restitution' is limited to the return of property or funds in which the plaintiff has an ownership interest."  *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 453 (Cal. Ct. App. 2005); *Korea Supply*, 29 Cal. 4th at 1148.  Thus, the Court's analysis begins with an evaluation of the parties' interest in the deposits.  The relationship between a bank and its depositor arising out of a general deposit is that of a debtor and creditor.  *Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465, 476 (Cal. Ct. App. 1989); *Chazen*, 61 Cal. App. 4th at 537.   "A debt is not a trust and there is not a fiduciary relation between debtor and creditor as such."  *Price*, 213 Cal. App. 3d at 476 (internal citations omitted); *Chazen*, 61 Cal. App. 4th at 537 (banks are not fiduciaries for their depositors).

The SAC alleges that Zaazoom Defendants "drafted [RCCs] drawn on the California Subclass members' checking accounts," "deposited in their depository bank accounts the [RCCs] drawn on the California Subclass members' checking accounts," and that "money was transferred from the California Subclass members' checking accounts to the Zaazoom Defendants' depository bank accounts."  SAC ¶¶ 137–139.   The Banks are not trustees of the money that Zaazoom Defendants deposited.  No conduct can be alleged which shows that the Depository Banks had an ownership interest in the deposits.  Therefore, they cannot be held liable for restitution of money that Zaazoom Defendants may have taken.

The **17200 CLAIM IS DISMISSED WITHOUT LEAVE TO AMEND** because it seeks non-restitutionary disgorgement from Depository Banks, which is not permitted by the UCL.  *Korea Supply*, 29 Cal.4th at 1152 ("nonrestitutionary disgorgement of profits is not an available remedy in

United States District Court
Northern District of California

1   an individual action under the UCL").  The UCL remedy, if any, for the money taken lies against

2   Zaazoom Defendants.

3           With respect to the issue of pleading with particularity, while common law fraud and a

4   fraudulent practice under the UCL are distinct, where a plaintiff chooses to allege fraudulent conduct

5   and relies on such conduct as the basis for its UCL claim, the claim is grounded in fraud such that its

6   pleading "as a whole must satisfy the particularity requirement of Rule 9(b)."  *Vess v. Ciba-Geigy*

7   *Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003).   Plaintiffs contend that they have sufficiently

8   alleged that Depository Banks' "practice of presenting forged RCCs for settlement was an unfair,

9   unlawful, and fraudulent business practice under the UCL."  Opp. to Bank Motion at 16.  Plaintiffs

10  also argue that the "fraudulent" prong under the UCL is distinct from common law fraud and, as such,

11  they are not required to make particularized allegations.  *Id.* at 19.  Moreover, Plaintiffs argue that the

12  SAC has alleged its 17200 Claim under both the "unfair" prong (which broadly requires consumer

13  injury that violates public policy) and the "unlawful" prong.  *Id.* at 16–18.

14          Plaintiffs were not required, but elected, to allege an elaborate scam involving multiple groups

15  of actors who each served their own role in a course of conduct intended to deceive consumers.  As

16  such, to the extent that this claim is repled against non-moving defendants, Plaintiffs must plead this

17  fraud with particularity under FED. R. CIV. P. 9(b).

18                  **5.      Conversion Claim (Fourth Claim)**

19          Moving Defendants interpret Plaintiffs' Conversion Claim against them to be a claim

20  for aiding and abetting conversion.  Bank Motion at 13.  As an aiding and abetting claim, Plaintiffs

21  must allege that Depository Banks had actual knowledge of the conversion committed by Zaazoom

22  Defendants, and facts showing that Depository Banks substantially assisted Zaazoom Defendants with

23  conversion.  *Id.*  Plaintiffs respond that Moving Defendants' characterization is incorrect, that a direct

24  claim for conversion has been stated, and that conversion is a strict liability tort.  Opp. to Bank

25  Motion at 20–21.  As such, Plaintiffs contend that they "need only allege that [Depository Banks]

26  converted Plaintiffs' money by wrongful act or disposition."  *Id.* at 21–22 (further asserting that

27  Depository Banks' lack of knowledge is irrelevant to whether a claim is stated).  In their Reply,

28

United States District Court
Northern District of California

1   Moving Defendants contend that a claim for conversion by Plaintiffs can only exist against Plaintiffs'

2   banks, not a depository bank.  Bank Reply at 9.

3        In the banking context, as a matter of law, "[t]itle to the deposited funds passes immediately to

4   the bank which may use the funds for its own business purposes.  The bank does not thereby act as

5   trustee and cannot be charged with converting the deposit for its own use."  *Lee v. Bank of America*,

6   218 Cal. App. 3d 914, 919–920 (Cal. Ct. App. 1990) (internal citations omitted).  As with the 17200

7   Claim, the SAC alleges that Zaazoom Defendants drafted RCCs, deposited them in their depository

8   accounts, and that money was transferred from Plaintiffs' accounts as a result.  SAC ¶¶ 174–176.

9   Thus, without more, the Depository Banks' receipt of a deposit is not a wrongful act of conversion.

10   Accordingly, the Conversion Claim against Moving Defendants is **DISMISSED WITHOUT LEAVE TO**

11   **AMEND**.

12        **6.   Arizona Claim (Second Claim)**

13        Moving Defendants seek dismissal of the Arizona Claim primarily because there are

14   no allegations of any act or contact between Depository Banks and the State of Arizona.[11]  Bank

15   Motion at 16; Bank Reply at 15 (Arizona Statute only "applies to acts committed within Arizona in

16   violations of its provisions" and can only be enforced "against . . . persons conducting business within

17   the state") (internal citations and emphasis omitted).  In their Opposition, Plaintiffs place importance

18   on the fact that Zaazoom Defendants are located in Arizona, and that Zaazoom Defendants have bank

19   accounts with Depository Banks.  Opp. to Bank Motion at 24.  "Since the fraudulent scheme at the

20   heart of Plaintiffs' [Arizona Claim] was orchestrated in Arizona by Arizona-based defendants,

21   application of [the Arizona Statute] is warranted."  *Id.*

22        The elements of a claim under the Arizona Statute are "a false promise or misrepresentation

23   made in connection with the sale or advertisement of merchandise and the hearer's consequent and

24   proximate injury."  *Dunlap v. Jimmy GMC of Tuscon, Inc.*, 136 Ariz. 338, 342 (Ariz. Ct. App. 1983);

25   A.R.S. § 44-1522.  As defined in the Arizona Statute, a claim must be based on deceptive or

26

27   [11] While Defendant Data Processing Services ("DPS") joined in the Bank Motion regarding the Wiretap Act
    Claim only, it also joined the Zaazoom Motion, which addressed the Arizona Claim.  (Dkt. No. 84 ("DPS
28   Joinder").)  As such, DPS is generally included as a "Moving Defendant" in the Bank Motion with respect to
    the Arizona Claim.  *Id.* at 3 (DPS neither resides nor conducts business in Arizona).

United States District Court
Northern District of California

1  fraudulent conduct "in connection with the sale or advertisement of any merchandise." *See* A.R.S. §

2  44-1522(A); *see* A.R.S. §§ 44-1521(1), (5) & (7).

3       Plaintiffs have failed to identify any connection between Arizona, Plaintiffs, and Moving

4  Defendants.  Further, the only conceivable merchandise or services allegedly offered to Plaintiffs are

5  those provided through the Payday Loan Websites.  At oral argument, Plaintiffs conceded that under

6  this analysis, they could not further amend the SAC to allege a claim under the Arizona Statute.[12]

7       Accordingly, the Arizona Claim against Moving Defendants is hereby **DISMISSED WITHOUT**

8  **LEAVE TO AMEND**.

9         **7.**    **Wiretap Act Claim**

10       The Wiretap Act provides a right of action against, except as otherwise specifically

11  provided, any person who:

12       (a) intentionally intercepts, endeavors to intercept, or procures any other person to

13            intercept or endeavor to intercept, any wire, oral, or electronic communication;

14       . . .

15       (c) intentionally discloses, or endeavors to disclose, to any other person the contents

16            of any wire, oral, or electronic communication, knowing or having reason to know
          that the information was obtained through the interception of a wire, oral, or
          electronic communication in violation of this subsection;

17

18       (d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic
          communication, knowing or having reason to know that the information was obtained

19            through the interception of a wire, oral, or electronic communication in violation of
          this subsection; . . .

20  18 U.S.C. § 2511(1).

21       Moving Defendants contend that the Wiretap Act "does not provide for a civil action against

22  one who aids and abets a violation of the Wiretap Act."  Bank Motion at 16 (quoting *Crowley v.*

23  *CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001)); Bank Reply at 13.  Plaintiffs, on

24  the other hand, contend that Moving Defendants have violated the statute directly by "using Plaintiffs'

25  intercepted communications while having reason to know they were intercepted in violation of 18

26  U.S.C. [section] 2511(1)(d)."  Opp. to Bank Motion at 23.  According to Plaintiffs, the "interception"

27

28  _____

[12] In their briefing, Plaintiffs requested leave to allege violations of the Delaware Consumer Fraud Act, 6 Delaware Code § 2511, *et seq.*  For the same reasons, Plaintiffs indicated at oral argument that they would not be able to state a claim under Delaware law.

United States District Court
Northern District of California

1    occurred when "the contents of a communication [were] captured or redirected in any way,"

2    specifically, after entering their personal information on Payday Loan Websites.  Opp. to Bank

3    Motion at 22; SAC ¶¶ 101–102, 113–114 & 161.  Moving Defendants respond that, by definition, no

4    "interception" occurred if the Zaazoom Defendants merely used their own website server as the

5    alleged "device" to intercept Plaintiffs' electronic communications.  Bank Reply at 14.   At oral

6    argument, Plaintiffs conceded that the sole basis upon which it was proceeding with this claim was the

7    use of the Payday Loan Websites.

8         The Court's analysis begins "where all such inquiries must begin: with the language of the

9    statute itself."  *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989); *In re Google*

10   *Inc. Street View Electronic Communications Litig.*, 794 F. Supp. 2d 1067, 1074–75 (N.D. Cal. 2011).

11   Where the language of the statute is plain, it is also where the inquiry should end:  "the sole function

12   of the courts is to enforce [the statute] according to its terms," assuming that an absurd interpretation

13   does not result.  *Caminetti v. United States*, 242 U.S. 470, 485 (1917); *Hartford Underwriters Ins. Co.*

14   *v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000).

15        The Wiretap Act requires an intentional "intercept."  The common understanding of the term

16   intercept, *i.e.*, "to stop, seize, or interrupt in progress or course or before arrival," is further defined by

17   the Act itself as "*the aural or other acquisition* of the contents of any wire, electronic, or oral

18   communication through the use of any electronic, mechanical, or other *device*."  Webster's Ninth New

19   Collegiate Dictionary ("Webster's") at 630 (1988); 18 U.S.C. § 2510(4) (emphasis supplied).  The

20   Act further defines "electronic, mechanical, or other device" as "any device or apparatus which can be

21   used to intercept a wire, oral, or electronic communication."  18 U.S.C. § 2510(5).[13]  In this regard,

22   Webster's defines "device" as "a piece of equipment or a mechanism designed to serve a special

23

24   _____

     [13] Section 2510(5) continues with subsections (a) and (b), which exclude as a device: "(a) any telephone or
     telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by

25   a provider of wire or electronic communication service in the ordinary course of its business and being used by
     the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for

26   connection to the facilities of such service and used in the ordinary course of its business; or (ii) being used by
     a provider of wire or electronic communication service in the ordinary course of its business, or by an

27   investigative or law enforcement officer in the ordinary course of his duties; (b) a hearing aid or similar device
     being used to correct subnormal hearing to not better than normal."  Congress last revised Section 2510(4) &

28   (5) in 1986.

1   purpose or perform a special function."  Webster's at 347.  Similarly, it defines "apparatus" as "a set

2   of materials or equipment designed for a particular use."  *Id.* at 96.

3        *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263 (N.D. Cal. 2001) presented a similar

4   situation.  There, plaintiff alleged that defendant Amazon.com ("Amazon") violated the Wiretap Act

5   after it "secretly transmitted, used and/or disclosed" information received from customers "via e-mail

6   over the Internet" to a third party (defendant CyberSource Corporation).  *Id.* at 1266, 1269.  The court

7   granted a motion to dismiss holding that an "interception" as defined under the Act could not exist

8   where the plaintiff himself transmitted the information to Amazon which was "the second party to

9   [the] communication," or in effect, the intended recipient.  *Id.* at 1269.  Because Amazon did not

10  "acquire [the communication] using a device other than the drive or server on which the e-mail was

11  received," no claim could be stated.  *Id.*

12        In the instant case, no defendant in this action acquired the information by capturing the

13  transmission of information that was otherwise in the process of being communicated to another

14  party.  The Zazoom Defendants did not stop, seize, or interrupt a communication in progress before

15  arrival to its intended destination.  As in *Crowley*, the Zazoom Defendants were the intended

16  recipients.  Further, no suggestion exists that the Payday Loan Websites alone were "piece[s] of

17  equipment or a mechanism designed" to serve the purpose of such a hypothetical interception.

18  Plaintiffs' creative application of the Wiretap Act does not comport with its plain meaning.  Without

19  more, under the Wiretap Act (i) the receipt of information intentionally transmitted from Plaintiffs to

20  Zaazoom Defendants' Payday Loan Websites is not "interception," and (ii) the Payday Loan Websites

21  do not fall within its definition of a "device."[14]  Accordingly, Plaintiffs' attempt to hold Moving

22  Defendants liable for disclosing or using the contents of an interception is unavailing.  18 U.S.C. §§

23  2511(1)(a), (c) & (d).

24        The Wiretap Act Claim is **DISMISSED WITHOUT LEAVE TO AMEND** as to Moving Defendants.

---

[14] Moving Defendants raised the issue of consent in that Plaintiffs voluntarily provided their personal
information through the Payday Loan Websites.  Bank Reply at 14; DPS Joinder at 3–4.  Plaintiffs contend that
their purported "consent" does not obviate Moving Defendants' liability because the conduct falls under an
explicit statutory exception where the interception "was made for the purpose of committing a criminal or
tortious act."  Opp. to Bank Mot. at 22–23 (citing 18 U.S.C. § 2511(2)(d)); Dkt. No. 94 ("Opp. to Joinders") at
3–4.  In light of the Court's holding that no "interception" existed as defined by the statute, the Court finds this
argument is moot.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**8.      Alternative Motion for a More Definite Statement**

As set forth herein, the Court is dismissing all claims against Moving Defendants. Accordingly, the Motion for a More Definite Statement is **DENIED** as moot.

**D.      Request for Judicial Notice (Dkt. No. 61)**

Plaintiffs request that the Court take judicial notice of the California Senate Rules Committee's Bill Analysis of Senate Bill 1742 from the 1995–1996 California Legislative session. This Bill Analysis relates to statutory warranty duties owed by a depository bank.  Plaintiffs do not allege a statutory duty of care or statutory negligence in the SAC, and—from what the Court can surmise—raises the statutory negligence from for the first time in its Opposition.  *Compare* Opp. to Bank Motion at 12–13 with SAC ¶¶ 132, 183–188.

The Court finds this Request relates to matter that is not relevant to the current allegations in SAC.  Accordingly, the Court **DENIES** the Request under Federal Rules of Evidence 401 and 403.

**E.      Motion to Strike (Dkt. No. 54)**

Because the Court is dismissing all claims against Moving Defendants, the Motion to Strike is **DENIED** as moot.

**III.      CONCLUSION**

For the foregoing reasons, the Court **GRANTS AND DENIES** in part the various motions before the Court.  More specifically, the Court rules as follows:

1.  The Zaazoom Motion (Dkt. No. 12) is **DENIED** with respect to preemption; and **GRANTED WITH LEAVE TO AMEND** the 17200 Claim; Arizona Claim; Conversion Claim; and Negligence Claim against Moving Defendants Zaazoom Solutions, LLC; Zaza Pay LLC; MultiECom, LLC; Online Resource Center, LLC; Jack Henry & Associates, Inc.; Automated Electronic Checking, Inc.; and Data Processing Systems, LLC.

2.  The Motion to Dismiss Individual Defendants (Dkt. No. 14) is **GRANTED WITHOUT PREJUDICE**.  Defendants Moe Tassoudji and Bill Cuevas are **DISMISSED** from this action.

3.   The Bank Motion (Dkt. No. 53) is:

      a.   **GRANTED WITHOUT LEAVE TO AMEND** the 17200 Claim, Arizona Claim, Wiretap Act Claim, and Conversion Claim as to Defendants First Bank of Delaware and First National Bank of Central Texas;

      b.   **GRANTED WITH LEAVE TO AMEND** the Negligence Claim as to Defendants First Bank of Delaware and First National Bank of Central Texas;

      c.   **GRANTED WITHOUT LEAVE TO AMEND** the Arizona Claim and Wiretap Act Claim against Defendant Data Processing Systems, LLC; and

      d.   The alternative Motion for a More Definite Statement is **DENIED** as moot;

4.   Plaintiffs' Request for Judicial Notice (Dkt. No. 61) is **DENIED**.

5.   The Motion to Strike (Dkt. No. 54) is **DENIED** as moot.

Plaintiffs have **twenty-one (21) days** from the date of this Order to file a Third Amended Complaint ("TAC") consistent with this Order.  Thereafter, each defendant has **twenty-one (21) days** from the date of service of the TAC to respond.  This Order terminates Dkt. Nos. 12, 14, 53 & 54.

      **IT IS SO ORDERED.**

Dated:  March 20, 2012

                           _____
                           **YVONNE GONZALEZ ROGERS**
                    **UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California