UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBER KRISTI MARSH and STACIE EVANS, individually and on behalf of a class of similarly situated persons, | Case No.: C-11-05226-YGR |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS, MOTIONS TO STRIKE, AND REQUESTS FOR JUDICIAL NOTICE** |
| vs. | |
| ZAAZOOM SOLUTIONS, LLC, et al., | |
| Defendants. | |

Plaintiffs Amber Kristi Marsh ("Marsh") and Stacie Evans ("Evans") bring this class action against Defendants Zaazoom Solutions, LLC; Zaza Pay LLC; MultiECom, LLC; Online Resource Center, LLC; First Bank of Delaware; First National Bank of Central Texas; Jack Henry & Associates, Inc.; Automated Electronic Checking, Inc.; and Data Processing Systems, LLC (collectively, "Defendants").[1]  In the TAC, Plaintiffs allege a total of eleven claims against Defendants for: (i) unfair business practices in violation of California Business and Professions Code section 17200, *et seq.* ("Section 17200" or "UCL"); (ii) conversion; (iii) negligence; and (iv) statutory negligence under California Commercial Code section 3404 ("Section 3404").  Plaintiffs allege violations of Section 17200 against Zaazoom Defendants (first, third, and fifth claims) and the Processors (second, fourth, and sixth claims).  Conversion is alleged against the Zaazoom Defendants

---

[1]  The Third Amended Complaint ("TAC") categorizes Defendants into three groups: (1) the "Zaazoom Defendants," comprised of Zaazoom Solutions, LLC, Zaza Pay LLC, MultiECom, LLC, and Online Resource Center, LLC; (2) the "Depository Banks," comprised of First Bank of Delaware and First National Bank of Central Texas; and (3) the "Processors," comprised of Jack Henry & Associates, Inc., Automatic Electronic Checking, Inc., and Data Processing Systems, LLC.  (TAC (Dkt. No. 100) ¶¶ 1–2.)  SunFirst Bank, Moe Tassoudji, and Bill Cuevas have been dismissed from this action.  (Dkt. Nos. 58 & 99.)

and the Processors (both in the seventh claim). Plaintiffs allege negligence against the Zaazoom Defendants (eighth claim), the Processors (ninth claim), and the Depository Banks (tenth claim). Statutory negligence is asserted only against the Depository Banks (eleventh claim).

The following motions and requests for judicial notice are pending before the Court:

1. Defendants Zaazoom Solutions, LLC, Zaza Pay LLC, MultiECom, LLC, Online Resource Center, LLC, Automated Electronic Checking, Inc., and Data Processing Systems, LLC's Motion to Dismiss (F.R.Civ.P. 12(b)(6)), or in the Alternative to Strike (F.R.Civ.P. 12(f)) in Response to Plaintiffs' Third Amended Complaint ("Zaazoom Motion"). (Dkt. No. 106.)

2. Defendant First National Bank of Central Texas' Motion to Dismiss the Third Amended Complaint ("BCT Motion") (Dkt. No. 107–108), and Request for Judicial Notice in Support of Defendant First National Bank of Central Texas' Motion to Dismiss the Third Amended Complaint (Dkt. No. 109).

3. Defendant Jack Henry & Associates, Inc.'s Motion to Dismiss the Third Amended Complaint ("Jack Henry Motion") (Dkt. Nos. 111–112), and Request for Judicial Notice in Support of Defendant Jack Henry & Associates, Inc.'s Motion to Dismiss the Third Amended Complaint (Dkt. No. 113).

4. Defendant First Bank of Delaware's Motion to Dismiss All of, and to Strike Portions of, Plaintiffs' Third Amended Complaint ("FBD Motion") (Dkt. No. 115), and Defendant First Bank of Delaware's Request for Judicial Notice in Support of Motion to Dismiss and Motion to Strike Plaintiffs' Third Amended Complaint (Dkt. No. 116).

The Zaazoom Defendants, Automated Electronic Checking, Inc., and Data Processing Systems, LLC filed a Notice of Joinder to the BCT Motion, Jack Henry Motion, and FBD Motion ("Joinder"). (Dkt. No. 118.)

Having carefully considered the papers submitted and the pleadings in this action, oral argument at the hearing held on June 12, 2012, and for the reasons set forth below, the Court hereby:

1. **DENIES** the Zaazoom Motion in its entirety;

2.  **GRANTS IN PART** and **DENIES IN PART** the BCT Motion, and **DENIES** BCT's Request for Judicial Notice;

3.  **DENIES** the Jack Henry Motion in its entirety, and **DENIES** Jack Henry's Request for Judicial Notice; and

4.  **GRANTS IN PART** and **DENIES IN PART** the FBD Motion, **GRANTS** FBD's Request for Judicial Notice, and **GRANTS IN PART** and **DENIES IN PART** FBD's Motion to Strike.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This action was removed from San Francisco County Superior Court on October 26, 2011. (Dkt. No. 1.)  The operative Third Amended Complaint follows a round of motions to dismiss by Defendants as to the Second Amended Complaint ("SAC").[2]  On March 20, 2012, the Court issued an Order Granting in Part and Denying in Part Motions to Dismiss, and Denying Motion to Strike and Request for Judicial Notice ("First Order").  (Dkt. No. 99.)  Particularly relevant to the pending motions, the Court granted Depository Banks' motion to dismiss all claims against them, but allowed Plaintiffs leave to amend their claim of negligence.  In addition, the Court granted Zaazoom Defendants' motion to dismiss to allow Plaintiffs to specifically allege their locations at the time the underlying actions or harm occurred.

The basic thrust of Plaintiffs' allegations did not change between the SAC and TAC. Plaintiffs allege that Zaazoom Defendants operate an internet scam in which remotely-created checks ("RC Checks") are created to pay monthly membership fees for coupon services using Plaintiffs' personal and banking information entered on websites for the purpose of obtaining payday loans ("Payday Loan Websites").  (TAC ¶¶ 1 & 57–71.)  Plaintiffs allege that they did not consent to the sharing or use of their personal and banking information to sign up for the coupon memberships, and that the creation of RC Checks was done without their knowledge or authorization.  (*Id.* ¶¶ 64–69.) Zaazoom Defendants allegedly operate the Payday Loan Websites and are affiliated with the various online coupon services.  (*Id.* ¶¶ 57–62.)  The actual creation of the RC Checks for coupon services,

---

[2] The SAC contained five claims: (1) unfair business practices in violation of Section 17200; (2) consumer fraud in violation of Arizona Revised Statute section 44-1521, *et seq.*; (3) violation of the Wiretap Act, 18 U.S.C. section 2510, *et seq.*; (4) conversion; and (5) negligence.  Each claim in the SAC was asserted against all Defendants, except the fifth claim for negligence, which was asserted only against the Processors and Depository Banks.

which are made payable to the Zaazoom Defendants, is done by the Processors.  (*Id.* ¶¶ 2, 10–11, 69, 72 & 75–143.)  Further, Plaintiffs allege that the Depository Banks authenticated the RC Checks and sent the checks for settlement with Plaintiffs' banks.  (*Id.* ¶¶ 11–13, 70–72 & 144–203.)

In the TAC, Plaintiffs allege that "[t]he Processors and Depository Banks acted unreasonably in drafting, depositing, authenticating, and collecting the checks given their knowledge of the extremely suspicious circumstances surrounding the checks."  (TAC ¶ 13.)  These "extremely suspicious circumstances" included: an extraordinarily high rate of return for returned checks; a high number of customer complaints; inquiries from government agencies and "consumer watchdogs" regarding Zaazoom Defendants; and "peculiarities" based on the face of the actual checks.  (*Id.* ¶¶ 52–56, 72–73, 82–85, 110–112, 132–134, 153, 160, 166–167, 187, 193 & 198–199.)  In particular, Plaintiffs allege that the RC Checks were payable to Zaazoom Defendants but never endorsed by them or any employee, officer, or director thereof.  (*Id.* ¶¶ 81, 106, 128, 156 & 190.)  Further, the RC Checks did not contain the actual signature of Plaintiffs, which made the checks "suspicious on their face."  (*Id.* ¶¶ 157–158 & 191–192 (instead stating they were "NON-NEGOTIABLE Authorization on File" or simply "Authorization on File").)

On Plaintiffs' information and belief, the Processors drafted and deposited the RC Checks payable to Zaazoom Defendants in depository bank accounts held in the name of the Processors.  (*Id.* ¶¶ 80, 104, 126 & 159.)  The Zaazoom Defendants did not have accounts at any of the depository banks where the Processors deposited the RC Checks.  (*Id.* ¶¶ 80, 105, 127 & 154.)  Upon receipt of the funds in the Processors' depository accounts, Plaintiffs are informed and believe that the Processors remitted those funds to Zaazoom Defendants minus a processing fee.  (*Id.* ¶¶ 94–95, 116–117 & 138–139.)  Plaintiffs also allege that Depository Banks had a financial incentive to work with Zaazoom Defendants because they received a fee for each returned check.  (*Id.* ¶¶ 148 & 182.)  In addition, Plaintiffs allege that the Processors and the Depository Banks monitored the aggregate data regarding deposited RC Checks and returned checks (*id.* ¶¶ 86, 108, 130, 164 & 196), and either knew of Zaazoom Defendants' unlawful business practices or should have known of the same (*id.* ¶¶ 92–93, 97, 118–120, 140–142, 151, 174, 185 & 201).  (*See also* TAC ¶¶ 88–91, 113–115, 135–137, 152–153

4

& 186–187 (alleging ways in which the Processors and Depository Banks could have discovered Zaazoom Defendants' conduct).)

Named Plaintiffs Marsh and Evans are California residents who have fallen victim to the scam described above. (TAC ¶¶ 34–35 & 204–237.) The TAC is brought on behalf of "all persons: a) whose checking accounts were drawn on by way of remotely created checks created by the Zaazoom Defendants for . . . online coupon or discount service[s] [as specified in the TAC] operated by the Zaazoom Defendants after May 6, 2007, and b) who never consented to the creation of a remotely created check to pay for the Zaazoom Defendants' services" for those online coupon or discount services specified in the TAC. (*Id.* ¶ 238.) In addition, Plaintiffs bring this action on behalf of a sub-class of all California residents from the larger class. (*Id.* ¶ 239.)

In the first, third, and fifth claims for violation of Section 17200 against Zaazoom Defendants, Plaintiffs allege that the process by which Zaazoom Defendants obtained Plaintiffs' personal and banking information from the Payday Loan Websites, registered them for coupon membership, engaged the Processors to draft RC Checks drawn on their checking accounts, and ultimately received the money—all without Plaintiffs' authorization or consent—constitutes unlawful, fraudulent, and unfair business acts. (*Id.* ¶¶ 245–257, 270–283 & 298–304.) In the second, fourth, and sixth claims, the Processors are alleged to have violated Section 17200 by drafting RC Checks payable to Zaazoom Defendants, depositing them into their own accounts, and retaining a portion of the money taken from Plaintiffs' accounts. (*Id.* ¶¶ 258–269, 284–297 & 305–311.) The Processors directly engaged in unlawful business practices or acted with reckless disregard of Zaazoom Defendants' unlawful activity.

In the seventh claim for conversion against Zaazoom Defendants and the Processors, Plaintiffs allege that, without their authorization or consent, money was wrongfully transferred from their checking accounts through RC Checks. (*Id.* ¶¶ 312–322.) On Plaintiffs' information and belief, the money was transferred to the depository bank accounts held by the Processors, who, in turn, sent the money to Zaazoom Defendants minus a processing fee. (*Id.* ¶¶ 70, 80, 94, 104–105, 116, 127, 138 & 317–318.) The specific, identifiable sums of money taken by Defendants through RC Checks were done so without any legal justification. (*Id.* ¶¶ 320–321.)

With regard to negligence (eighth claim), Plaintiffs allege that Zaazoom Defendants "owed a duty of reasonable care to Plaintiffs and other Class members." (TAC ¶ 324.) Based on the TAC, Plaintiffs make this claim in the alternative to the Section 17200 claims, alleging that the operators of the Payday Loan Websites "informed the Zaazoom Defendants that Plaintiffs and the other Class members had consented to enrolling in Zaazoom Defendants' online coupon services." (*Id.* ¶ 326; *see also id.* ¶ 331 (alternatively alleging that "Zaazoom Defendants created and deposited [RCCs] drawn on the accounts of Plaintiffs and the other Class members in reckless disregard of facts demonstrating that such checks were not authorized").) Plaintiffs further allege that the "very suspicious circumstances" on the return rate would have put any reasonable person on notice that the RC Checks were not authorized, and, as a result, the Zaazoom Defendants breached their duty of care to Plaintiffs and class members. (*Id.* ¶¶ 330 & 332–335.) Similarly (in the ninth claim), Plaintiffs allege that the Processors "owed a duty of reasonable care to Plaintiffs and other Class Members, where they created and deposited checks purportedly drawn on the Class members' accounts" and breached their duty because they were on notice (based on the circumstances) that the RCCs were not authorized. (*Id.* ¶¶ 337 & 340–344.)

In the tenth claim, Plaintiffs allege that the Depository Banks "owed a duty of reasonable care to Plaintiffs and the other Class members, where they received for deposit and settled [RC Checks] purportedly drawn on the Class members' accounts." (TAC ¶ 346; *id.* ¶ 352 (Depository Banks "accepted [RC Checks] payable to the Zaazoom Defendants for deposit, reviewed and authenticated [them], sent [them] to the relevant drawee banks, and then accepted settled funds for those checks from the drawee banks").) As specific factual circumstances showing how Depository Banks knew or should have known the RC Checks were not authorized, Plaintiffs allege: (i) high rates of check returns; (ii) a lack of endorsements by Zaazoom Defendants on the checks; (iii) that the RC Checks contained the statement "NON-NEGOTIABLE Authorization on File" in lieu of signatures; (iv) unrealistically-high check numbers; and (v) consumer complaints regarding RC Checks. (*Id.* ¶¶ 353–366.) Moreover, the Depository Banks "accepted these checks for deposit even though the Zaazoom Defendants did not have an account with [those banks]." (*Id.* ¶ 368.) Plaintiffs premise their eleventh claim for statutory negligence under Section 3404 on the same allegations: that the Depository Banks

accepted for deposit and settlement the RC Checks payable to Zaazoom Defendants, although it was the Processors who held accounts at the banks. (*Id.* ¶¶ 374–377.) Plaintiffs further allege that "[t]hese checks were forgeries" and that "[t]he person who determined to whom these checks were payable did not intend for the person identified as the payee to have any interest in the check." (*Id.* ¶ 373.)

Defendants filed their various motions on May 1, 2012, and the Joinder on May 2, 2012. Plaintiffs filed oppositions to each motion (Dkt. Nos. 119–122) and Defendants filed their replies in turn (Dkt. Nos. 123–126.) The Court held oral argument on the pending motions on June 12, 2012. (Dkt. No. 127.)

## II.   DISCUSSION

### A.   Legal Standards

#### 1.   Fed. R. Civ. P. 12(b)(6)

Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted against that defendant. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533–34 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading. *Walling v. Beverly Enters.,* 476 F.2d 393, 396 (9th Cir. 1973).

However, mere conclusions couched in factual allegations are not sufficient to state a cause of action. *Papasan v. Allain,* 478 U.S. 265, 286 (1986); *see also McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 810 (9th Cir. 1988). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atlantic. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Thus, "for a complaint to survive a motion to dismiss, the non-conclusory

'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009). Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. *Lopez v. Smith,* 203 F.3d 1122, 1129 (9th Cir. 2000).

### 2. Fed. R. Civ. P. 12(f)

Fed. R. Civ. P. 12(f) provides that the court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The function of a [Rule] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial[.]" *Whittlestone Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)). Motions to strike are generally disfavored (*Colaprico v. Sun Microsystem, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991)) and are not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation (*LeDuc v. Kentucky Cent. Life Ins. Co.,* 814 F. Supp. 820, 830 (N.D. Cal. 1992)). Consequently, when a court considers a motion to strike, it "must view the pleading in a light most favorable to the pleading party." *In re 2TheMart.com, Inc. Sec Lit.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2010). In deciding whether to grant a motion to strike under Rule 12(f), the court must start with the rule's plain language and determine whether the matter at issue is: (1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous. *Id.* at 973–74.

### B. FBD and BCT Motions (Dkt. Nos. 108 & 115)

#### 1. Requests for Judicial Notice Filed By FBD and BCT

##### a. Defendant First Bank of Delaware's Request for Judicial Notice in Support of Motion to Dismiss and Motion to Strike Plaintiffs' Third Amended Complaint (Dkt. No. 116 ("FBD's RJN"))

FBD requests that the Court take judicial notice of the three RC Checks alleged in the TAC with respect to Plaintiff Stacie Evans ("Evans RC Checks"). (FBD's RJN at 2 & Ex. 1; *see* Declaration of Paul J. Hall in Support of Defendant First Bank of Delaware's Motion to Dismiss and Motion to Strike Plaintiffs' Third Amended Complaint (Dkt. No. 115-1 ("Hall Decl.")); *see* TAC ¶¶ 228–230.) FBD contends that judicial notice is permitted under Fed. R. Evid. 201

because the Evans RC Checks are documents whose contents are alleged in the complaint and whose authenticity no party questions.  (FBD's RJN at 2.)  FBD contends that the Evans RC Checks show there were no "suspicious circumstances" and that the Court is not required to take Plaintiffs' allegations as true because the Evans RC Checks themselves (upon which the TAC relies) contradict their allegations.  (FBD's RJN at 2–3.)  FBD emphasizes Plaintiffs should not be permitted to both rely on the language of the RC Checks *and* keep the documents from being judicially noticed. (Defendant First Bank of Delaware's Reply Brief in Support of Motion to Dismiss All of, and to Strike Portions of, Plaintiff's Third Amended Complaint (Dkt. No. 126 ("FBD Reply")) at 9.)

Plaintiffs insist that judicial notice of the Evans RC Checks as a whole is improper and that judicial notice must be sought of specific "facts."  (Plaintiffs' Opposition to Defendant First Bank of Delaware's Motion to Dismiss All of, and to Strike Portions of, Plaintiffs' Third Amended Complaint (Dkt. No. 122 ("Opp. to FBD Motion") at 10).)  Plaintiffs do not oppose judicial notice of the "fact" that the Evans RC Checks "are redacted copies of the checks referenced in Paragraphs 228–230 of the TAC."  (*Id.*)  Beyond this, Plaintiffs argue that any additional facts are subject to a reasonable dispute and are not capable of accurate and ready determination from sources that cannot be questioned.  (*Id.*)

The general rule is that a court "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  *United States v. Corinthian Colleges*, 655 F.3d 984, 998–999 (9th Cir. 2011) (citing *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001)).  A court may, however, "consider unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document."  *Corinthian Colleges*, 655 F.3d at 999 (citing *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006) and *Lee*, 250 F.3d at 688).  In addition, Fed. R. Evid. 201 allows a court to take judicial notice of "matters of public record," but not facts that may be subject to a reasonable dispute.  *Lee*, 250 F.3d at 689–90; Fed. R. Evid. 201(b)(2) (judicial notice may be taken of facts not subject to a reasonable dispute because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").  Taking judicial notice of "matters of public record" under Fed. R. Evid. 201 and consideration of documents "necessarily relie[d]" upon in the

1    complaint are two separate exceptions to the general rule that a court may not consider material

2    beyond the pleadings on a Rule 12(b)(6) motion.  *Lee*, 250 F.3d at 689–90.

3        To the extent that Plaintiffs argue that judicial notice of the Evans RC Checks is prohibited

4    because they are not matters of public record that are "not capable of accurate and ready

5    determination from sources cannot be questioned," the Court rejects such contention.  (*See* Opp. to

6    FBD Motion at 10.)  Independent of Fed. R. Evid. 201, the Court may consider the Evans RC Checks

7    if the TAC refers to them, they are central to the Plaintiffs' claims, and authenticity is not questioned.

8    *Corinthian Colleges*, 655 F.3d at 999; *Lee*, 250 F.3d at 689–90.  The Court finds these requirements

9    are met: Plaintiffs concede authenticity of the Evans RC Checks (attached to the Hall Decl. and

10   FBD's RJN) in their Opposition by stating that they are "redacted copies of the checks referenced" in

11   the TAC.  (Opp. to FBD Motion at 10; Hall Decl. ¶¶ 2–3 & Ex. 1.)  There is no dispute that the TAC

12   necessarily relies or refers to these RC Checks and that they are central to the claims of Plaintiff

13   Evans.  Moreover, Plaintiffs cannot use the RC Checks and specific details and language contained

14   therein as both a sword and a shield against FBD.  *See In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d

15   833, 837–38 (N.D. Cal. 2000) ("[T]he court may consider the full text of a document the complaint

16   quotes only in part.") (citing *In re Stac Elecs. Sec. Litig.,* 89 F.3d 1399, 1405 n.4 (9th Cir. 1996)).

17       For these reasons, the Court **GRANTS** FBD's RJN of the Evans RC Checks, attached as Exhibit

18   1 to the RJN and Hall Decl.  The Court will consider, in addition to the arguments of the parties, what

19   is evident from the face of the Evans RC Checks themselves in determining whether Plaintiffs' claims

20   against FBD are legally sufficient.

21                    **b.    Request for Judicial Notice in Support of Defendant First National
                             Bank of Central Texas' Motion to Dismiss the Third Amended**
22                           **Complaint (Dkt. No. 109 ("BCT's RJN"))**

23                    Mistakenly relying on the California Evidence Code, First National

24   Bank of Central Texas ("BCT") requests that the Court take judicial notice of the SAC for the purpose

25   of comparing the allegations therein with those in the TAC.  (BCT Motion at 9–10.)  BCT contends

26   that the Court is not bound to take as true Plaintiffs' amended allegations that are a "sham" and

27   contrary to previous allegations in the SAC.  Here, BCT contends that Plaintiffs have attempted to

28   avoid the defects of the SAC by now alleging that RC Checks made payable to Zaazoom Defendants

were deposited into *Processors'* accounts, rather than Zaazoom Defendants' accounts. (*Id.*)[3] BCT also notes that Plaintiffs make this allegation on information and belief (compared to the SAC, when it was based on personal knowledge), and thus the Court is not bound to accept as true such allegations. (*Id.* at 9–10; Reply to Plaintiffs' Opposition to Defendant First National Bank of Central Texas' Motion to Dismiss Third Amended Complaint (Dkt. No. 124 ("BCT Reply")) at 3.)

Plaintiffs explain that with regard to whether the Processors or Zaazoom Defendants held depository accounts, they have, "since the filing of the SAC, . . . obtained additional evidence indicating that the depository accounts were held in the names of the Processors and not the Zaazoom Defendants." (Plaintiffs' Opposition to Defendant First National Bank of Central Texas' Motion to Dismiss the Third Amended Complaint (Dkt. No. 121 ("Opp. to BCT Motion") at 10.) Plaintiffs contend the amended allegation cannot serve as a basis of dismissal merely because it is inconsistent with the SAC. *Id.* (citing *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858–59 (9th Cir. 2007)).

BCT's argument essentially requests that the Court determine as a matter of law that Plaintiffs cannot substantiate their allegations with evidence and/or that the Court strike the amended allegations based on the contradiction between complaints. The Court agrees with Plaintiffs that such determination is improper. A "district court has no free-standing authority to strike pleadings simply because it believes that a party has taken inconsistent positions in the litigation[,]" nor does Rule 12 provide "authority to dismiss 'sham' pleadings." *PAE Gov't Servs.*, 514 F.3d at 859 & 860. "Even assuming that the two pleadings were irreconcilably at odds with each other, this would not, by itself, establish that the later pleading is a sham." *Id.* at 858. Nothing in the Federal Rules of Civil Procedure "prevent[s] a party from filing successive pleadings that make inconsistent or even contradictory allegations." *Id.* at 860. The Court cannot, on this motion, conclude that Plaintiffs' amended allegations do not have evidentiary support solely because they contradict a prior allegation.

For these reasons, the Court **DENIES** BCT's RJN of the SAC for the purpose of determining that any amended allegations are a "sham" and/or legally insufficient as unsupported conclusions. To

---

[3] FBD generally argues that Plaintiffs cannot ignore their previous allegations to create a "cosmetic appearance of compliance with the *Sun 'N Sand* exception." (FBD Motion at 2.)

the extent that the SAC is otherwise referred to in this Order, the Court need not take judicial notice of the document because it is part of the record in this action.

### 2. First Bank of Delaware's Alternative Motion to Strike

As part of its motion, FBD alternatively moves to strike paragraphs 169–172, 345, 366–368 and 370 of the TAC. (FBD Motion at 1.) Plaintiffs do not oppose striking TAC ¶¶ 169–172 relating to suspicious activity reports. In light of Plaintiffs' non-opposition to strike paragraphs 169–172, FBD withdraws its request to strike paragraphs 366–368 as moot. (FBD Reply at 3.) As to the remaining request to strike paragraphs 345 and 370, FBD contends striking is appropriate because they incorporate by reference "all the prior allegations of the complaint," including claims asserted against FBD in the SAC but dismissed by the First Order. (FBD Motion at 18.) The Court finds that paragraphs 345 and 370 are neither redundant, immaterial, impertinent, nor scandalous. Fed. R. Civ. P. 12(f). Paragraphs 345 and 370 technically do incorporate by reference factual allegations that are made against other Defendants. However, this practice is not itself improper, and the operative claims against FBD in the TAC are nonetheless clear.

Accordingly, the Court **DENIES** FBD's motion to strike paragraphs 345 and 370, and **GRANTS** the motion to strike paragraphs 169–172. The motion to strike paragraphs 366–368 has been withdrawn as moot.

### 3. Negligence Claim Against Depository Banks (Tenth Claim)

FBD contends that Plaintiffs fail to articulate a legal duty owed by FBD to them for common law negligence and have not alleged facts implicating the narrow "suspicious circumstances" exception set forth *Sun 'N Sand Inc. v. United California Bank*, 21 Cal. 3d 671 (1978). (FBD Motion at 1.) The required element of the *Sun 'N Sand* exception is that "fraudulent misappropriation of a check made payable to one entity that is taken and deposited by another entity by a forged, unauthorized or nonexistent endorsement in a name other than the name of the payee." (FBD Motion at 10.) FBD contends that "each case [applying the narrow exception] involved the bank's liability for allowing a person to deposit a check, payable to someone else, *into a personal account, under circumstances that should have alerted the bank to the possibility of fraud*." (*Id.* at 11 (quoting

12

*Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 544–45 (Cal. Ct. App. 1998)) (emphasis added by FBD).)

Relying on the Evans RC Checks themselves, FBD states that the "payee, the endorser, and the intended beneficiary of the [RC Check] are the same entity." (FBD Motion at 2; *id.* at 5 (RC Checks "were endorsed by and deposited for the benefit of the same payee (the dba defendants Discount Web Member Site and UClip Coupon) as are shown on the payee line of the [RC Checks]. There is no mis-match . . . ").) Here, there "was no suspicious third-party agent or endorsement, no inflation of the amounts of the checks, nor any other suspicious information available merely from inspecting a check." (FBD Motion at 12.) Because of the claimed consistency on the front and back of the checks, FBD argues there are no "suspicious circumstances" sufficient to impose liability on it. (FBD Motion at 7 & 12 (California courts have been "unwilling" to impose a duty on depository banks except where the "bad acting depositor wrongfully endorsed checks in a name *other than the named payee*") (emphasis in original).)

BCT makes a similar argument regarding a lack of suspicious circumstances. (BCT Motion at 5–7.) It argues that depository banks do not owe a duty of care to Plaintiffs as non-customers and non-depositors, and that the narrow *Sun 'N Sand* exception is limited to "those situations in which the checks were not insignificant in amount, were drawn payable to the order of a bank and were presented to the payee bank by a third party seeking to negotiate the checks for his own benefit." (*Id.* at 11–13 (no duty owed where there is some objective indicia from which bank could reasonably conclude that party presenting the check is authorized to transact it in the manner proposed)).) Here, BCT contends that a single check for $48.21 made payable to Zaazoom Defendants and deposited into a BCT account "opened by or on behalf of the Zaazoom Defendants" does not fall within the *Sun 'N Sand* exception. (BCT Motion at 13.)[4] It also makes a number of policy arguments as to why the Court should not find a duty of care exists, including that banks should not have a duty to "police" their customers, that customers have a reasonable expectation of privacy, and that banks cannot

---

[4] BCT did not request judicial notice of the RC Check at issue with respect to Plaintiff Amber Marsh. (*See* TAC ¶¶ 211–218.)

efficiently process transactions if it must track accounts in detail and intervene every time something is suspicious.  (BCT Motion at 12.)

Plaintiffs argue the circumstances surrounding the RC Checks were "suspicious" for the following reasons: (i) RC Checks are inherently vulnerable to fraud; (ii) RC Checks were payable to Zaazoom Defendants, but the Zaazoom Defendants did not have accounts with the Depository Banks; (iii) the Processors deposited RC Checks payable to the Zaazoom Defendants in accounts held in the name of the Processors; (iv) no employee, officer, or director of Zaazoom Defendants endorsed the RC Checks upon deposit, despite that they were made payable to Zaazoom Defendants; (v) the RC Checks did not display the name or electronic signature of the purported drawer in the signature line, but instead stated "Authorization On File"; (vi) the RC Checks stated they were non-negotiable, but notwithstanding this language, they were deposited with the Depository Bank in an account held by a person other than the payee; (vii) the RC Checks bore "astronomically high" check numbers; (viii) the return rate of RC Checks made payable to Zaazoom Defendants exceeded 60% for FBD and 53% for BCT; and (ix) the Depository Banks knew that thousands of purported drawers had reported the checks were forgeries.  (Opp. to FBD Motion at 12–13; Opp. to BCT Motion at 12–13; *see* TAC ¶¶ 149, 154–168, 183 & 188–200.)

In response to FBD's argument that there is "no mis-match" between the payee and endorser on the fronts and backs of the RC Checks, Plaintiffs explain that "[t]he endorser [on the Evans RC Checks] appears to be an entity named CSI (possibly the Processor), which has an account with [FBD]."  (Opp. to FBD Motion at 12.)  Plaintiffs further argue that the endorsements were not provided by Zaazoom Defendants, and that *even if* they had been provided by them, "the checks would remain facially problematic" because that results in an effective concession that FBD disregarded the endorsement by depositing the checks into an account held in another's name.  (*Id.*)

In the First Order, the Court dismissed Plaintiffs' negligence claim because the SAC allegations—*as pled therein*—did not allege sufficient danger signals inherent in the attempted check negotiation, and thus the narrow *Sun 'N Sand* exception did not apply.  (First Order at 17–18.)  Specifically, the Court summarized the SAC as alleging that RC Checks "were made payable to Zaazoom Defendants, were endorsed by them, and were deposited into *those Defendants' accounts*

14

United States District Court
Northern District of California

*with Depository Banks*, not the personal account of a seemingly unrelated party."[5]  (*Id.* at 18 (emphasis supplied).)  These facts were unlike those found in *Sun 'N Sand* and its progeny, where "a duty was triggered based on 'the particular circumstances of the checks, endorsements or depositors, where the person attempting to negotiate the check is not the payee.'"  (First Order at 17–18 (citing California cases).)  In allowing leave to amend, the Court cautioned that mere allegations regarding rates of returned checks would not be sufficient, on their own, to state suspicious circumstances to come within *Sun 'N Sand*.  (*Id.* at 18–19 (holding that high rates of return did "not change the fact that Zaazoom Defendants were depositing [RC Checks] made payable to them into their accounts held with Depository Banks, and from the faces of the [RC Checks] themselves, there were no visible dangers, risks, or forged endorsements apparent to the Banks").)

Plaintiffs do not, as FBD contends, merely rely on previously-made allegations in the TAC, nor have Plaintiffs only alleged high rates of return.  (FBD Reply at 6.)  The critical distinction between the TAC and SAC regarding suspicious circumstances are the allegations that the Zaazoom Defendants did not hold accounts with the Depository Banks and that a Processor deposited RCCs payable to Zaazoom Defendants in a Processor's account.  In determining whether suspicious circumstances have been alleged, the Court must examine these allegations, along with the rest of the TAC, taking them as true and in the light most favorable to Plaintiffs.[6]

Taking as true Plaintiffs' allegations, the high volume of RCCs made payable to Zaazoom Defendants *plus* the high rate of return (500,000 RC Checks with 60% return rate with FBD and 116,000 RC Checks with 53% return rate for BCT (TAC ¶¶ 162, 166, 195 & 198)), in addition to the

---

[5] The Court also stated that while cases—such as *Software Design and Application, Ltd. v. Hoefer & Arnett, Inc.*, *Joffe v. United California Bank*, *E.F. Hutton & Co. v. City National Bank*, and *Chazen v. Centennial Bank*—"did not hold that suspicious circumstances arise *only* in [those] contexts, the Court does not believe facts are sufficiently alleged in the SAC warranting expansion of this otherwise narrow exception."  (First Order at 18 (emphasis in original).)  In other words, the Court did not hold that suspicious circumstances must be limited to the check negotiation itself or cannot exist outside of forged, unauthorized, or nonexistence endorsements.

[6] For the reasons set forth in Section II.B.1.b, the Court must take as true even those allegations that seem inconsistent between the TAC and SAC.  *PAE Gov't Servs.*, 514 F.3d at 859 & 860 ("district court has no free-standing authority to strike pleadings simply because it believes that a party has taken inconsistent positions in the litigation[,]" nor does Rule 12 provide "authority to dismiss 'sham' pleadings").

allegation that the account holder was a Processor—not the payee Zaazoom Defendant—and that the Depository Banks knew of the excessive return rate and disregarded it because of their financial motivation for each returned check (or, alternatively, outright complicity in the scheme) state *plausibly* suspicious circumstances that should proceed beyond a motion to dismiss. With respect to FBD, the faces of the Evans RC Checks themselves do not change this. At best, the payee and the endorser are the same, but it is unclear to the Court precisely who "CSI" is.[7] There is no CSI named as a defendant or alleged to be affiliated with any defendant. Here, the insertion of CSI, a third party and presumably a processor, raises a question of whether the Depository Banks *should have* acted upon such high rates of return and high volumes of RC Checks precisely because the account holder was not the named payee.

Whether this claim ultimately prevails is not currently at issue, but taking these allegations as a whole and in the light most favorable to Plaintiffs, the Depository Banks' motions to dismiss the common law negligence claim is **DENIED**.[8]

### 4.  Statutory Negligence Against Depository Banks (Eleventh Claim)

#### a.  Commercial Code Sections

Plaintiffs' statutory negligence claim is based on Section 3404 of the California Commercial Code, which is entitled "Imposters; fictitious payees." Specifically, Plaintiffs assert sub-section (b) as the basis of this claim. Section 3404(b) states:

> If (i) a person whose intent determines to whom an instrument is payable (subdivision (a) or (b) of Section 3110) does not intend the person identified as payee to have any

---

[7] FBD responds that the alleged difference between the depositor (Processors) and payee (Zaazoom Defendants) is not suspicious because Plaintiffs allege that "Zaazoom [Defendants] authorized the Payment Processors to deposit the [RC Checks]." (FBD Motion at 2; *see, e.g.,* TAC ¶ 348 ("Zaazoom Defendants engaged processors to draft and deposit [RC Checks] made payable to the Zaazoom Defendants.").) Moreover, it argues Plaintiffs' allegations that Zaazoom Defendants did not endorse the RC Checks are incorrect, based on the Evans RC Checks, and should not be taken as true. (*See* TAC ¶¶ 156–157 & 361.) Regardless of any claimed "authorization," the *totality of the allegations in the TAC* are such that a plausible claim has been stated that suspicious circumstances existed.

[8] FBD argues that "absent the *Sun 'N Sand* exception, Plaintiff[s] cannot assert a claim for common law negligence because Plaintiff[s'] claim is entirely displaced by Commercial Code [sections] 4207 and 4208." (FBD Reply at 11; FBD Motion at 3.) Here, the Court has found that Plaintiffs have stated a plausible claim under the suspicious circumstances exception. As such, the Court need not reach the issue of displacement.

interest in the instrument, or (ii) the person identified as payee of an instrument is a fictitious person, the following rules apply until the instrument is negotiated by special indorsement:

(1) Any person in possession of the instrument is its holder.

(2) An indorsement by any person in the name of the payee stated in the instrument is effective as the indorsement of the payee in favor of a person who, in good faith, pays the instrument or takes it for value or for collection.

In other words, sub-section (b) "shields a bank from liability for negotiating an unauthorized or fraudulent check by deeming an indorsement to be effective" where the stated conditions are met. *Unlimited Adjusting Group, Inc. v. Wells Fargo Bank, N.A.*, 174 Cal. App. 4th 883, 891 (Cal. Ct. App. 2009). In situations of fraud, the drawer is in the best position to avoid and detect a fraud and bears the loss. *See* Cal. Comm. Code § 3404, Editors' Notes, cmt. 3. However, the drawer of check may recover from a depository bank on a comparative negligence basis where the bank fails to exercise ordinary care in taking for collection a check subject to sub-section (b). Specifically, Section 3404(d) permits a claim for negligence: "[w]ith respect to an instrument to which subdivision (a) or (b) applies, if a person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure contributes to loss resulting from payment of the instrument, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss."

### b. Summary of Argument

The parties have differing interpretations of Section 3404. To determine "whose intent determines to whom an instrument is payable" and, consequently, whether that person "intend[ed] the person identified as payee to have any interest in the instrument," FBD contends that California Commercial Code section 3110 ("Section 3110") controls. Specifically, under Section 3110(b): "[i]f the signature of the issuer of an instrument is made by automated means, such as a check-writing machine, the payee of the instrument is determined by the intent of the person who supplied the name or identification of the payee, whether or not authorized to do so." FBD argues that Plaintiffs allege that the signature of the issuer was made by automated means, and thus the relevant inquiry must be the intent of the person "who *supplied the name . . .* of the payee, *whether or not authorized to do so.*" Cal. Comm. Code § 3110(b) (emphasis supplied). (FBD Motion at 17; FBD

Reply at 12.)  As pled, the Zaazoom Defendants or the Processors determined to whom the RCCs were payable and *intended* for the person identified as payee (the Zaazoom Defendants) to have an interest in the RCCs.  (FBD Motion at 17 (citing TAC).)  As such, FBD contends that Section 3404(b) cannot apply because the intended payee received the benefit of the RCC as intended.

BCT contends that Section 3404 does not apply because there is no imposter.  It argues that an imposter can only exist where the issuance of a check has been induced through impersonation of the payee.  (BCT Reply at 6.)  Here, the TAC alleges that the RCCs were forgeries because they did not show the name or signature of the drawer, and instead stated: "Authorization on File."  (BCT Motion at 15 (citing TAC ¶¶ 192 & 373).)  With only forgeries alleged, BCT contends that Plaintiffs have failed to plead a sufficient claim under Section 3404(b).  (BCT Motion at 15–16.)

Plaintiffs assert generally that "Section 3404(b) covers situations where 'the payee is a real person but the drawer or maker does not intend the payee to have any interest in the instrument.'" (Opp. to FBD Motion at 15 (quoting Cal. Comm. Code § 3404, Editors' Notes, cmt. 2); *see* Opp. to BCT Motion at 14 (quoting same comment).)  Plaintiffs, however, focus on their own intent in interpreting Section 3404(b).  Specifically, Plaintiffs assert they are the drawers of the checks because they are "identified in the [RC Checks] as ordering payment."  Because they did not intend for Zaazoom Defendants to have any interest in any RC Checks, Section 3404(b) is implicated.  (Opp. to FBD Motion at 15 & Opp. to BCT Motion at 14.)  As to the "person whose intent determines to whom an instrument is payable," Plaintiffs claim that using measuring intent from any Defendant's perspective—and not Plaintiffs—is "inconsistent" with the Editors' Notes to Section 3404.  They argue that the situation at hand is akin to Cases #4 & #5 in the Editors' Notes.  (Opp. to FBD Motion at 15.)  Moreover, Plaintiffs argue that the general policy of Section 3404 and the Commercial Code shift liability to depository banks to scrutinize customers and prevent unauthorized RC Checks from ever being deposited in customer accounts.  (Opp. to FBD Motion at 16; Opp. to BCT Motion at 13.)

### c.  Applicability of Section 3404(b)

The first issue is to determine whose intent is relevant for the purposes of Section 3404(b).  For Section 3404(b)(i) to apply, it must be the case that the "person whose intent determines to whom an instrument is payable . . . d[id] not intend the person identified as payee to

have any interest in the instrument." The statute is explicit in referencing Section 3110(a) & (b) to identify the person to whom an instrument is payable. Based on the allegations in the TAC, the Court agrees with FBD that the person to whom an instrument is payable must be determined using Section 3110(b), which applies "[i]f the signature of the issuer of an instrument is made by automated means, such as a check-writing machine." Thus, under Section 3110(b), "the payee of the instrument is determined by the intent of the person who *supplied the name* or identification of the payee, *whether or not authorized to do so*." (Emphasis supplied.) The TAC is clear that Zaazoom Defendants allegedly transmitted personal information to the Processors, who then used the information to draft RC Checks made payable to Zaazoom Defendants. (TAC ¶¶ 78 & 102–104.) Consequently, either Zaazoom Defendants or the Processors must be deemed to have supplied the name of the payees of the RC Checks. Further, while Plaintiffs attempt to re-frame the inquiry to themselves by arguing that they, as drawers, did not ever intend for Zaazoom Defendants to have an interest in any RC Checks, Section 3110(b) makes no distinction between when the names of the payee are supplied *with or without* authorization to do so. *See Unlimited Adjusting Group*, 174 Cal. App. 4th at 889 ("The intent of the signer controls even if the check is forged. . . . [T]he intent of the forger-signer determines the identity of the payee."). For these reasons, the Court finds that the Zaazoom Defendants or Processors—as the person supplying the name of the payees—intended for Zaazoom Defendants to be payees of the RC Checks. As such, Section 3404(b)(i) does not apply based on the allegations in the TAC.

Section 3404(b)(ii) applies where "the person identified as payee of an instrument is a fictitious person." However, even under sub-section (b)(ii), the payee's identity (as provided by Section 3110(b)) is determined by the intent of the supplier of the payee names. Without delineating between (i) or (ii), Case #4 in cmt. 2 of the Editors' Notes states that "[u]nder Section 3-110(b)[,] Thief is the person whose intent determines to whom the check is payable and Thief did not intend Supplier Co. to have any interest in the check." *See also Charles Schwab & Co., Inc. v. Bank of America*, No. C 10-4913 JL, 2011 WL 1753805, at *4 (N.D. Cal. May 9, 2011) ("[T]he key issue is whether the person signing as or on behalf of the drawer . . . intended that the [named] payee have no interest in the [check].") (first alteration supplied) (internal citations omitted). In situations where the

United States District Court
Northern District of California

named payee is intended to have an interest in the check, "it is immaterial whether [the named payee] was a real or fictitious entity." *Id.*[9]

Plaintiffs analogize the TAC to Cases #4 and #5 in the Editors' Notes at Comment 2 to illustrate that Section 3404 imposes liability on depository banks on a comparative negligence basis. However, those same comments indicate that this section was not intended to apply here. Section 3404(b)'s "primary importance is with respect to checks of corporations and other organizations. It also applies to forged check cases." Section 3404, cmt. 2. In each of the illustrative cases, the facts contemplate that a corporation is involved and that someone is perpetrating a fraud on the corporation. Nowhere do the case scenarios involve or imply that where a *personal check* is forged, the *subjective intent of the victim* determines to whom an instrument is payable, rather than the standard otherwise applied under Section 3404(b). The Court is not persuaded that it should expand the Section 3404 beyond its intended scope, as illustrated in the case scenarios.[10]

For these reasons, the Court finds that Section 3404 cannot serve as a basis for liability on Depository Banks based on the facts alleged in the TAC. FBD and BCT's respective motions to dismiss are **GRANTED WITHOUT LEAVE TO AMEND** as to the statutory negligence claim.

### C. Jack Henry Motion (Dkt. No. 111)

Plaintiffs allege that, as a Processor for Zaazoom Defendants, Defendant Jack Henry & Associates, Inc. ("Jack Henry") created and deposited RC Checks payable to Zaazoom Defendants using the personal information provided by them. (TAC ¶¶ 100–103.)[11] Jack Henry "deposited these

---

[9] *See* 4 Witkin, Summary of Cal. Law, Negotiable Instruments, § 17 at pp. 373–74 (10th ed. 2005) ("The intent of the person who signs an instrument as issuer, or in the name or behalf of the issuer, determines to whom the instrument is initially payable. This is true whether or not the signature is authorized. The instrument is payable to the person intended by the signer even if that person is identified in the instrument by a name or other identification that is not that of the intended person. Thus, *the signer's intent controls even where* (a) the signature is a forgery, (b) the name alone is not sufficient to identify the payee, (c) the payee is misidentified, or (d) *the payee is fictitious*.") (emphasis supplied); *see* 6B Anderson U.C.C. § 3-404:12 [Rev] (3d. ed. 2003) ("UCC § 3-404(b) does not apply unless the person signing as, or on behalf of, the drawer or maker intended that the payee have no interest in the instrument. . . . [I]t makes no difference whether the payee is an existing person or whether a debt is actually owed to him or her.").

[10] Notably, only Case #4 involved checks signed by a check-writing machine. To the extent that Case #5 relates to the stealing of check forms and the forging of actual signatures, such case is inapplicable here.

[11] Plaintiffs allege that either Zaazoom Defendants or Data Processing Systems, another Processor, engaged Jack Henry to serve as Zaazoom Defendants' Processor. (TAC ¶ 101.)

[RC Checks] in an account at [BCT] held in Jack Henry's name." (*Id.* ¶ 104; *see id.* ¶¶ 106 & 116 (deposited in account in Jack Henry's name).)  Plaintiffs allege that none of the Zaazoom Defendants, nor any officer, director, or employee thereof endorsed any of the RC Checks.  (*Id.* ¶ 106.)  Jack Henry served as a Processor to Zaazoom Defendants for at least 116,000 RC Checks.  (*Id.* ¶ 107.) Plaintiffs allege that Jack Henry failed to conduct a reasonable inquiry into Zaazoom Defendants and knew from monitoring aggregate data that more than 61,000 RC Checks it drafted payable to Zaazoom Defendants were returned as non-payable, which exceeded 53% of all RC Checks created. (*Id.* ¶¶ 108–111.)  For the funds identified in the RC Checks it drafted, Jack Henry allegedly deposited the funds in its account with BCT, remitted the funds (minus a processing fee) to DPS, which in turn remitted those funds (minus a fee) to Zaazoom Defendants.  (*Id.* ¶ 116.)  Plaintiffs allege that Jack Henry knew or should have known that Zaazoom Defendants were engaged in wrongdoing and/or recklessly disregarded the same by continuing to create and deposit RC Checks.  (*Id.* ¶¶ 119–120.) Plaintiffs also allege that it had a financial incentive in perpetuating Zaazoom Defendants' conduct. (*Id.* ¶ 117.)

### 1. Request for Judicial Notice

Jack Henry filed a Request for Judicial Notice in Support of its Motion to Dismiss the Third Amended Complaint.  (Dkt. No. 113 ("Jack Henry's RJN").)  Jack Henry's RJN mirrors BCT's—namely that the SAC and TAC are inconsistent and the TAC's allegations are lacking in evidentiary support.  (Jack Henry Motion at 9–10.)  For the reasons set forth above in Section II.B.1.b. the Court **DENIES** Jack Henry's RJN of the SAC for the purpose of determining that any amended allegations are a "sham" and/or legally insufficient as unsupported conclusions.  To the extent that the SAC is otherwise referred to in this Order, the Court need not take judicial notice of the document because it is part of the record in this action.

### 2. California Business and Professions Code Section 17200

#### a. Unlawful Prong of Section 17200 (Second Claim)

For the unlawful prong of a Section 17200 claim, "the UCL 'borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.'"  *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1150

United States District Court
Northern District of California

(N.D. Cal. 2010) (quoting *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163,

180 (1999)). Allegations in support of such a claim must state with reasonable particularity the facts

supporting the statutory elements of the alleged violation. *Stearns*, 763 F. Supp. 2d at 1150; *see*

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.,* 983 F. Supp. 1303, 1316 (N.D. Cal. 1997).

Plaintiffs allege that "[i]n violation of Commercial Code section 3416, [the Processors,

including Jack Henry] breached their warranties that the creation of the demand drafts (*i.e.*, the

remotely created checks) according to the terms of their face were authorized by the person identified

as the drawer (*i.e.*, Plaintiffs and the other California subclass members)." (TAC ¶ 267 (hereinafter

referring to statute as "Section 3416").) Jack Henry contends, however, it cannot be liable under this

section because it requires that a person "transfer" an instrument for consideration in order for certain

warranties to have been made and subsequently breached.[12] Jack Henry argues that Plaintiffs have

only alleged that it prepared RC Checks made payable to Zaazoom Defendants and that the RC

Checks were deposited into an account held "by either" Zaazoom Defendants or Jack Henry. (Jack

Henry Motion at 10.) Jack Henry further contends it cannot be liable based on these allegations and

for having received a per-check processing fee because it "did not transfer [RC Checks] for

consideration." (*Id.*) Plaintiffs disagree and argue that under Cal. Comm. Code section 3203, an

instrument is "transferred when it is delivered by a person other than its issuer for the purpose of

giving the person receiving the delivery the right to enforce the instrument." (Opp. to Jack Henry

Motion at 10.) By alleging that Jack Henry, (i) who is not the issuer of the RC Checks, (ii) delivered

said checks to BCT, (iii) in exchange for consideration and (iv) for the purpose of giving BCT the

right to enforce the checks, Plaintiffs assert they have sufficiently alleged a "transfer" occurred under

Section 3416. Moreover, Plaintiffs allege that money was actually transferred to Jack Henry and

Zaazoom Defendants as a result. (*Id.* at 11.) In its Reply, Jack Henry fails to directly respond to

Plaintiffs' arguments and argues only that the allegations are a sham. (Reply to Plaintiffs' Opposition

---

[12] Plaintiffs identify the relevant portion of Section 3416 as stating: "[a] person who transfers an instrument for consideration warrants all of the following to the transferee and, if the transfer is by indorsement, to any subsequent transferee: All signatures on the instrument are authentic and authorized." (Plaintiffs' Opposition to Defendant Jack Henry & Associates, Inc.'s Motion to Dismiss the Third Amended Complaint (Dkt. No. 120 ("Opp. to Jack Henry Motion")) at 10 (quoting Cal. Comm. Code § 3416(a)(2)).)

1    to Defendant Jack Henry & Associates, Inc.'s Motion to Dismiss the Third Amended Complaint (Dkt.

2    No. 125 ("Jack Henry Reply")) at 4.)

3         Plaintiffs further allege that in violation of Commercial Code section 4207, the Processors,

4    "who had accounts with the depository banks at which the remotely created checks were deposited,

5    breached their warranties that the creation of the demand drafts (*i.e.*, the remotely created checks)

6    according to the terms of their face were authorized by the person identified as the drawer (*i.e.*,

7    Plaintiffs and the other California Subclass members)."  (TAC ¶ 268.)  As to this section, Jack Henry

8    contends that it "applies to a collecting bank, not to a payment processor."  (Jack Henry Motion at

9    11.)[13]  Plaintiffs disagree because the statute may apply to either a "customer or a collecting bank"

10   and Jack Henry is alleged to be a customer.  (Opp. to Jack Henry Motion at 11.)  Jack Henry does not

11   substantively respond to Plaintiffs' argument that Jack Henry is alleged to be a customer of BCT,

12   except to claim that the allegations are a sham.  (Jack Henry Reply at 5.)

13        Neither party has cited to any cases as authority in support of their positions with regard to

14   either Sections 3416 or 4207.  Focusing on the allegations of the TAC—as both parties do—Plaintiffs

15   allege that Jack Henry "deposited these checks in an account at [BCT] held in Jack Henry's name."

16   (TAC ¶¶ 104, 106, 116 & 263.)  Jack Henry received the funds identified in the RC Checks it drafted,

17   and remitted the funds to other Defendants, minus a processing fee.  (*Id.* ¶ 116.)  Jack Henry's

18   argument that it did not transfer checks for consideration creates, at best, a factual dispute which the

19   Court is not positioned to resolve at this juncture.   Plaintiffs have sufficiently alleged that the Jack

20   Henry transferred an instrument for consideration within the meaning of Cal. Comm. Code sections

21   3203 & 3416.  Without providing any authority otherwise, and drawing all reasonable inferences in

22   favor of the non-moving party (*see Usher*, 828 F.3d at 561), the Court finds that Plaintiffs have also

23   stated a claim under Section 4207 because Jack Henry was a customer.

24        For these reasons, the Court **DENIES** Jack Henry's Motion as to the second claim based on the

25   unlawful prong of Section 17200.

26   ───────────────────────
     [13] Similar to Section 3416, Cal. Comm. Code Section 4207, in relevant part, states: "[a] customer or collecting
27   bank that transfers an item and received a settlement or other consideration warrants to the transferee and to
     any subsequent collecting bank that all of the following are applicable: . . . All signatures on the item are
28   authentic and authorized."  (Opp. to Jack Henry Motion at 10 (quoting Cal. Comm. Code § 4207(a)(2) (first
     alteration added).)

**b.    Fraudulent Prong of Section 17200 (Fourth Claim)**

Jack Henry asserts that it cannot be liable under the UCL's fraudulent prong because a fraudulent act is one that is "likely to *deceive* the public." (Jack Henry Motion at 11 (citing *Comm. on Children's Television v. General Foods Corp.*, 35 Cal. 3d 197, 211 (1983)) (emphasis in original).) Describing the essence of Plaintiffs' claims as asserting that the RC Checks at issue were "forgeries" (*see* TAC ¶ 295) and relying on the dictionary definition of a forgery to conclude that "to forge a check would be to sign another person's name," Jack Henry further concludes that an RC Check "bearing on the signature line the notation 'Non-Negotiable Authorization on File' or 'Authorization on File' is not a forgery." (Jack Henry Motion at 11.) Jack Henry describes this case as being about misappropriation of personal information and subsequent misuse of that information, not false representations. (*Id.*; Jack Henry Reply at 6 ("a forgery is not the same as an oral representation about that document").) Without alleging any false representations likely to deceive the public, Jack Henry argues there is no fraudulent conduct under Section 17200. (Jack Henry Motion at 11; Jack Henry Reply at 7.)

Agreeing that a business practice is fraudulent under the UCL if it is likely to deceive the public, Plaintiffs first note that the determination of whether a practice is "deceptive" is based on "the likely effect such practice would have on a reasonable consumer," which is a question of fact. (Opp. to Jack Henry Motion at 11 (citing *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1380–81 (Cal. Ct. App. 2012)).) Plaintiffs argue they have sufficiently pled how Jack Henry's business practices were deceptive and how it did make false representations that Plaintiffs' banks relied upon. (Opp. to Jack Henry Motion at 11–12 (citing TAC).)

A UCL claim based on a fraudulent business practice is distinguishable from a claim for common law fraud. *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1255 (Cal. Ct. App. 2009). The fraudulent practice "may be based on representations to the public which are untrue, and also those which may be accurate on some level, but will nonetheless tend to mislead or deceive. . . . A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL.'" *Klein*, 202 Cal. App. 4th at 1380 (internal citations and quotations omitted) (alteration in original. To

the extent Jack Henry argues that Plaintiffs must allege an *oral representation*, Jack Henry is mistaken. (*See* Jack Henry Reply at 6.) Here, to state a claim, "it is necessary only to show that 'members of the public are likely to be deceived.'" *Comm. for Children's Television*, 35 Cal. 3d at 211 (internal citations omitted). Unless a court can say as a matter of law that *contrary to* the complaint's allegations, members of the public were *not likely* to be deceived or misled by defendant's alleged conduct, it must hold that a plaintiff has stated a cause of action. *Klein*, 202 Cal. App. 4th at 1381 (citing *Morgan*, 177 Cal. App. 4th at 1257).

The Court cannot say as a matter of law that the public was not likely to be deceived or misled that the RC Checks created by Jack Henry were created with proper authorization from Plaintiffs. (*See* TAC ¶¶ 116–117, 119–120, 290 & 295.) The ultimate determination of whether the practice is deceptive or fraudulent is not proper to determine on a motion to dismiss. *Klein*, 202 Cal. App. 4th at 1380–81.

For these reasons, the Court **DENIES** Jack Henry's Motion as to the fourth claim based on the fraudulent prong of Section 17200.

### c. Unfair Prong of Section 17200 (Sixth Claim)

Jack Henry asserts that Plaintiffs have failed to identify an established public policy that it violated by drafting RC Checks, or how the drafting of RC Checks is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. (Jack Henry Motion at 12.) Moreover, it asserts that Plaintiffs have not alleged that Jack Henry was involved in the misappropriation of Plaintiffs' personal information, and that it cannot be liable for the unlawful acts of Zaazoom Defendants because the law requires that it have "direct personal participation" to be liable. (*Id.* at 12 (citing *People v. Toomey*, 157 Cal. App. 3d 1, 14 (Cal. Ct. App. 1984)).)

Plaintiffs argue that the determination of whether a business practice is "unfair" requires "weigh[ing] the utility of the defendant's misconduct against the gravity of the harm to the alleged victim." (Opp. to Jack Henry Motion at 12 (citing *Countrywide Fin. Corp. v. Bundy*, 187 Cal. App. 4th 234, 256–57 (Cal. Ct. App. 2010)).) Plaintiffs emphasize that the TAC alleges more than misappropriation of personal information as wrongful conduct; here, Jack Henry engaged in other

misconduct by drafting and depositing RC Checks while disregarding the circumstances under which the Processors were hired to draft the RC Checks. (Opp. to Jack Henry Motion at 13.)

The Court notes that the California Supreme Court has not established a definitive test to determine whether a business practice is unfair in consumer cases. *Harmon v. Hilton Group*, No. C-11-03677 JCS, 2011 WL 5914004, at *8 (N.D. Cal. Nov. 28, 2011); *Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 594–98 (Cal. Ct. App. 2009). Three tests for unfairness exist in the consumer context. Jack Henry and Plaintiffs refer to variations of the first and second tests. Under the first test, a business practice is unfair where the practice implicates a public policy that is "tethered to specific constitutional, statutory, or regulatory provisions." *Harmon*, 2011 WL 5914004, at *8 (internal citations omitted). The second test determines whether the business practice "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Id.* (internal citations omitted).[14]

The Court disagrees with Jack Henry that Plaintiffs are required to allege a public policy "tethered" to a specific constitutional, statutory, or regulatory provision to state a claim under the unfair prong. (*See* Jack Henry Motion at 12.) Imposing such requirement runs contrary to the broad scope of Section 17200 and "undercuts the principle that a practice is prohibited as 'unfair' or 'deceptive,' even if it is not 'unlawful.'" *Davis*, 179 Cal. App. 4th at 598 (quoting *Cel-Tech Commc'ns*, 20 Cal. 4th at 180). In addition, such a requirement tends to obliterate the distinction between the unfair and unlawful prongs of the UCL. *Davis*, 179 Cal. App. 4th at 598 (tethering to positive law undercuts ability of courts to deal with new situations and new abuses).

Jack Henry argues that the Court should not accord as true Plaintiffs' allegations regarding its knowledge that the RC Checks were unauthorized because the "fact" of its knowledge is based on speculation and conclusion. (Jack Henry Reply at 8.) Again, Jack Henry ignores the procedural

---

[14] The third test to define "unfair" conduct requires that: "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Harmon*, 2011 WL 5914004, at *8 (internal citations omitted); *Davis*, 179 Cal. App. 4th at 597–98. Because the parties do not argue that this test applies, the Court will analyze the unfairness tests as argued by the parties.

posture of this case.  At this juncture, the Court need only determine whether the allegations, which taken as true, state a plausible claim.  *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.  Given the nature of the alleged scam, the Court finds that Plaintiffs' allegations of Jack Henry's knowledge are sufficient at the pleading stage and that Jack Henry's conduct, as alleged, is plausibly immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.  The same is true if the Court balances, as alleged, the utility of the defendant's conduct against the gravity of the harm to the alleged victim.  The cases cited by Jack Henry are distinguishable from the facts here[15],  where Jack Henry is alleged to have (i) known about Zaazoom Defendants' unlawful conduct (TAC ¶¶ 119–120) or should have known of the same (*id.* ¶¶ 108–115 & 309); (ii) drafted checks drawn on Plaintiffs' accounts (*id.* ¶¶ 102 & 104); (iii) deposited the checks in their accounts (*id.* ¶¶ 104 & 106); (iv) retained a portion of all deposited funds (*id.* ¶¶ 116); and (v) had a financial interest in perpetuating Zaazoom Defendants' conduct (*id.* ¶ 117).  These allegations are sufficient to withstand a motion to dismiss.

For these reasons, the Court **DENIES** Jack Henry's Motion as to the sixth claim based on the unfair prong of Section 17200.

### 3. Conversion Claim (Seventh Claim)

"Conversion is the wrongful exercise of dominion over the property of another.  The elements of conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages.  It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the

---

[15] *People v. Toomey* stated nothing more than that "individual liability must be predicated on [a defendant's] personal participation in the unlawful practices" and did not involve a motion to dismiss.  *See Toomey*, 157 Cal. App. 3d at 14.  Here, the TAC clearly alleges that Jack Henry directly participated in the scam.  In *Emery v. Visa Int'l Serv. Ass'n*, the court found no liability based on unfair business practices where plaintiff "attempt[ed] to ascribe liability for fraud and false advertising based on [defendant's] omission rather than commission."  95 Cal. App. 4th 952, 964 (Cal. Ct. App. 2002).  In that case, defendant had no control over the preparation or distribution of certain solicitations, nor did it have any relationship with the merchants that did.  *Id.* at 954–55 & 960.  In *Perfect 10 v. Visa Int'l Serv. Ass'n*, plaintiff sued financial institutions that process credit card payments for contributory and vicarious copyright infringement, but did not sue the direct infringers.  494 F.3d 788, 793–94 & 809 (9th Cir. 2007) (affirming dismissal of UCL claim based on *Emery* and lack of participation in the infringing activity).

property to his own use." *Oakdale Village Group v. Fong*, 43 Cal. App. 4th 539, 543–44 (Cal. Ct. App. 1996). Money can be the subject of a conversion claim if a specific sum capable of identification is involved. *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 452 (Cal. Ct. App. 1997).

Jack Henry contends that the conversion claim must be dismissed because Plaintiffs do not allege it was "involved with the misappropriation of the Plaintiffs' personal information or that the [RC Checks] were made payable to [Jack Henry], or that [it] was the intended recipient of the funds from the Plaintiffs' checking accounts." (Jack Henry Motion at 14.) The TAC only alleges that Zaazoom Defendants attempted to exercise "dominion or control" over Plaintiffs' money, but no such intent is alleged against Jack Henry. (*Id.*; Jack Henry Reply at 11–12.)

Plaintiffs disagree because conversion is a strict liability tort. (Opp. to Jack Henry Motion at 14.) *See Oakdale Village*, 43 Cal. App. 4th at 844 (questions of good faith, lack of knowledge and motive are ordinarily immaterial). As to the elements of conversion, the TAC alleges that Jack Henry converted specific sums of money when it deposited RC Checks drawn on Plaintiffs' accounts without their authorization. While Jack Henry passed the majority of the funds onto Zaazoom Defendants, the TAC alleges that it kept a portion for itself. (TAC ¶¶ 116 & 316–318.) Plaintiffs contend this is sufficient to plead a claim of conversion.

Jack Henry is incorrect that the TAC fails to allege intent by it to exercise dominion or control over Plaintiffs' money. The TAC alleges that Jack Henry acted without Plaintiffs' consent, had a financial interest in perpetuating Zaazoom Defendants' conduct, and retained a processing fee for every RC Check that it deposited. (TAC ¶¶ 116–117 & 316–321.) These allegations identify a wrongful act taken toward Plaintiffs' property, which interfered with their right to possession and which constitutes either an assumption of control over ownership of the property or use of the property for Jack Henry's own use.[16] At a minimum, it is "*plausible* to say that when the defendant commits an affirmative act and physically takes control of particular paper monies he is guilty of conversion, even if the particular bills or coins cannot be identified." *PCO, Inc. v. Christensen,*

---

[16] Jack Henry's reference to *Varela v. Wells Fargo Bank*, 15 Cal. App. 3d 741, 749–50 (Cal. Ct. App. 1971) cuts against its own argument. In that appeal from a judgment following a bench trial, the court stated that the required intent for conversion is not that of conscious wrongdoing nor to take ownership of the property.

*Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 396 (Cal. Ct. App. 2007) (emphasis supplied).

Whether this claim ultimately prevails is not currently at issue, but taking these allegations as a whole and in the light most favorable to Plaintiffs, Jack Henry's Motion as to the seventh claim for conversion is **DENIED**.

### 4. Negligence (Ninth Claim)

Jack Henry first attacks the existence of a duty owed to Plaintiffs arguing they have failed to plead a contract between themselves and Jack Henry, or a statute, any particular activities, or policy considerations upon which Jack Henry would owe a duty to Plaintiffs. (Jack Henry Motion at 14–15; Jack Henry Reply at 13.) Jack Henry contends that its alleged "knowledge" of the scam is a conclusion insufficient to create a duty of care. (Jack Henry Motion at 15.) Jack Henry further argues that *even if* there was a duty of care, numerous policy considerations weigh against a finding of negligence, namely because no harm was foreseeable to Jack Henry. (*Id.* at 15.) Plaintiffs respond that the general rule that a person owes a duty of care to avoid injuring others *and* various policy considerations support the existence of a duty by Jack Henry. (Opp. to Jack Henry Motion at 15–16.)

Jack Henry is incorrect that Plaintiffs have not alleged a duty of care based on the "particular activities" at issue in the TAC. Plaintiffs have alleged a scam in which Zaazoom Defendants misused Plaintiffs' personal information and passed that information along to the Processors, who then drafted RC Checks drawn on Plaintiffs' accounts. The TAC repeatedly alleges ways in which Jack Henry and the Processors either knew or should have known that the Zaazoom Defendants were engaged in wrongful conduct, or recklessly disregarded the same. (TAC ¶¶ 108–115, 118–120 & 340–341.) This is sufficient to state a claim for negligence. The fact that Plaintiffs have not alleged a contract or statute creating a duty of care is irrelevant. Further, policy issues such as foreseeability of Plaintiffs' harm necessarily depend on the facts and cannot be determined at this stage of litigation.

For these reasons, the Court **DENIES** Jack Henry's Motion as to the ninth claim for negligence.

### D. Zaazoom Motion (Dkt. No. 106)

The Zaazoom Motion is made on behalf of the Zaazoom Defendants (Zaazoom Solutions, LLC, Zaza Pay LLC, MultiECom, LLC, and Online Resource Center, LLC) and Processors

29

Automated Electronic Checking, Inc. and Data Processing Systems, LLC. The Court will refer to these parties as the "Moving Defendants."

### 1. Moving Defendants' Motion to Dismiss

Moving Defendants primarily argue that all claims for violations of Section 17200, negligence, and conversion against them must be dismissed because the TAC fails to state facts sufficient for a legally-cognizable class action. These claims "*on their face* necessarily depend upon predominantly individual factual and legal issues as to each Class members' state of mind and conduct as well as the conduct of [Moving] Defendants (pled and unpled)." (Zaazoom Motion at 4 (emphasis in original).) For example, the Section 17200 claims "depend" on determining the purported misrepresentations made to class members, whether the class members made an affirmative decision to sign up for coupon services, and how class members' decisions to sign up/not sign up for coupon services were communicated to Moving Defendants. (*Id.* at 7.) Moving Defendants also argue that Plaintiffs' failure provide certain details is an indication that the claims are not cognizable for class treatment (*id.* at 10–11), and that dismissal of certain claims is necessary because of choice-of-law issues that may arise in this action, including the availability of certain defenses depending on the states involved (*id.* at 12–14).

Plaintiffs respond that Moving Defendants' motion is inappropriate given the early posture of this case. (Plaintiffs' Opposition to Zaazoom Motion (Dkt. No. 119 ("Opp. to Zaazoom Motion") at 7.) Granting a motion to dismiss class allegations at the pleading stage is rare, and the better practice is to deny such a motion until the case evolves more fully through discovery. (*Id.* at 7 citing *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007).)

Moving Defendants' authorities are inapposite and unpersuasive. The Court agrees with Plaintiffs that Moving Defendants' substantive arguments as to the class allegations should be denied as premature. The Court further disagrees with Moving Defendants' contention that the TAC allegations are "factually contradictory." (Zaazoom Motion at 14–16.) For these reasons, the Court **DENIES** Moving Defendants' motion to dismiss.

United States District Court
Northern District of California

### 2. Moving Defendants' Motion to Strike

Moving Defendants make a cursory request to strike TAC ¶¶ 220–237 "from the First, Second, Third, Fourth, Fifth and Sixth Claims" for UCL violations. (Zaazoom Motion at 11 n.6.) Plaintiffs allege a number of bases for the unlawful prong of the UCL, including conduct made unlawful by the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. section 8401, *et seq*. (*See, e.g.*, TAC ¶¶ 251–256.) Notwithstanding Moving Defendants' argument, the first through sixth claims have independent bases to survive the motion to dismiss other than ROSCA. Moreover, Moving Defendants have not even made a colorable attempt to explain how the allegations are redundant, immaterial, impertinent, or scandalous under Rule 12(f). The Court **DENIES** Moving Defendants' request to strike TAC ¶¶ 220–237.

In addition, Moving Defendants request that the Court strike the TAC because the allegations are not simple, concise, or direct (Fed. R. Civ. P. 8) and they are redundant, immaterial, impertinent, or scandalous (Fed. R. Civ. P. 12(f)). (Zaazoom Motion at 16–17.) As authority for striking the entire complaint, Moving Defendants cite one out-of-circuit district court opinion where the court elected to strike *one paragraph* of a complaint. (*Id.* (citing *Global View Ltd. Venture Capital v. Great Central Basin Exploration, L.L.C.*, 288 F. Supp. 2d 473, 481 (S.D.N.Y. 2003).) Moving Defendants' argument is frivolous and, itself, a waste of the Court's resources. The Court **DENIES** this motion to strike without further discussion.

### 3. Effect of Moving Defendants' Joinder

Moving Defendants filed a Joinder to the BCT Motion, Jack Henry Motion, and FBD Motion. (Dkt. No. 118.) Because the only claim dismissed by this Order is the eleventh claim for statutory negligence against Depository Banks, the Joinder has no effect on the Moving Defendants.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the various motions before the Court. More specifically, the Court:

1. **DENIES** the Zaazoom Motion in its entirety;

2. **GRANTS** the BCT Motion and **DISMISSES WITH PREJUDICE** the eleventh claim for statutory negligence, and **DENIES** the BCT Motion as to the tenth claim for negligence;

3.      **DENIES** the Jack Henry Motion in its entirety; and

4.      **GRANTS** the FBD Motion and **DISMISSES WITH PREJUDICE** the eleventh claim for
statutory negligence, and **DENIES** the FBD Motion as to the tenth claim for negligence.

A Case Management Conference is scheduled in this matter on Monday, February 11, 2013 at
2:00 p.m.  The parties shall file a Case Management Conference Statement in accordance with the
Court's Standing Order in Civil Cases and the Local Rules.

This Order terminates Dkt. Nos. 106, 107, 111 & 115.

**IT IS SO ORDERED.**

Dated:  December 13, 2012

_____

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**