1   **KRONENBERGER ROSENFELD, LLP**
2   Karl S. Kronenberger (CA Bar No. 226112)
    Jeffrey M. Rosenfeld (CA Bar No. 222187)
3   150 Post Street, Suite 520
    San Francisco, CA 94108
4   Telephone: (415) 955-1155
    Facsimile: (415) 955-1158
5   karl@KRInternetLaw.com
    jeff@KRInternetLaw.com
6

7   Attorneys for Plaintiffs
    AMBER KRISTI MARSH AND STACIE EVANS
8

9                    **UNITED STATES DISTRICT COURT**
                     **NORTHERN DISTRICT OF CALIFORNIA**
10

11  **AMBER KRISTI MARSH and STACIE EVANS**,     | **CLASS ACTION**
    individually and on behalf of a class of similarly
12  situated persons,                                 Case No. 4:11-cv-05226-YGR

13                  Plaintiffs,                     **JOINT LETTER BRIEF**

14          v.

15  **ZAAZOOM SOLUTIONS, LLC**, a Delaware
    Limited Liability Company;
16  **ZAZA PAY LLC**, a Delaware Limited Liability
    Company dba Discount Web Member Sites,
17  LLC, Unlimited Local Savings, LLC, Web
    Discount Club, Web Credit Rpt. Co.,
18  MegaOnlineClub, LLC, and
    RaiseMoneyForAnything;
19  **MULTIECOM, LLC**, a Colorado Limited Liability
    Company dba Online Discount Membership,
20  Web Discount Company, and Liberty Discount
    Club; **ONLINE RESOURCE CENTER, LLC**, a
21  Delaware Limited Liability Company dba Web
    Coupon Site, USave Coupon, and UClip;
22  **FIRST BANK OF DELAWARE**, a Delaware
    Corporation,
23  **FIRST NATIONAL BANK OF CENTRAL
    TEXAS**, a Texas Corporation;
24  **JACK HENRY & ASSOCIATES, INC.**, a
    Delaware Corporation dba ProfitStars;
25  **AUTOMATED ELECTRONIC CHECKING,
    INC.**, a Nevada Corporation;
26  **DATA PROCESSING SYSTEMS, LLC**, a
    Delaware Limited Liability Company and DOES
27  1-10, inclusive,

28                  Defendants.



**ATTESTATION OF MEET AND CONFER**

Pursuant to the Court's Standing Order, counsel for the parties hereby attest that they met and conferred by telephone on April 12 and April 15, 2013 regarding the issues raised in this Joint Letter.

**KRONENBERGER ROSENFELD, LLP**          **DENNIS A. WINSTON, APLC**

<u>    s/ Jeffrey M. Rosenfeld    </u>          <u>    s/ Dennis Adriel Winston    </u>

Jeffrey M. Rosenfeld                              Dennis Adriel Winston



| | |
|---|---|
| 150 Post Street | Phone  415.955.1155 |
| Suite 520 | Fax     415.955.1158 |
| San Francisco, CA  94108 | www.krinternetlaw.com |

April 19, 2013

Magistrate Judge Kandis A. Westmore
Oakland Courthouse
1301 Clay Street
Courtroom 4 - 3rd Floor
Oakland, CA 94612

**VIA ELECTRONIC SUBMISSION**

**RE:**   ***Marsh et al. v. ZaaZoom Solutions, LLC et al.*; Case No. 4:11-cv-05226-YGR**
        **U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA**

Dear Judge Westmore:

        Pursuant to your Honor's Standing Order, Plaintiffs Amber Kristi Marsh and Stacie Evans (collectively, "Plaintiffs") and Defendants ZaaZoom Solutions, LLC, Automated Electronic Checking, Inc., and Data Processing Systems, LLC (collectively, "Defendants") hereby submit this joint letter regarding the following discovery requests:

- Plaintiffs' First Set of Interrogatories to Defendant ZaaZoom Solutions, LLC;
- Plaintiffs' First Set of Requests for Production of Documents to Defendant ZaaZoom Solutions, LLC;
- Plaintiffs' First Set of Interrogatories to Defendant Automated Electronic Checking, Inc.;
- Plaintiffs' First Set of Requests for Production of Documents to Defendant Automated Electronic Checking, Inc.;
- Plaintiffs' First Set of Interrogatories to Defendant Data Processing Systems, LLC.;
- Plaintiffs' First Set of Requests for Production of Documents to Defendant Data Processing Systems, LLC. (collectively, the "Requests")

**Plaintiffs' Introduction**

        In this class action, Plaintiffs have alleged that Defendant ZaaZoom Solutions, LLC ("ZaaZoom") operated a scam where it lured people into applying for payday loans on Internet websites.  After a person applied for a payday loan, and without the applicant's knowledge or consent, ZaaZoom: a) took the applicant's personal information and banking information, b) enrolled the applicant in an online coupon service, and c) drafted remotely created checks from the applicant's banking account to pay for the online coupon service.  No applicant consented to enrolling in such a coupon service.  ZaaZoom engaged check processors Automated Electronic Checking, Inc. ("AEC") and Data Processing Systems, LLC ("DPS") to draft and deposit the remotely created checks.

        On February 12, Plaintiff Marsh served basic interrogatories and document requests on ZaaZoom, AEC, and DPS.  In response, Defendants did not produce a single document nor any

relevant information. Instead, Defendants relied on a series of boilerplate objections and claimed that they did not have the resources to respond to Plaintiffs' basic discovery requests. Despite the parties' meet-and-confer efforts, Defendants have refused to produce relevant documents. Thus, Plaintiffs are forced to seek Court relief.

## Defendants' Introduction

At the outset, it is essential to realize four things. First, the ZaaZoom Defendants in this action ("Action") (including all of the Defendants subject to this discovery dispute) no longer exist as ongoing entities. The ZaaZoom Defendants' offices have closed, the employees let go. In light of the extensive nature of the discovery demanded, the ZaaZoom Defendants have requested that Plaintiffs agree to some sort of cost sharing to conduct the massive discovery sought. Plaintiffs have refused.

Second, contrary to Judge Gonzalez Rogers' suggestion to conduct focused discovery, Plaintiffs have propounded "blockbuster" discovery, seeking, essentially, every document generated, seen or used by the ZaaZoom Defendants over the last six years in an effort, ZaaZoom Defendants suggest, to make this litigation too expensive to conduct in order to force a settlement. At a minimum, ZaaZoom Defendants have suggested that Plaintiffs make a preliminary (prima facie) showing under *F.R.Civ. Proc. 23* (approved in this Circuit) of the propriety of a class action here. Plaintiffs have refused.

Third, as for Plaintiffs' discovery seeking the contact and banking information for over a million potential class plaintiffs,[1] that information includes potentially embarrassing information as to these individuals (such as authorizing checks returned for insufficient funds ("NSF"), or checks on non-existent bank accounts. The ZaaZoom Defendants have suggested that, prior to the wholesale disclosure of putative class members' contact information, the Parties agree to a notice procedure, governed by court order, so that putative class members can "opt-in" or "opt-out" of this process, thereby remaining in control of their privacy interests. Plaintiffs have refused.

Fourth, the importance of these matters and the efficacy of the procedures suggested by the ZaaZoom Defendants is found in the ***facts*** already known showing that no class action, especially none brought by the named class plaintiffs, is proper.

The Plaintiffs allege that their personal and financial information was transferred from unnamed third party owned payday loan websites to the ZaaZoom Defendants without their knowledge or consent. The ZaaZoom Defendants have produced multiple screen shots from these third party websites that show conclusively that the Plaintiffs and all putative class members knowingly and voluntarily purchased discount coupon club memberships by physically checking boxes on the offer materials posted on payday loan websites before orders were electronically transmitted to the ZaaZoom Defendants, and every order was confirmed not once, but twice by electronic mail before billing. Plaintiffs contend that these screen shots and offer materials.

Screen shots provided for the period after enactment of the Restore Online Shoppers Confidence Act show conclusively that the ZaaZoom Defendants were compliant with Federal Law as of December 20, 2010, and that neither Plaintiff Marsh nor any class member could have submitted orders for discount coupon club subscription without having first checked a box

---

[1] The Action involves "more than" 1,200,000 checks according to Plaintiffs' Third Amended Complaint, ("TAC"), 82).

accepting the offer, or checking a second box acknowledging their personal information, and then physically inputting their banking information on the electronic order form. Thereafter, two separate emails confirming each order were sent to Plaintiff Marsh and each purported class member before billing.

In response to the production of offer material and screen shots, Plaintiff Marsh admitted that she has no personal knowledge of what payday loan website she visited on the day she ordered her subscription. To avoid dismissal, Plaintiffs counsel now contends that the ZaaZoom Defendants somehow fabricated the produced offer materials and screen shots after the filing of their complaint. They assert that these fabrications were made in order to create the appearance that the ZaaZoom Defendants were operating legally at all times relevant to the complaint. Although Plaintiff's counsel can easily and inexpensively confirm the Internet publication and use of the produced offer materials prior to the complaint through independent third party sources such as www.archive.org, Plaintiffs' counsel refuses make that inquiry, or refuses to acknowledge that the inquiry has occurred or the results obtained.

## Plaintiffs' Statement of Background Facts

### A. Remotely Created Checks:

A remotely created check ("RCC") is a check that: a) is created by the payee, b) is drawn on the payor's bank account, and c) does not bear the payor's signature. In place of the payor's signature, an RCC bears the payor's typed name.

RCCs are particularly vulnerable to fraud because: a) they do not bear the payor's signature or other verifiable authorization; b) the funds can be withdrawn from the payor's account before the payor knows that the RCC was drafted; c) they are easy to create, requiring only a computer and printer; and d) the payee does not need access to the banking system, as with ACH transactions. If an RCC is not honored by the paying bank, the check is deemed "returned." An RCC may be returned for a variety of reasons, including where the payor account has insufficient funds to settle the check or where the check is a forgery. The Federal Reserve has reported that the average return rate for checks is about 0.5%

### B. Defendants' Misconduct:

ZaaZoom provides online coupon services though Internet websites (collectively, the "ZaaZoom Websites"). Members of the ZaaZoom Websites can download ordinary coupons from these websites. Theoretically, a person can enroll as a member of one of the ZaaZoom Websites voluntarily by entering his or her contact information and checking account number into the website's application screen.

In actuality, the vast majority—if not all—members of the ZaaZoom Websites did not become members voluntarily. Rather, ZaaZoom registered these members without their knowledge or consent. Specifically, ZaaZoom obtained information regarding individuals ("Applicants") from various websites that allow individuals to apply for payday loans (collectively, the "Payday Loan Websites"). When applying for a loan on a Payday Loan Website, an Applicant was required to enter his or her contact information, checking account number, and bank routing number. Once an

Applicant entered this information and applied for a loan on a Payday Loan Website, the following occurred:

1. Without the Applicant's knowledge or consent, the Payday Loan Website sent the Applicant's contact information and checking account information to ZaaZoom.

2. Without the Applicant's knowledge or consent, ZaaZoom registered the Applicant for membership(s) in the ZaaZoom Website(s).

3. Without the Applicant's knowledge or consent, ZaaZoom sent the Applicant's personal information to check processors, such as AEC and DPS.

4. Without the Applicant's knowledge or consent, AEC and DPS drafted RCCs in the Applicants' name payable to ZaaZoom and then deposited those RCCs.

In drafting and depositing the RCCs, Defendants were aware of extremely suspicious circumstances, including a massive number of consumer complaints and an excessive return rate. In fact, the return rate for the ZaaZoom RCCs was extraordinarily high, exceeding 50%, or over 100 times the national average for returned checks.  As a result of Defendants' misconduct, money was wrongfully withdrawn from at least 1.2 million bank accounts, including Plaintiffs' accounts.

## C. Plaintiffs' Discovery Requests:

On February 12, Plaintiff Marsh served basic interrogatories and document requests on ZaaZoom, AEC, and DPS.  In summary, the discovery requests sought:

- Identifying information for the members of any ZaaZoom coupon program, including the members' physical address, email address, and telephone number;

- Copies of all of the RCCs at issue, including returned RCCs, and summaries of these RCCs;

- Documents evidencing the voluntary consent of members to enroll in any ZaaZoom coupon program;

- Documents showing refunds made by Defendants for their coupon programs;

- Copies of the ZaaZoom Websites and the Payday Loan Websites;

- All agreements and communications between ZaaZoom and the operators of the Payday Loan Websites;

- All website traffic data about the ZaaZoom Websites;

- All agreements/communications between ZaaZoom and its check processors;

- All complaints/customer service inquiries about the ZaaZoom programs.

In response to Plaintiffs' discovery requests, Defendants did not produce a single document. Instead, Defendants relied on boilerplate objections and claimed that they did not have the resources to respond to Plaintiffs' basic discovery requests.

## Defendants' Statement of Background Facts

From December 2009 through May 2011, the ZaaZoom Defendants offered and sold discount coupon club memberships to Internet consumers through advertisements published on payday loan websites owned and operated by third parties.  From December 2009 through approximately April 15, 2011, this subscription service was offered by what were then legal and widely used "negative option" style offer.  In April 2010, ZaaZoom did away with negative options and implemented "opt-in" content and technology for every discount coupon club offer. In addition, due to the level of consumer fraud Internet merchants expect and experience with payday loan traffic, **ZaaZoom instituted a double email confirmation program whereby no consumer was billed before two emails confirming the order were electronically dispatched to the email address provided by the consumer in the order process**.

In connection with both the negative option and opt-in offer materials, each consumer was required to check a box consenting to the use of prepopulated banking information, a process then referred to as a "data pass."  The order process required actual consent to the data pass of banking information and would not permit the consumer to place an order without providing his/her consent.

On December 29, 2010, Congress enacted the Restore Online Shoppers Confidence Act ("ROSCA," *15 U.S.C. § 8401, et seq.*).  ROSCA prohibited both negative option offers and a data pass of banking information.  The ZaaZoom Defendants modified all of their online offer materials to comply with ROSCA guidelines, and the modified materials were published on payday loan websites on and after the effective date of ROSCA. In addition to being ROSCA compliant, ZaaZoom *continued* its double email confirmation program in order to limit to the extent possible NSF returns and chargebacks.

Plaintiff Stacie Evans is an educated and licensed professional with a substantial Internet presence and experience who visited multiple payday loan websites on October 25, 2010.  On that date, the only offer materials published by the ZaaZoom Defendants on payday loan websites were "opt-in" with double email confirmation before billing. Stacie Evans ordered ZaaZoom's discount coupon club memberships on not once, but twice; using a different bank account with each order to circumvent ZaaZoom's security protocols that limit multiple orders.  Two months later, Stacie Evans contacted ZaaZoom's customer service agent, cancelled the order, and admitted that she had not read the terms and conditions of the ZaaZoom offer before she purchased the memberships. Stacie Evans did not request a refund.

On January 16, 2011, *i.e.* two weeks after all ZaaZoom offer material were ROSCA compliant, Plaintiff Amber Marsh visited a payday loan website and accepted ZaaZoom's discount coupon club offer.  In connection with that order, Amber Marsh physically input her banking information on the order form before submitting her order. When confronted with the terms of the offer she accepted in January 2011, Amber Marsh admitted that she could not remember what payday loan website she visited and has no personal information regarding the order process she used to purchase ZaaZoom's discount coupon club membership.[2] Amber Marsh was billed *once* for her order, after which, she cancelled without comment or request for a refund.

Payday loan customers are high risk, subprime Internet Consumers.  Online Merchants dealing with payday loan customer traffic could not prevent consumers from denying orders and charges, or failing to maintain sufficient funds in their accounts, to meet NACHA rules and

---

[2] *Marsh v. Tassoudji, Case No. 2:12-cv-00915-DKD  (D.Ariz. 2012)* Pla's Response To Def's MTD, p. 15, lines 23-24.

guidelines. Although payday loan traffic represented the largest or second largest marketplace on the Internet, purchases made by payday loan consumers would always exceed NACHA limits. Sometime in 2009, the ZaaZoom Defendants were advised by their payment processors that the banks with whom they dealt had agreed to accept a new high risk payment processing method, i.e. remotely created checks or "Check 21" as the product was marketed to ZaaZoom. The payment processors represented that Check 21 was not subject to NACHA rules and regulations such that returns and refunds within the range normally expected from payday loan customers could be processed.

The ZaaZoom Defendants have no direct relationships with any bank that accepted Check 21 processing, and are not in possession of any remotely created checks themselves.

Personal and banking information provided by ZaaZoom's customers in connection with their orders is confidential and subject to a written privacy policy. ZaaZoom's published privacy policy can be viewed at: http://www.libertydiscountclub.com/view/d/privacy.html

**Discovery Disputes At Issue; the Parties' Final Substantive Position; the Parties' Final Proposed Compromise**

Because the volume of discovery requests at issue is large, and because many of Defendants' objections overlap, this letter addresses Plaintiffs' discovery requests by objection rather than by discovery request.[3]

**A.  Defendants' Objection Based on Expense and Defendants' Request to Shift Costs**

Plaintiffs' Statement:  Defendants argue that because they are now defunct business entities, they do not have the resources to respond to the Requests.  Thus, Defendants contend that the Court should shift the discovery costs to Plaintiffs.

Courts in the Ninth Circuit use a multi-prong analysis in considering cost-shifting in discovery.  Significantly, the presumption is that the responding party must bear the expense of complying with discovery requests. *See OpenTV v. Liberate Technologies*, 219 F.R.D. 474, 476 (N.D. Cal. 2003).

Second, while a party may request cost-shifting under Rule 26(c), the inquiry turns primarily on whether the requested information is kept in an inaccessible format—cost-shifting occurs only when inaccessible data is sought. *See id.* at 476 (data is inaccessible when it requires an unusual expense to retrieve; *e.g.* backup tapes are considered inaccessible because they are not organized for retrieval by individual document or file).

Third, even when the requested data is in an inaccessible format, cost-shifting is only justified when an evaluation of several factors, weighed in the following order, warrants cost-shifting:

1.  The extent to which the request is specifically tailored to discover relevant information;
2.  The availability of such information from other sources;

---

[3] Plaintiffs contend that all of Defendants' responses to the Discovery Requests are deficient.

3.  The total cost of production, compared to the amount in controversy
4.  The total cost of production, compared to the resources available to each party;
5.  The relative ability of each party to control costs and its incentive to do so;
6.  The importance of the issues at stake in the litigation; and
7.  The relative benefits to the parties of obtaining the information.

All of these prongs weigh against cost-shifting in this case.  First, the presumption is that Defendants must bear the expense of complying with the Requests.  Second, Defendants have made no showing that the requested information is kept in an inaccessible format.  To the contrary, during the parties' April 12 and 15, 2013 conferences, Defendants' counsel did not know the format of the requested information.  Finally, the other relevant factors weigh against cost-shifting, as follows:

1.  The Requests are narrowly tailored to seek only information at the heart of this action, namely contact information for the class members and documents supporting Defendants' claim that the class members voluntarily enrolled in the coupon programs.

2.  Because Defendants operated the coupon programs, the relevant documents are in Defendants' exclusive possession.

3.  Defendants have made no showing about the costs of production.  Because the requested information must have been kept in a readily accessible, electronic format, the cost should be minimal.  Moreover, the amount in controversy, *i.e.* approximately $25,000,000, dwarfs any ordinary cost of production.

4.  As their applications for payday loans demonstrate, Plaintiffs do not have significant means to pay for Defendants' production.

5.  Defendants have known about this lawsuit—and their discovery obligations—for two years.  Despite this passage of time, Defendants have made no efforts to collect and produce relevant information.

6.  The issues in this action are significant to Plaintiffs and the public at large, including some of the most vulnerable members—*i.e.* those who turn to the Internet to receive payday loans.  While the U.S. government has pursued scams like this one, such scams are so rampant that the government can only address a fraction of them.  Civil class actions help to close this gap.  Thus, the issues in this action are extremely important on a macro level.

7.  The requested information is central to this lawsuit.  It is necessary for Plaintiffs and the Court to determine whether ZaaZoom's customers voluntarily enrolled in the Zaazoom coupon program, as ZaaZoom maintains.  Plaintiffs are confident that ZaaZoom's website logs and complaint records, along with interviews of the class members will show that all of ZaaZoom's customers were involuntarily enrolled in the coupon programs.

Based on all of the above, the Court should order Defendants to produce all of the requested documents and bear the costs of that production, as is the presumption in this Court.

Defendants' Statement:

In light of the extensive discovery Plaintiffs seek[4] to support their class action,[5] and the particular circumstances of this case (*i.e.*, the ZaaZoom Defendants status, the lack of a prima facie showing that the class action form is appropriate here), cost sharing just makes sense. *Couch v. Boncore, 2011 U.S. Dist. LEXIS 68017, at *11-12, *14 (E.D.Cal. 2011)* (cost sharing for discovery ordered); *Open TV v. Liberate Technologies, 219 F.R.D. 474, 476 (N.D. Cal. 2003)*, *Zubulake v. UBS Warburg LLC, 216 F.R.D. 280, 284 (S.D.N.Y 2003)*; *compare, CareToLive v. Eschenbach, 2007 U.S. Dist. LEXIS 83678 (SD Ohio, Eastern Div. 2007)* (limits on discovery before dispositive motions).

"Blockbuster" interrogatories are disfavored by federal courts as overly broad and unduly burdensome and oppressive. *Hilt v. SFC Inc., 170 F.R.D. 182, 186-187 (U.S.D.C. Dist. Kansas 1997)* ("Whatever may be said for the virtues of discovery and the liberality of the federal rules, which perhaps all courts recognize, there comes at some point a reasonable limit against indiscriminately hurling interrogatories at every conceivable detail and fact which may relate to a case….Indiscriminate use of blockbuster interrogatories, such as these, do not comport with the just, speedy, and inexpensive determination of the action. To require answers for them would more likely cause delay and unreasonable expense of time, energy, and perhaps money….[¶] The discovery rules provide no absolute, unharnessed right to find out every conceivable, relevant fact that opposing litigants know."); *Lawyers Title Insurance Corporation v. United States Fidelity & Guaranty Company, 122 F.R.D. 567, 570 (N.D.Cal. 1988)*.

Applying the cost sharing test adopted in *Open TV v. Liberate Technologies, 219 F.R.D. 474, 476 (N.D. Cal. 2003)*, the discovery Plaintiffs seek is *not* specifically tailored to discover relevant information [factor 1]; the total cost of production, *compared to the resources available to each party* [factor 4] weighs strongly in favor of cost sharing; and, the relative ability of each party to control costs and its incentive to do so [factor 5] compels both sides to act responsibly.

Here, in the face of the facts which establish disclosure to class plaintiffs of their options to participate in coupon clubs and double email confirmations of requests to join coupon clubs, Plaintiffs have not made any sort of preliminary showing that *F.R.Civ.P. 23* would be satisfied or that the "blockbuster" interrogatories are "likely to produce substantiation of class allegations." *Artis v. Deere and Company*, 276 F.R.D. 348, 354 (N.D.Cal.2011) ("Pre-certification discovery of putative class members' contact information is proper **when plaintiff either makes a prima facie showing that Rule 23 is satisfied or when plaintiff shows 'that discovery is likely to produce substantiation of the class allegations**.'" *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985)").

## B. Defendants' Objection Based on the Right of Privacy of the Class Members

---

[4] For example, Interrogatory Nos. 1-4, 8-9, 10, 11, 13 and 14, which seek (for the time period from 2007 which is tow years before the coupon programs at issue in Plaintiffs' TAC were employed) the disclosure of the identities of "ALL PERSONS who enrolled in ANY MEMBERSHIP PROGRAM;" "EACH MEMBERSHIP PROGRAM RCC;" "EACH MEMBERSHIP PROGRAM RCC that was returned as not payable [Identified as consisting of "at least" 656,000 checks in Plaintiffs' Third Amended Complaint ("TAC"), 82).]

[5] *Schatzman v. Talley, 91 F.R.D. 270, 273 (N.D.Ga. 1981)* ("Under *Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974)*, and *Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978)*, a class plaintiff must bear the costs of *identifying and notifying the class members of a suit's existence*. Therefore, although some courts are reluctant to undertake a detailed inquiry into the plaintiff's total financial resources, courts must at least determine that the plaintiff can defray the costs of notice to the class.")

Plaintiffs' Statement:   As a general objection, Defendants argue that the requested information (particularly the contact information for the class members) is protected by the privacy rights of the class members.

Federal courts applying California privacy law have repeatedly held that the entry of a protective order adequately addresses any privacy concerns that consumers may have in their personal contact information and that such information is relevant in consumer class actions.  See e.g., *Hill v. Eddie Bauer*, 242 F.R.D. 556, 563 (C.D. Cal. 2007) (compelling production of customer contact information and observing that "*Pioneer* does not impose a notice requirement" and that "witnesses cannot choose to 'opt out' of civil discovery"); *Cholakyan v. Mercedes-Benz USA, LLC*, No. CV 10-5944 MMM JC, 2011 WL 7575379 (C.D. Cal. Dec. 20, 2011) (finding that plaintiff had right to discover contact information of putative class members where protective order was in place); *McArdle v. AT & T Mobility LLC*, No. C 09-1117 CW (MEJ), 2010 WL 1532334 (N.D. Cal. Apr. 16, 2010) (compelling disclosure of consumers' contact information without notice); *Khalilpour v. CELLCO Partnership*, No. C 09-02712 CW (MEJ), 2010 WL 1267749, at *3 (N.D. Cal. April 1, 2010) (compelling production of identifying information and holding that "Defendant's concern for the privacy rights of potential class members can be addressed through a protective order").

Despite this consistent authority, Defendants argue that a protective order is not sufficient to protect the class members' privacy because their banking information will be disclosed. Defendants' argument fails.  Defendants fail to distinguish this case from any other consumer class action where the plaintiffs were wrongfully charged for goods or services, and Defendants' fail to explain why the disclosure of class members' contact information—subject to a protective order— would in any way be embarrassing.

Plaintiffs seek the contact information for the putative class members—*i.e.* the people who were involuntarily enrolled in ZaaZoom's coupon program.   Plaintiffs are entitled to test Defendants' claim that the class members voluntarily enrolled in the coupon program by asking the class members whether they in fact enrolled.  As noted above, Plaintiffs' right to this information is well established by the law in this Circuit.  Moreover, the parties have been negotiating a protective order.  Thus, the Court should order Defendants to produce all of the requested contact information for ZaaZoom's customers.

Defendants' Statement:  Plaintiffs completely ignore that the financial information sought of putative class members is potentially embarrassing.  Plaintiffs' contact information will reveal private and potentially embarrassing financial information. *Bottoni v. Sallie Mae, Inc, 1012 U.S. District LEXIS 76451, *5-6, *7 (N.Dist.Cal. 2012)*("As the court explained on the record, for similar reasons, the court finds the discovery here appropriate but is mindful of ***the privacy concerns that attach to potential class members who defaulted on their loans***." [] "The court's general view is that ordinarily, protective orders are enough, but ***this case involves special privacy concerns because the class members defaulted on their loans***.")   As the court in *Willner v. Manpower, Inc.*, *2012 U.S. Dist. LEXIS 148902, *14-15 (N.D.Cal. 2012)* observed:

[T]he Court agrees that the applicants do have a right to privacy. When the constitutional right of privacy is involved, the party seeking discovery must demonstrate a compelling need for discovery, and that compelling need must be so strong as to outweigh the privacy

right when these two competing interests are carefully balanced.   [Citations omitted.] Compelled discovery within the realm of the right of privacy cannot be justified solely on the ground that it may lead to relevant information.   [Citation omitted.] Even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must then be a careful balancing of the compelling public need for discovery against the fundamental right of privacy. [Citations omitted.] (Unless otherwise indicated, all emphasis supplied all internal quotation marks omitted.)

In *Los Angeles Gay & Lesbian Center v. Superior Court*, 194 Cal. App. 4th 288, 292 (2011) the Court of Appeal, "conclude[d] that the trial court erred in ordering the Center to disclose the class members' names and addresses to plaintiffs' counsel. We therefore grant the petition in part and deny in part."   As to putative class members' medical information, acknowledged to be sensitive, the Court observed:

The Center's patient list consisting of those persons who were given the wrong medication and/or received retreatment shall not be disclosed to the named plaintiffs, their counsel, or any other persons, except it shall be disclosed to a court-appointed class administrator for the purpose of mailing the notice of the class action to all putative class members. To the extent putative class members opt out of the class, their names, other identifying information, and medical information shall not be subject to disclosure and shall remain sealed. With respect to those class members who do not opt out of the class action, no class member's name, identifying information, or medical information is to be disclosed without that class member's prior authorization. Further, the trial court is to take steps to ensure that the names, identifying information, and medical information of the class members are not subject to disclosure under any circumstances in any public proceeding or public filing. *Los Angeles Gay & Lesbian Center,* 194 Cal. App.4th at 310-411; *Morales v. Superior Court*, 99 Cal. App. 3d 283 (1979).

## C.   Conclusion

Plaintiffs' Statement:  To date, Defendants have not produced a single document and have not responded substantively to a single interrogatory.  The Court should compel Defendants to produce all responsive documents and respond to all of the interrogatories.

Defendants' Statement:  For over a month, the ZaaZoom Defendants have repeatedly requested agreement on procedures for sharing costs and supervising the disclosure of putative class members' personal information to protect their privacy interests.  ZaaZoom Defendants have sought to narrow the scope of the discovery sought to begin in 2009, when the programs of which Plaintiffs complain in their Third Amended Complaint began.  All to no avail.  The ZaaZoom Defendants renew their requests for reasonable parameters to discovery now.

Respectfully Submitted,

**KRONENBERGER ROSENFELD, LLP**         **DENNIS A. WINSTON, APLC**

_____s/ Jeffrey M. Rosenfeld_____         _____s/ Dennis Adriel Winston_____
Jeffrey M. Rosenfeld                          Dennis Adriel Winston

10