**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (CA Bar No. 226112)
Jeffrey M. Rosenfeld (CA Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com

**ARIAS OZZELLO & GIGNAC, LLP**
Mike Arias (CA Bar No. 115385)
Alfredo Torrijos (CA Bar No. 222458)
6701 Center Drive West, 14th Floor
Los Angeles, California 90045-1558
Telephone: (310) 670-1600
Facsimile:  (310) 670-1231
marias@aogllp.com
atorrijos@aogllp.com

Attorneys for Plaintiffs
AMBER KRISTI MARSH AND STACIE EVANS
and the Putative Class

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **AMBER KRISTI MARSH** and **STACIE EVANS,** individually and on behalf of a class of similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>**ZAAZOOM SOLUTIONS, LLC**, *et al.*,<br><br>Defendants. | **CLASS ACTION**<br><br>Case No. 3:11-cv-05226-WHO<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION AND FOR APPOINTMENT OF CLASS COUNSEL**<br><br>Date: February 5, 2014<br>Time: 2:00 p.m.<br>Ctrm: 2, 17th Floor<br>Judge: The Hon. William H. Orrick |

**PLAINTIFF'S NTC OF MTN AND MTN FOR CLASS CERTIFICATION**

TO THE COURT, THE PARTIES, AND ALL COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 5, 2014 at 2:00 p.m., before the Honorable William H. Orrick, United States District Judge for the United States District Court, Northern District of California, located at 450 Golden Gate Ave., San Francisco, CA 94102, in Courtroom 2, on the 17th Floor, Plaintiff Amber Kristi Marsh, by and through her undersigned counsel, will move, and does hereby respectfully move, this Court under Federal Rules of Civil Procedure 23(a) and 23(b)(3) for an order certifying the following class:

> All individuals from whom Membership Fees were collected (or who incurred Bank Account Fees in connection with a collection or attempted collection of Membership Fees) by way of remotely created check(s) drafted by Defendant Jack Henry & Associates, Inc. and deposited with First National Bank of Central Texas, from May 6, 2007 to the date of the preliminary approval order (the "Class").[1]

Marsh also seeks appointment as Class representative and appointment of her counsel to serve as Class counsel pursuant to Federal Rule of Civil Procedure 23(g).

Plaintiff moves for certification because the above-defined Class is so numerous that joinder would be impracticable, there are common questions of law or fact among the Class members, the claims of the representative Plaintiff are typical of those of the Class, and Plaintiff and her counsel will fairly and adequately represent the interests of the Class. Additionally, questions of law or fact common to Class members predominate over any questions affecting only individual members, and a Class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

This motion is based on the following memorandum of points and authorities; the declarations of Plaintiff's counsel Jeffrey M. Rosenfeld and Mike Arias in support of this motion; the declarations of Plaintiffs Amber Kristi Marsh and Stacie Evans in support of

---

[1] Capitalized terms in the Class definition are defined in the Background section of the memorandum of points and authorities.

this motion; the exhibits attached to all declarations; and all other relevant pleadings, briefs, and evidence.

Respectfully Submitted,

DATED:  December 27, 2013                    **KRONENBERGER ROSENFELD, LLP**


By:    s/ Jeffrey M. Rosenfeld
                    Jeffrey M. Rosenfeld

Attorneys for Plaintiffs

1

**TABLE OF CONTENTS**

2

3    INTRODUCTION...........................................................................................................1

4      A.    Remotely Created Checks ................................................................. 2

5      B.    Check Return Rates & Return Rates for Other Payment Systems ..................... 4

6      C.    The ZaaZoom Defendants' Scam ..................................................... 5

       D.    Jack Henry's Involvement in the ZaaZoom Defendants' Scam ........................... 7
7
       E.    FNBCT's Involvement in the ZaaZoom Defendants' Scam ................................. 8
8
       F.    Consumer Outrage About the ZaaZoom Defendants' Scam .............................. 9

     ARGUMENT......................................................................................................... 11
9
       A.    Because the Class consists of approximately 116,000 Class members, the Class
10           is numerous. ...................................................................................... 11

11     B.    Common questions of law and fact pervade this action because the ZaaZoom
             Defendants operated a uniform scam as to all Class members......................... 12
12
       C.    Plaintiff is typical of the other Class members because she was involuntarily
13           enrolled in a Membership Plan after applying for a payday loan....................... 13

14     D.    Plaintiff would be an adequate Class representative because she has no conflict
             and will vigorously pursue this action.............................................................. 14
15
       E.    Plaintiff has satisfied Rule 23(b)(3) by showing that common issues of fact and
16           law predominate and that litigating this case as a class action would be the
             superior method for resolving Class members' claims....................................... 15
17
             1.   Common questions of law and fact predominate where the ZaaZoom
18                Defendants perpetrated a uniform scam against all Class members. .......... 16

19           2.   California law applies to all of the Class members' claims. ......................... 18

20           3.   A class action is the superior method for adjudicating Class members' claims
                  because the claims are small individually but large in the aggregate. .......... 19
21
       F.    The Court should appoint Plaintiffs' counsel as Class counsel. ......................... 20
22
     CONCLUSION ......................................................................................................... 21

23

24

25

26

27

28



KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1

**TABLE OF AUTHORITIES**

**Cases**

*Abdullah v. U.S. Sec. Associates, Inc.,*
  731 F.3d 952 (9th Cir. 2013)....................................................... 12

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................... 16

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds*,
  133 S. Ct. 1184, 185 L. Ed. 308 (2013) ....................................... 2

*Arlington Video Prods., Inc. v. Fifth Third Bancorp*,
  515 F. App'x 426 (6th Cir. 2013)................................................. 2

*Beck-Ellman v. Kaz USA, Inc.*,
  283 F.R.D. 558 (S.D. Cal. 2012).............................................. 16

*Carnegie v. Household Int'l, Inc.*,
  376 F.3d 656 (7th Cir. 2004)................................................... 20

*Davis v. Astrue*,
  250 F.R.D. 476 (N.D. Cal. 2008) ............................................ 12

*F.T.C. v. Commerce Planet, Inc.*,
  878 F. Supp. 2d 1048 (C.D. Cal. 2012) .................................... 5

*F.T.C. v. Grant Connect, LLC*,
  827 F. Supp. 2d 1199 (D. Nev. 2011) ...................................... 5

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)........................... 11, 13, 16, 19

*Holloway v. Full Spectrum Lending*,
  CV 06-5975 DOC RNBX, 2007 WL 7698843  (C.D. Cal. June 26, 2007) .................. 19

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*,
  270 F.R.D. 521 (N.D. Cal. 2010) ............................................. 14

*In re Ferrero Litig.*,
  278 F.R.D. 552 (S.D. Cal. 2011)............................................... 15

*In re iPhone 4S Consumer Litig.*,
  C 12-1127 CW, 2013 WL 3829653 (N.D. Cal. July 23, 2013) ................. 19

*Jordan v. Paul Fin., LLC*,
  285 F.R.D. 435 (N.D. Cal. 2012) ............................................. 14

*Juarez v. Jani-King of California, Inc.*,
  273 F.R.D. 571 (N.D. Cal. 2011) ............................................. 12

*Keegan v. Am. Honda Motor Co., Inc.*,
  284 F.R.D. 504 (C.D. Cal. 2012) ......................................... 18, 19

*Mazza v. Am. Honda Motor Co., Inc.*,
  666 F.3d 581 (9th Cir. 2012)............................................. 16, 18

*Mills v. U.S. Bank*,
  166 Cal. App. 4th 871 (2008) ............................................... 2, 3

*Murray v. GMAC Mortg. Corp.*,
  434 F.3d 948 (7th Cir. 2006)................................................... 19

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
  287 F.R.D. 590 (C.D. Cal. 2012) ............................................. 14

*Pierce v. Cnty. of Orange*,
  526 F.3d 1190 (9th Cir. 2008)................................................. 15

*Powers v. Eichen*,
  229 F.3d 1249 (9th Cir. 2000)................................................. 11

*Reyes v. Zions First Nat. Bank*,
  CIV.A. 10-345, 2013 WL 5332107 (E.D. Pa. Sept. 23, 2013) ................. 11

*Ries v. Arizona Beverages USA LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012) ............................................. 11

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011)................................................. 11

*Webb v. Carter's Inc.*,



KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

ii

PLAINTIFF'S NTC OF MTN AND MTN FOR
CLASS CERTIFICATION

272 F.R.D. 489 (C.D. Cal. 2011) .................................................................. 11
*Westways World Travel, Inc. v. AMR Corp.*,
218 F.R.D. 223 (C.D. Cal. 2003) .................................................................. 12
*Wolin v. Jaguar Land Rover N. Am., LLC,*
617 F.3d 1168 (9th Cir. 2010)............................................................... 16, 19
*Zinser v. Accufix Research Inst., Inc.,*
253 F.3d 1180 (9th Cir. 2001)...................................................................... 15

**Statutes**
Business and Professions Code §17200 .............................................. 17, 19
Cal. Com. Code §3502........................................................................................ 5
Com. Code §3014(f)............................................................................................. 2
Com. Code §3301(f), (k) ...................................................................................... 3
**Rules**
Fed. R. Civ. P. 23...................................................................................*passim*
**Regulations**
12 C.F.R. §229.................................................................................................... 3

**PLAINTIFF'S NTC OF MTN AND MTN FOR
CLASS CERTIFICATION**

**INTRODUCTION**

Defendants ZaaZoom Solutions, LLC, Zaza Pay LLC, MultiECom, LLC, and Online Resource Center, LLC (collectively, the "ZaaZoom Defendants") ran a scam, which worked as follows. First, the ZaaZoom Defendants lured people into applying for payday loans on websites that the ZaaZoom Defendants operated. Second, the ZaaZoom Defendants used the personal information they collected through the payday loan websites—including the applicants' banking information—to enroll the applicants in an online coupon plan. The ZaaZoom Defendants made these enrollments without the applicants' knowledge or consent or ever making any disclosures about the coupon program. Next, the ZaaZoom Defendants forged checks in the applicants' names, ostensibly to pay for the coupon programs. To be clear, these checks were fakes; they were created without the applicants' knowledge or consent.

The ZaaZoom Defendants worked with Defendants Jack Henry & Associates, Inc. ("Jack Henry"), Data Processing Systems, LLC ("DPS"), and Automated Electronic Checking, Inc. ("AEC") (collectively, the "Processors") to draft the checks. In turn, the Processors worked with depository banks First National Bank of Central Texas ("FNBCT") and First Bank of Delaware ("FBD") (collectively, the "Depository Banks") to deposit and settle the checks. In these roles, the Processors and Depository Banks disregarded alarming signs that the checks were fraudulent—including a check return rate over 100 times the national average and widespread complaints about the ZaaZoom Defendants. Defendants performed this scam over a million times, and robbed people, already in a frail financial condition, of their remaining money.

Plaintiff has brought this action on behalf of herself and the other victims of Defendants' scam. Plaintiff seeks to certify the following class under Federal Rules of Civil Procedure 23(a) and 23(b)(3):

All individuals from whom Membership Fees were collected (or who incurred Bank Account Fees in connection with a collection or attempted collection of Membership Fees) by way of remotely created check(s)

1

**PLAINTIFF'S NTC OF MTN AND MTN FOR CLASS CERTIFICATION**

1  drafted by Defendant Jack Henry & Associates, Inc. and deposited with

2  First National Bank of Central Texas, from May 6, 2007 to the date of the

3  preliminary approval order (the "Class").[2]

4      The uniform nature of Defendants' misconduct warrants class-wide resolution.  In

5  particular, Plaintiff has alleged that the ZaaZoom Defendants' coupon program was an

6  outright scam that affected each Class member in the same way, and that no Class

7  member consented to enrolling in the ZaaZoom Defendants' coupon program.  Moreover,

8  the Class members suffered the same injuries as a result of Defendants' misconduct: a)

9  the wrongful withdrawal of membership fees, and/or b) the wrongful imposition of bank

10  fees.  Thus, the Court should certify the Class, appoint Marsh as the Class

11  representative, and appoint Marsh's counsel to serve as Class counsel.

12  **BACKGROUND**

13  **A.  Remotely Created Checks**

14      In general terms, a check is a draft drawn on a bank, which is payable on demand,

15  and which is signed by the drawer.  Com. Code §3014(f).  A check typically involves

16  three parties: a) the drawer, who writes the check; b) the payee to whom the check is

17  made payable; and c) the drawee or payor bank, which is the bank that has the drawer's

18  checking account, and from which the check is paid.  *Mills v. U.S. Bank*, 166 Cal. App.

19

20  [2] Given the anticipated class settlement with First Bank of Delaware, and given the

21  default judgments entered against the ZaaZoom Defendants, Plaintiff has in her motion

22  modified the class definitions from the definition in the Third Amended Complaint to make

it as clear, concise, and objective as possible, and to focus the definition on the active

23  defendants in the action—*i.e.* Jack Henry and FNBCT.  Modifying a proposed class

definition is common in class action litigation.  "Until the plaintiff's counsel becomes

24  aware of which ground [in opposition to class certification] will be selected by the

defendants, the plaintiff is uncertain how broadly to frame the initial brief in support of

25  class certification."  Alba Conte & H. Newberg, Newberg on Class Actions §7.7 at 23 (4th

ed. 2002).  It is likewise common for a court to modify a class definition, either *sua sponte*

26  or on motion as litigation circumstances unfold.  *See generally Amgen Inc. v. Conn.*

*Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1212, n.9, 185 L. Ed. 308, 81

27  USLW4146 (2013); *Arlington Video Prods., Inc. v. Fifth Third Bancorp*, 515 F. App'x 426,

439 (6th Cir. 2013).

28

2  **PLAINTIFF'S NTC OF MTN AND MTN FOR CLASS CERTIFICATION**

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

1   4th 871, 881 n.10 (2008).  In form, a check is an order to the drawee bank to pay the

2   face amount of the check to the payee.  *Id.*

3        After receiving a check, the payee typically endorses the back of the check in the

4   payee's own name, and then deposits the check in the payee's account at the payee's

5   own bank, called the depository bank.  *See Mills*, 166 Cal. App. at 881 n.10.  The

6   depository bank then credits the check to the payee's account and sends the check

7   through the check clearing system to the drawee bank for ultimate payment from the

8   drawer's account—a process called settlement.  *See id.*

9        A remotely created check or demand draft ("RCC") is a type of check.  Com. Code

10  §3301(f), (k).  An RCC looks like a traditional check but differs in several important

11  respects.  Most significantly, an RCC is not signed by the drawer.  Rather, an RCC is

12  created by a third party under the authority of the drawer for the purpose of charging the

13  drawer's bank account.  *See* 12 C.F.R. §229.2; 12 C.F.R. §229 App. E(fff).  In other

14  words, an RCC is a check that: a) is created by the payee, b) is drawn on the drawer's

15  bank account, and c) does not bear the signature of the drawer in the format agreed to

16  between the drawee bank and the drawer.  *See id.*

17       Like traditional checks, after evaluating the authenticity of the RCC, the payee's

18  bank sends the RCC to the drawee bank for settlement.  If the drawee bank accepts the

19  check, it will provide the funds identified in the RCC to the depository bank.  *See Mills*,

20  166 Cal. App. 4th at 881 n.10.  The depository bank, in turn, deposits those funds into

21  the payee's account.  *See id.*  All of these steps may occur before the drawer sees the

22  RCC or even knows that a withdrawal has been made from his or her bank account.  *See*

23  *id.*

24       RCCs are particularly vulnerable to fraud for numerous reasons, including the fact

25  that:

26       a.   They do not bear the payor's signature or other readily verifiable indication of

27            authorization;

28       b.   The funds can be withdrawn from the payor's account before the payor knows

1   that the RCC was generated;

2   c.   RCCs are easy to create, requiring only a computer and printer; and

3   d.   The payee does not need special access to the banking system, as is the

4       case with ACH transactions.

5   The risk of fraud associated with RCCs has been recognized by federal and state

6   government agencies and consumer watchdogs.   In prepared testimony before the

7   House Banking Committee on April 15, 1996, the Director of the Bureau of Consumer

8   Protection of the Federal Trade Commission ("FTC") warned that RCCs are "the favorite

9   method of fraudulent actors for taking consumers' money through fraudulent

10  telemarketing and other scams."   (Declaration of Jeffrey M. Rosenfeld in Support of

11  Plaintiff's Motion for Class Certification ("Rosenfeld Decl.") ¶17 & Ex. 1.)   That same

12  year, California was one of the first States to "establish rules governing 'demand drafts'

13  and to specify liability for unauthorized demand drafts."   S.B. 1742, 1995-96 Sess. (Cal.

14  1996).   In 2004, the Canadian Payments Association banned the use of RCCs in the

15  Canadian banking system due to the high risk of fraud that they pose. (Rosenfeld Decl. ¶18

16  & Ex. 2.)   In March of 2005, the Federal Reserve acknowledged that "remotely created

17  checks are vulnerable to fraud because they do not bear a signature or other readily

18  verifiable indication of authorization," and that "there have been significant consumer and

19  bank complaints identifying cases of alleged fraud using remotely created checks."

20  (Rosenfeld Decl. ¶19 & Ex. 3.)   And in response to the Federal Reserve's request for

21  comment, the Attorneys General of thirty-five states (including California) and the District

22  of Columbia stated their "position that demand drafts are frequently used to perpetrate

23  fraud on consumers" and "that such drafts should be eliminated in favor of electronic

24  funds transfers that can serve the same payment function."   (Rosenfeld Decl. ¶20 & Ex.

25  4.)

26  **B.   Check Return Rates & Return Rates for Other Payment Systems**

27  If an RCC is not honored by the paying bank, the check is deemed "returned."   An

28  RCC may be returned for a variety of reasons, including where the drawer account does

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1    not exist or is closed, where the drawer account has insufficient funds to settle the check,

2    or where the check is a forgery or otherwise not authorized.  *See* Cal. Com. Code §3502.

3    (Rosenfeld Decl. ¶21 & Ex. 5.)  For the past several years, the Federal Reserve has

4    reported that the average total return rate for checks is about 0.5%.  (Rosenfeld Decl.

5    ¶22 &  Ex. 6.)  According to the FTC, "[a] red flag indicating unlawful debiting is a high

6    rate of consumers and their banks rejecting and returning transactions submitted for

7    debiting."  (Rosenfeld Decl. ¶23 & Ex. 7.)  The FTC has also found that excessive return

8    rates provide "<u>obvious signs</u>" that the merchants, processors, and banks are engaged in

9    dubious practices.  (Rosenfeld Decl. ¶23 & Ex. 7.) (emphasis added).

10    Other payment systems have similar return rates.  As examples, the 2012 return

11    rate for ACH payments was 0.97%, and the unauthorized debit rate for ACH transactions

12    was 0.0298%.  (Rosenfeld Decl. ¶24 & Ex. 8.)  Similarly, credit card companies set a 1%

13    chargeback threshold as the acceptable limit.  *See F.T.C. v. Commerce Planet, Inc.*, 878

14    F. Supp. 2d 1048, 1075 (C.D. Cal. 2012); *F.T.C. v. Grant Connect, LLC*, 827 F. Supp. 2d

15    1199, 1221-22 (D. Nev. 2011) (Visa and Mastercard's 1% chargeback thresholds "in part

16    are designed to detect fraud.")

17    **C.  The ZaaZoom Defendants' Scam**

18    The ZaaZoom Defendants provided online coupon services though various

19    Internet   websites,   including   <libertydiscountclub.com>,   <777discountclub.com>,

20    <247discountclub.com>,        <websavingsclub.com>,        <savingclub247.com>,

21    <discountclub247.com>, <unlimitedlocalsavings.com>, and <uclipusave.com>.   (the

22    "Membership Programs").  (Rosenfeld Decl. ¶25 & Ex. 9.)  Members of the Membership

23    Programs paid a monthly fee, and in return, could download coupons from the

24    Membership Program websites, which could be redeemed with various merchants.

25    (Rosenfeld Decl. ¶¶26-27 & Exs. 10-11.)

26    Theoretically, a person could enroll in a Membership Program voluntarily by

27    entering his or her contact and payment information directly into a Membership

28    Program's website.  (Rosenfeld Decl. ¶¶25-27 & Exs. 9-11.)  In actuality, all of the Class

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

members were involuntarily enrolled in the Membership Programs. (Declaration of Amber Kristi Marsh in Support of Plaintiff's Motion for Class Certification ("Marsh Decl.") *passim*; Declaration of Stacie Evans in Support of Plaintiff's Motion for Class Certification ("Evans Decl.") *passim*; Rosenfeld Decl. ¶¶28-31 & Exs. 12-14.) Specifically, the ZaaZoom Defendants also operated websites where people could apply for payday loans. (Rosenfeld Decl. ¶32 & Ex. 15.) When applying for a loan on one of these websites, a Class member was required to enter his or her personal information, including name, address, email address, and telephone number. (Marsh Decl. ¶5; Evans Decl. ¶5; Rosenfeld Decl. ¶32 & Ex. 15.) Additionally, the Class member was required to enter his or her checking account number and bank routing number. (Marsh Decl. ¶5; Evans Decl. ¶5; Rosenfeld Decl. ¶32 & 15.) The payday loan websites would not allow the Class member to proceed with the application process unless a valid checking account number and bank routing number were entered. (Marsh Decl. ¶5; Evans Decl. ¶5; Rosenfeld Decl. ¶32 & Ex. 15.)

Without the Class member's knowledge or consent, the ZaaZoom Defendants enrolled the Class member in a Membership Program. (Marsh Decl. *passim*; Evans Decl. *passim*; Rosenfeld Decl. ¶¶29-31 & Exs. 12-14.) Next, the ZaaZoom Defendants transferred the Class members' personal information to a Processor, such as Jack Henry. (Rosenfeld Decl. ¶¶33-36, 40-41 & Exs. 16-19, 23-24.) Then, Jack Henry drafted RCCs from the Class members' checking accounts payable to the ZaaZoom Defendants (the "ZaaZoom RCCs") and deposited those RCCs in Jack Henry's bank account at FNBCT. (Rosenfeld Decl. ¶¶37-38 & Exs. 20-21.) Where the Class member had enough money in his/her bank account, a membership fee of between $12.99 and $49.99 was withdrawn to pay for the Membership Program (the "Membership Fees"). (Rosenfeld Decl. ¶28 & Ex. 12.) Where the Class member did not have enough money in his/her bank account to pay the Membership Fee, the RCC was returned as not payable, and the Class member was charged a Not Sufficient Fund fee (the "Bank Account Fees"). (Rosenfeld Decl. ¶39 & Ex. 22.)

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

1    Plaintiff was a victim of this scam, after she applied for a payday loan online.

2    Plaintiff never consented to becoming a member of any Membership Program. (Marsh

3    Decl. *passim*) Yet, after Plaintiff applied for a payday loan, Defendants enrolled her in a

4    Membership Program and withdrew Membership Fees from her bank account. (Marsh

5    Decl. *passim*.)

6    **D.  Jack Henry's Involvement in the ZaaZoom Defendants' Scam**

7    Jack Henry served as a Processor for the ZaaZoom Defendants. In this capacity,

8    Jack Henry received Class members' personal information from the ZaaZoom

9    Defendants. (Rosenfeld Decl. ¶¶33-36, 40-41 & Exs. 16-19, 23-24.) Next, Jack Henry

10   drafted and deposited ZaaZoom RCCs in an account at FNBCT held in the name of Jack

11   Henry (and not in the name of the ZaaZoom Defendants). (Rosenfeld Decl. ¶¶37-38 &

12   Exs. 20-21.) Jack Henry served as the Processor for the ZaaZoom Defendants for over

13   five months and during that time drafted and deposited over 116,000 ZaaZoom RCCs.

14   (Rosenfeld Decl. ¶¶28, 42 & Exs. 12, 25.)

15   Jack Henry monitored aggregate data for the ZaaZoom RCCs during this time.

16   (Rosenfeld Decl. ¶¶28-29, 43-44 & Exs. 12-13, 26-27.) This data included the total

17   number of RCCs deposited, the total dollar amount deposited, the total number of

18   returned RCCs, and the reasons for the returned RCCs. (Rosenfeld Decl. ¶¶28-29, 43-

19   44 & Exs. 12-13, 26-27.) Moreover, Jack Henry was notified when a ZaaZoom RCC was

20   returned as not payable. (Rosenfeld Decl. ¶¶43-44 & Exs. 26-27.) Significantly, of the

21   more than 116,000 ZaaZoom RCCs that Jack Henry drafted, at least 61,000 were

22   returned by the paying banks as not payable. (Rosenfeld Decl. ¶¶28-29 & Exs. 12-13.)

23   Thus, the return rate for these RCCs exceeded 53%. Additionally, at the time that Jack

24   Henry served as a Processor for the ZaaZoom Defendants, there were numerous

25   publicly available warnings and complaints about the ZaaZoom Defendants and the

26   Membership Programs. (Rosenfeld Decl. ¶31 & Ex. 14.) Jack Henry was aware of these

27   alarming signs throughout the time it served as a processor for the ZaaZoom

28   Defendants. (Rosenfeld Decl. ¶¶31, 42 & Exs. 14, 25.)

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1    Jack Henry earned a per-check processing fee for the ZaaZoom RCCs, earning

2    $0.045 for each RCC it processed, and an additional $0.50 for each RCC that was

3    returned as unauthorized.  (Rosenfeld Decl. ¶40 & Ex. 23.)  Thus, Jack Henry had a

4    financial incentive in perpetuating the ZaaZoom Defendants' fraudulent scheme.

5    **E.   FNBCT's Involvement in the ZaaZoom Defendants' Scam**

6    FNBCT served as the depository bank for the ZaaZoom RCCs drafted by Jack

7    Henry.  (Rosenfeld Decl. ¶¶45-47 & Exs. 28-29.)  In this capacity, FNBCT accepted the

8    ZaaZoom RCCs for deposit, reviewed and authenticated those RCCs, sent those RCCs

9    to the relevant drawee banks, and then accepted settled funds for those RCCs.

10    (Rosenfeld Decl. ¶¶45-47 & Exs. 28-29.)  FNBCT maintained and monitored aggregate

11    data for the ZaaZoom RCCs and was notified when an RCC was returned.  (Rosenfeld

12    Decl. ¶¶44, 48 & Exs. 27, 30.)

13    At the time FNBCT agreed to accept the ZaaZoom RCCs for deposit, there were

14    numerous publicly available warnings and complaints about the ZaaZoom Defendants

15    and the Membership Programs.  (Rosenfeld Decl. ¶31 & Ex. 14.)  Additionally, FNBCT

16    was aware of the excessive check return rate and in fact, received specific complaints

17    from drawee banks, the customers of which had been affected by the ZaaZoom

18    Defendants' scam.  (Rosenfeld Decl. ¶¶44, 48 & Exs. 27, 30.)

19    Equally troubling, the ZaaZoom Defendants never had a depository account with

20    FNBCT.  (Rosenfeld Decl. ¶¶38, 49 & Exs. 21, 31.)  Thus, while the RCCs were payable

21    to the ZaaZoom Defendants, they were not deposited in any account with FNBCT held

22    by the ZaaZoom Defendants.    (Rosenfeld Decl. ¶¶37-38, 49 & Exs. 20-21, 31.)

23    Moreover, while these RCCs were payable to the Zaazoom Defendants, none of the

24    Zaazoom Defendants endorsed the RCCs.  (Rosenfeld Decl. ¶37 & Ex. 20.)  Additionally,

25    these RCCs did not display the name or electronic signature of the purported drawer in

26    the signature line.  (Rosenfeld Decl. ¶37 & Ex. 20.)  Instead, the RCCs simply stated

27    "Authorization On File," providing no indication that the purported drawer had authorized

28    the check.  (Rosenfeld Decl. ¶37 & Ex. 20.)  Finally, RCCs deposited with FNBCT

KRONENBERGER | ROSENFELD    150 Post Street, Suite 520, San Francisco, CA  94108

1  displayed astronomically high check numbers, beyond the number of checks that any

2  actual person would issue.  (Rosenfeld Decl. ¶37 & Ex. 20.)  As an example, Marsh's

3  purported check deposited with FNBCT displayed the check number 1,261,849.  (Marsh

4  Decl. ¶10 & Ex. A.)

5      FNBCT was aware of these warning signs (including the massive RCC return rate)

6  throughout the entire time that it served as a depository bank for the ZaaZoom RCCs.

7  **F.  Consumer Outrage About the ZaaZoom Defendants' Scam**

8      Plaintiffs were by no means the only victims of the ZaaZoom Defendants' scam.

9  Government agencies and consumer watchdogs received numerous complaints

10  describing the exact same scam.   As just limited examples, the BBB received the

11  following complaints about the ZaaZoom Defendants and the Membership Programs:

- THIS COMPANY DEBITED BY CHECKING ACCOUNT FOR 49.99 – WITHOUT
  AUTHORIZATION – I HAVE NEVER HEARD OF WEBDISCOUNT CLUB NOR
  HAVE EVER APPLIED FOR ANYTHING LIKE THIS.  I CONTACTED THE
  COMPANY FOR A REFUND BUT HAVE NOT RECEIVED A REASONABLE
  ANSWER.  I FEEL THIS IS FRAUD AND UNETHICAL BEHAVIOR OF THIS
  COMPANY.   I REQUEST A FULL REFUND TO BE CREDITED TO MY
  ACCOUNT WITHIN 3 BUSINESS DAYS FROM TODAY.  (Rosenfeld Decl. ¶50 &
  Ex. 32.)

- THIS COMPANY (UCLIPUSAVE) CHARGED MY BANK ACCOUNT $23.96
  WITHOUT MY CONSENT.  I HAVE ABSOLUTELY NO KNOWLEDGE ABOUT
  HOW THIS COMPANY IS, THE FIRST TIME I EVER HEAR THEIR NAME IS
  BECAUSE I SEE IT ON MY ACCOUNT ACTIVITY WHILE CHECKING MY BANK
  ACCOUNT.   THEY RESULTED IN MY ACCOUNT BEING OVERDRAFTED
  BASICALLY MESSED UP MY FINANCES.   I TRIED CALLING THEM TO
  RESOLVE THIS BUT NO ONE WOULD GET ON THE LINE.  (Rosenfeld Decl.
  ¶51 & Ex. 33.)

28  //

KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

- This company took $33.98 out of my account and then I was charged 2 35.00 charges. I told them I did not sign up for their services. I asked them for a copy of the so called application that shows me where I signed up and they will not give me a copy. (Rosenfeld Decl. ¶52 & Ex. 34.)

- I applied for a payday loan on 12/26/2010 and during the application process this company is in partnership with the payday loan company to advertise for their services. When applying for the payday loan you have to provide your ACH # and checking account #. At the time of approval of application there is nothing written in the payday loan agreement that you agree to the $49.99 charge from Unlimited Savings. Today I reviewed by checking account information and discovered a charge from this company. I called the company and they stated during the application process is where I would have agreed to the $49.99 charge. I requested to see proof of this agreement. They could not provide me with this information. I then requested for a full refund and was told I would not receive a refund. I would like to see where I agreed for services provided by Unlimited Savings. If no agreement can provide I would like my $49.99 fully refunded to me. (Rosenfeld Decl. ¶53 & Ex. 35.)

As a result of the ZaaZoom Defendants' scam, the Better Business Bureau assigned the ZaaZoom Defendants' "Liberty Discount Club" Membership Program an "F" rating and stated, "[b]ased on information in BBB files, consumers allege that after applying for an online loan or cash advance, Liberty Discount Club made unauthorized bank charges ranging from $29.91 to $49.98." (Rosenfeld Decl. ¶54 & Ex. 36.)

The ZaaZoom Defendants' misconduct was also evidenced by exorbitant check return rates. As an example, 53% of the checks drafted by Jack Henry and deposited with FNBCT were returned as not payable. (Rosenfeld Decl. ¶¶28-29 & Exs. 12-13.) This is more than 100 times an acceptable check return rate. (Rosenfeld Decl. ¶22 & Ex. 6.) As the National Automated Clearing House Association has stated, high return rates

10

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

1  are a strong indication of fraud.  *See Reyes v. Zions First Nat. Bank*, CIV.A. 10-345, 2013

2  WL 5332107 (E.D. Pa. Sept. 23, 2013)

3                                          **ARGUMENT**

4        Under Federal Rule 23, class actions are intended "to unify and render

5  manageable litigation in which there are many members of a homogeneous class with

6  common claims against a defendant." *Powers v. Eichen*, 229 F.3d 1249, 1254 (9th Cir.

7  2000).  "Class actions have two primary purposes: a) to accomplish judicial economy by

8  avoiding multiple suits, and b) to protect the rights of persons who might not be able to

9  present claims on an individual basis." *Webb v. Carter's Inc.*, 272 F.R.D. 489, 500 (C.D.

10  Cal. 2011).

11       For a class to be certified, the plaintiff must satisfy the requirements of Rule 23(a)

12  and must also establish an appropriate ground for maintaining class actions under Rule

13  23(b).  *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011).  The

14  requirements of Rule 23(a) are: a) a class so numerous that joinder is impractical

15  (numerosity); b) common questions of fact or law (commonality); c) typicality of the

16  representatives (typicality); and d) that the representatives will adequately protect the

17  class (adequate representation).  *See id.*  Additionally, under Rule 23(b)(3): a) common

18  questions must predominate over any questions affecting only individual members, and

19  b) class resolution must be superior to other available methods for the fair and efficient

20  adjudication of the controversy.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th

21  Cir. 1998).  Here, Plaintiff has satisfied all of the Rule 23 requirements.

22  **A.  Because the Class consists of approximately 116,000 Class members, the
       Class is numerous.**

23
        Rule 23(a)(1) requires the plaintiff to show that the class is numerous.  Numerosity

24  is met if the potential number of class members is so numerous that the alternative—

25  joinder of individual plaintiffs—is impracticable.  *Ries v. Arizona Beverages USA LLC*,

26  287 F.R.D. 523, 536 (N.D. Cal. 2012).  While there is no fixed number that satisfies the

27  numerosity requirement, as a general matter, a class greater than forty often satisfies the

28

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1   requirement.  *See Davis v. Astrue*, 250 F.R.D. 476, 485 (N.D. Cal. 2008).  Here, the

2   Class consists of approximately 116,000 people who had unauthorized RCCs drawn in

3   their name.  Such a large class is numerous.

4        Moreover, the Class is ascertainable.  Defendants have produced records of all

5   RCCs that were drawn—or attempted to be drawn—in Class members' names.

6   (Rosenfeld Decl. ¶¶28-30, 37 & Ex. 12-13, 20.)  These records contain the names and

7   addresses of the supposed drawers (*i.e.* the Class members).  (Rosenfeld Decl. ¶¶28-30,

8   37 & Exs. 12-13, 20.)  Moreover, Defendants' records identify which Class members had

9   Membership Fees withdrawn from their accounts and which Class members had the

10  RCCs returned for insufficient funds and thus incurred Bank Account Fees.  (Rosenfeld

11  Decl. ¶¶28-29 & Exs. 12-13.)  Because the Class is numerous and ascertainable, Plaintiff

12  has satisfied Rule 23(a)(1).

**B.  Common questions of law and fact pervade this action because the ZaaZoom
     Defendants operated a uniform scam as to all Class members.**

14       Under Rule 23(a), the plaintiff must also establish commonality.  Commonality

15  requires the plaintiff to show that the class members' claims depend on a common

16  contention, and that the determination of the truth or falsity of that contention will resolve

17  a central issue in the action.  *See Abdullah v. U.S. Sec. Associates, Inc.*, 731 F.3d 952,

18  957 (9th Cir. 2013).  Put another way, the key inquiry is not whether the plaintiff has

19  raised common questions, but rather, whether class treatment will generate enough

20  common answers to resolve the case on behalf of the class.  *See id.*  Courts construe

21  Rule 23(a)'s commonality requirement permissively.  *Juarez v. Jani-King of California,*

22  *Inc.*, 273 F.R.D. 571, 578 (N.D. Cal. 2011).  Significantly, at the class certification stage,

23  the plaintiff's allegations must be accepted as true and the merits of the plaintiff's claims

24  are not at issue.  *See Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 231

25  (C.D. Cal. 2003).

26       Here, Plaintiff has alleged that the ZaaZoom Defendants operated the same scam

27  with respect to each Class member—*i.e.* that the ZaaZoom Defendants enrolled *all* of the

28

KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

1   Class members in the Membership Programs without their knowledge or consent after

2   they applied for payday loans online.  For purposes of this motion the Court must accept

3   this allegation as true.  Assuming that Plaintiff can establish the validity of this allegation

4   during the merits phase of the litigation (*i.e.* that the ZaaZoom Defendants operated this

5   uniform scam), Plaintiff will resolve an issue that is central to the validity of each claim.

6   Moreover, Plaintiff has alleged that Defendants Jack Henry and FNBCT handled all of

7   the ZaaZoom RCCs in the same way—*i.e.* drafting, depositing, and settling the RCCs

8   without regard to warning signs that existed throughout the Membership Programs.

9        Defendants will likely argue that an individual inquiry must be made as to whether

10  each Class member was involuntarily enrolled in a Membership Program.  This argument

11  fails.  As discussed above, for purposes of this motion, the Court must accept the

12  complaint's allegations a true.  The complaint alleges that the ZaaZoom Defendants

13  operated a uniform scam among all Class members.    Moreover, Plaintiff has

14  corroborated this allegation with persuasive evidence, including a massive check return

15  rate and numerous consumer complaints describing the exact same scam.  No Class

16  member voluntarily enrolled in a Membership Program.  Rather, all Class members were

17  enrolled without their knowledge or consent.

18       Of course, Defendants will have the opportunity to disprove this allegation during

19  the merits phase of litigation.  At this stage, however, whether the ZaaZoom Defendants

20  perpetrated this uniform scam is a common question of fact.

21  **C.  Plaintiff is typical of the other Class members because she was involuntarily
        enrolled in a Membership Plan after applying for a payday loan.**

22

23       Under Rule 23(a), Plaintiff must also show that her claims are typical of those of

    the Class.  Representative claims are typical if they are reasonably co-extensive with

24
    those of absent class members.  *See Hanlon*, 150 F.3d at 1020.    However,
25
    representative claims need not be substantially identical.  *See id.*  The test of typicality is
26
    whether other class members have the same or similar injury, whether the action is
27
    based on conduct which is not unique to the named plaintiff, and whether other class
28

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1    members have been injured by the same course of conduct.  *See Negrete v. Allianz Life*

2    *Ins. Co. of N. Am.*, 287 F.R.D. 590, 603 (C.D. Cal. 2012).  As with the commonality

3    requirement, courts construe Rule 23(a)'s typicality requirement permissively.  *Jordan v.*

4    *Paul Fin., LLC*, 285 F.R.D. 435, 459 (N.D. Cal. 2012).

5         Here, Plaintiff's claims are co-extensive with the claims of the other Class

6    members for several reasons: a) as with the other Class members, Plaintiff applied for a

7    payday loan, b) as with the other Class members, Plaintiff did not voluntarily enroll in any

8    Membership Program, c) as with the other Class members, after Plaintiff applied for a

9    payday loan she was involuntarily enrolled in a Membership Program, d) as with the

10   other Class members, after Plaintiff applied for a payday loan Jack Henry drafted an

11   RCC in Plaintiff's name payable to the ZaaZoom Defendants and deposited that RCC

12   with FNBCT, and e) as with the other Class members, Plaintiff suffered damages in the

13   form of the Membership Fees wrongfully withdrawn from her bank account.  (Marsh Decl.

14   *passim*.)  Because Plaintiff was a victim of the same scam and suffered the same injuries

15   as the other Class members, Plaintiff satisfies Rule 23(a)'s typicality requirement.

16   **D.  Plaintiff would be an adequate Class representative because she has no conflict and will vigorously pursue this action.**

17   

18        Rule 23(a)(4) requires a representative plaintiff to show that she will adequately

     represent the interests of the class.  More specifically, the plaintiff must show: a) that she

19   does not have conflicts of interest with the proposed class, and b) that she is represented

20   by qualified and competent counsel who will vigorously pursue the action.  *In re Conseco*

21   *Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 531 (N.D. Cal. 2010).

22        Here, Plaintiff has the same interests as the other Class members—*i.e.* to recover

23   the Membership Fees and Bank Account Fees that were wrongfully taken from Class

24   members' bank accounts by Defendants.  (Marsh Decl. *passim*.)  Moreover, Plaintiff has

25   actively participated in this litigation for 2½ years, regularly communicating with counsel

26   and responding to formal and informal discovery requests.  (Marsh Decl. ¶13.)  Plaintiff

27   has no interests antagonistic to those of the Class, but rather, is pursuing this case

28   

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

14

PLAINTIFF'S NTC OF MTN AND MTN FOR
CLASS CERTIFICATION

1   because she believe that it is the right thing to seek recourse for Defendants'

2   misconduct.  (Marsh Decl. ¶13.)

3        Plaintiff's counsel—the law firms of Arias, Ozzello & Gignac, LLP and

4   Kronenberger Rosenfeld, LLP—have been appointed class counsel in a number of

5   consumer cases and have particular experience in the area of consumer fraud

6   perpetrated through new technology.  (Rosenfeld Decl. ¶¶2-16; Declaration of Mike Arias

7   in Support of Plaintiff's Motion for Class Certification ("Arias Decl.") *passim*.)  Moreover,

8   Plaintiff's counsel has vigorously prosecuted this action for 2½ years, successfully

9   opposing several motions to dismiss brought by multiple defendants.  (Rosenfeld Decl.

10  ¶¶13-16.)  Given Plaintiff's counsel's vigorous litigation of this case to date, and given their

11  record as serving as class counsel, the Court should find that Plaintiff's counsel will

12  adequately represent the Class.

**E.  Plaintiff has satisfied Rule 23(b)(3) by showing that common issues of fact and
13      law predominate and that litigating this case as a class action would be the
14      superior method for resolving Class members' claims.**

15       In addition to meeting the prerequisites of Rule 23(a), Plaintiff must also satisfy

16  one of the three requirements of Rule 23(b) to certify the proposed class.  *Zinser v.*

17  *Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 *opinion amended on denial of reh'g*,

18  273 F.3d 1266 (9th Cir. 2001).  Rule 23(b)(3) provides that a class action can be

19  maintained where: (1) the questions of law and fact common to members of the class

20  predominate over any questions affecting only individuals, and (2) the class action

21  mechanism is superior to the other available methods for the fair and efficient

22  adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3); *Pierce v. Cnty. of Orange*, 526

23  F.3d 1190, 1197 n.5 (9th Cir. 2008).  Certification under Rule 23(b)(3) is appropriate and

24  encouraged "whenever the actual interests of the parties can be served best by settling

25  their differences in a single action." *In re Ferrero Litig.*, 278 F.R.D. 552, 559 (S.D. Cal.

26  2011).

27       As one commentator has noted, "[t]his portion of the rule . . . was expected to be

28  particularly helpful in enabling numerous persons who have small claims that might not

15   PLAINTIFF'S NTC OF MTN AND MTN FOR
                                               CLASS CERTIFICATION

be worth litigating in individual actions to combine their resources and bring an action to vindicate their collective rights." 7A Wright, Miller & Kane, *Federal Practice and Procedure* (2d ed. 1986), at 518, § 177). Perhaps, most importantly, the Supreme Court has acknowledged that the requirement of predominance is "readily met" in actions like this one, alleging consumer fraud. *See Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 625 (1997).

> **1. Common questions of law and fact predominate where the ZaaZoom Defendants perpetrated a uniform scam against all Class members.**

Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," which is a "far more demanding" standard than the commonality requirement of Rule 23(a). *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). Nevertheless, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012). Thus, where a common nucleus of facts and potential legal remedies dominate a lawsuit, certification under Rule 23(b)(3) is appropriate. *Hanlon*, 150 F.3d at 1022.

In the context of class actions alleging consumer deception, Rule 23(b)(3) predominance is satisfied where the defendant failed to make any disclosures to any class member. *See, e.g.*, *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 567 (S.D. Cal. 2012) (consumer's claims satisfied predominance requirement in action against heating pad manufacturer for deceptive advertising where none of manufacturer's packaging or labeling contained necessary disclosures).

Here, common questions of fact and law predominate, including:

- Whether the ZaaZoom Defendants made any disclosure that Class members would be enrolled in a Membership Program after they applied for a payday loan.

**PLAINTIFF'S NTC OF MTN AND MTN FOR CLASS CERTIFICATION**

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

- Whether Jack Henry was aware of suspicious circumstances surrounding the Membership Programs when it drafted and deposited the 116,000 ZaaZoom RCCs.

- Whether FNBCT was aware of suspicious circumstances surrounding the Membership Programs when it accepted the 116,000 ZaaZoom RCCs for deposit and settlement.

- Whether Jack Henry's and FNBCT's conduct under these circumstances amounted to negligence under California law.

- Whether Jack Henry's conduct under these circumstances amounted to conversion under California law.

- Whether Jack Henry's conduct under these circumstances amounted to fraudulent, unfair, and/or unlawful business practices prohibited by Business and Professions Code section 17200.

As discussed above, Plaintiff anticipates that Defendants will argue that the Court must make individual inquiries into whether each Class member read the terms of the payday loan website and voluntarily enrolled in a Membership Program. Not so. As alleged in the complaint, this case does not involve a situation where some Class members saw website disclosures and others did not. Rather, the ZaaZoom Defendants enrolled each Class member without making any disclosures. As a result of this uniform scam, each Class member had an RCC wrongfully drafted in his/her name.

Of course, during the merits phase, Defendants can try to prove that the ZaaZoom Defendants made disclosures on their payday loan websites, and that as a result, Class members voluntarily enrolled in the Membership Programs. However, to date, Defendants have not produced any evidence of any voluntary enrollment—not a single customer declaration. In comparison, Plaintiff has submitted evidence of a massive check return rate, countless consumer complaints about the exact same scam, and declarations by Plaintiffs describing this scam.

//

17   **PLAINTIFF'S NTC OF MTN AND MTN FOR CLASS CERTIFICATION**

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

1    Perhaps most significantly, this issue of whether the ZaaZoom Defendants made
2    any disclosures about the Membership Programs can easily be resolved on a class-wide
3    basis.  Specifically, during the merits phase, Plaintiff will conduct a survey of the Class to
4    show that no Class member ever saw any disclosures and that no Class member
5    voluntarily enrolled in a Membership Program.  Plaintiff is confident that such a survey
6    will establish that the Membership Programs were an outright scam as to every Class
7    member.

8    In summary, Plaintiff has alleged that the ZaaZoom Defendants operated a
9    uniform scam as to every Class member.  In light of this common scheme that affected
10   each Class member in the exact same way, common issues of law and fact predominate
11   this action.

12   **2.  California law applies to all of the Class members' claims.**

13   When a plaintiff has asserted California state law claims on behalf of a nationwide
14   class, the choice of law inquiry should be conducted as part of the predominance of law
15   analysis. *See Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 538 (C.D. Cal.
16   2012).  Under California's choice of law rules, the class action proponent bears the initial
17   burden to show that California has significant contact or significant aggregation of
18   contacts to the claims of each class member. *Mazza,* 666 F.3d at 589. Once the class
19   action proponent makes this showing, the burden shifts to the other side to demonstrate
20   that foreign law, rather than California law, should apply to class claims. *See id.*

21   Here, California has significant contacts to the claims of each Class member.
22   Most significantly, the ZaaZoom Defendants' websites were hosted and operated from
23   California.  (Rosenfeld Decl. ¶58 & Ex. 40.)  Moreover, Defendant Jack Henry, which
24   drafted and deposited each Class member's RCC, is registered to conduct business in
25   California and maintains an office in San Diego, California where it conducts certain
26   banking operations.  (Rosenfeld Decl. ¶¶55-57 & Exs. 37-39.)  Because each Class
27   member: a) applied for a payday loan using a website hosted in California, b) was
28   involuntarily enrolled in an online coupon program that was hosted in California, and c)

KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

1    had a check written in its name by a California-registered business with offices in

2    California, each Class member's claim has a significant contact with California.[3]

3        **3. A class action is the superior method for adjudicating Class members'**
         **claims because the claims are small individually but large in the**
4        **aggregate.**

5        This class action is superior to any other method available to adjudicate the Class

6    members' claims.  The purposes of the superiority requirement are to promote judicial

7    economy and to assure that a class action will further the "most efficient and effective

8    means of resolving the controversy."  *Wolin*, 617 F.3d at 1175-76.  This determination

9    involves a comparative evaluation of alternative mechanisms of dispute resolution.

10   *Hanlon*, 150 F.3d at 1023.  In particular, "[w]here recovery on an individual basis would

11   be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of

12   class certification." *Wolin*, 617 F.3d. at 1175; *see Hanlon*, 150 F.3d at 1023.

13       Courts have found that a class action is the superior method for addressing claims

14   where the potential recovery for each class member is too small to support individual

15   suits, but injury is substantial in the aggregate.  *Holloway v. Full Spectrum Lending*, CV

16   06-5975 DOC RNBX, 2007 WL 7698843 at *9 (C.D. Cal. June 26, 2007) (citing *Murray v.*

17   *GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006)).  The alternative would "not only

18   unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs."

19   *Hanlon,* 150 F.3d at 1023.

20       This case is well-suited for class treatment because the claims of Plaintiff and the

21   other Class members arise from the same set of facts and involve the same type of

22   _____

23   [3] In the operative complaint, Plaintiff alleged a California subclass for her claims under
     Business and Professions Code section 17200.  However, given the aggregation of
24   California contacts, and given the outright fraudulent nature of Defendants' misconduct
     that would be condemned by any State, Plaintiff has satisfied the test set forth in *Mazza*
25   to bring her UCL claims on behalf of the nationwide Class.  *See Keegan*, 284 F.R.D. at
     542 (finding that where class action alleged that no disclosures were made to any class
26   members, differences in state laws did not undermine predominance); *see also In re*
     *iPhone 4S Consumer Litig.*, C 12-1127 CW, 2013 WL 3829653 (N.D. Cal. July 23, 2013)
27   (finding that California's choice-of-law analysis must be conducted on a case-by-case
     basis because it requires analyzing various state laws under the circumstances of the
28   particular case).

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

injury. In addition, absent a class action, most Class members would find the cost of litigating their claims—the largest of which is likely for a few hundred dollars—to be prohibitive and such multiple individual actions would be judicially inefficient. "The realistic alternative to a class action is not [116,000] individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). Were this case not to proceed on a class-wide basis, it is unlikely that any Class members would be able to obtain redress, or that Defendants would willingly refund their ill-gotten gains. This fact is evidenced by the lack of any other consumer lawsuits against Defendants based on similar claims despite the numerous complaints about Defendants' conduct.

In summary, the common set of facts, the large number of Class members, and the small amount of damages incurred by each Class member demonstrate that a class action is the superior way to resolve this dispute.

## F. The Court should appoint Plaintiffs' counsel as Class counsel.

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

The proposed Class counsel have diligently investigated Plaintiff's claims and have devoted, and will continue to devote, time and resources to this litigation. As discussed above, proposed Class counsel have experience with similar class action litigation and have been appointed class counsel in analogous consumer class actions. (Arias Decl. *passim*; Rosenfeld Decl. ¶¶2-16.) The proposed Class counsel also have significant experience in the areas of consumer fraud perpetrated through new technology. (Arias Decl *passim*; Rosenfeld Decl. ¶¶2-16.) Finally, proposed Class

KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

1  counsel have already devoted more than 2½ years to litigating this case and discovering

2  the complex set of facts and parties involved in the misconduct.

3      Accordingly, the Court should appoint Plaintiff's counsel Kronenberger Rosenfeld,

4  LLP and Arias Ozello Gignac LLP to serve as counsel for the proposed Class pursuant to

5  Rule 23(g).

6                              **CONCLUSION**

7      For the reasons discussed above, Plaintiff Amber Kristi Marsh respectfully

8  requests that the Court enter an order certifying the proposed Class pursuant to Rule

9  23(b)(3), appointing Plaintiff's counsel as Class counsel, and awarding such additional

10 relief as the Court deems reasonable and just.  Upon certification of the Class, Plaintiff

11 will submit a proposed notice plan.

12

13 Respectfully Submitted,

14 DATED:  December 27, 2013          **KRONENBERGER ROSENFELD, LLP**

15

16                                    By:  ___s/ Jeffrey M. Rosenfeld_____

17                                            Jeffrey M. Rosenfeld

18                                    Attorneys for Plaintiffs AMBER KRISTI
                                      MARSH AND STACIE EVANS
19

20

21

22

23

24

25

26

27

28

<div style="writing-mode:vertical">KRONENBERGER ROSENFELD</div>

<div style="writing-mode:vertical">150 Post Street, Suite 520, San Francisco, CA 94108</div>

