United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBER KRISTI MARSH, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>FIRST BANK OF DELAWARE, et al.,<br><br>　　　　Defendants. | Case No. 11-cv-05226-WHO<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL AND DENYING DEFENDANTS JACK HENRY & ASSOCIATES AND FIRST NATIONAL BANK OF CENTRAL TEXAS'S MOTION TO STRIKE CLASS ALLEGATIONS**<br><br>Re:  Dkt. Nos. 208, 214 |

Plaintiff Amber Kristi Marsh moves that the Court certify under Federal Rule of Civil Procedure 23 a nationwide class and a California class of all individuals injured through the use of remotely created checks ("RCC") drafted by defendant Jack Henry & Associates, Inc. ("Jack Henry"), and deposited with defendant First National Bank of Central Texas ("FNBCT").  Marsh also seeks to be appointed as class representative and to have her attorneys appointed as class counsel.

Jack Henry and FNBCT move that the Court strike the class allegations.

For the reasons below, the motion to certify is GRANTED IN PART and DENIED IN PART.  The motion to strike is DENIED AS MOOT.

## BACKGROUND

Marsh and plaintiff Stacie Evans[1] allege the following:

Defendants ZaaZoom Solutions, LLC, Zaza Pay LLC, MultiECom, LLC, and Online Resource Center, LLC (collectively, the "Zaazoom Defendants"), "lured" people into applying for

---

[1] Evans does not bring this motion.

1   payday loans on Internet websites, after which they take the information from the payday loan

2   applications—including the applicants' banking information—to enroll the applicants in online

3   coupon membership programs.  Third Amended Complaint ("TAC") ¶ 1.  The coupon programs

4   charged a monthly membership fee, for which members could download coupons from the

5   programs' websites, which could be redeemed with various merchants.  TAC ¶¶ 57-59.  Without

6   disclosing that they were doing so and without the applicants' knowledge or consent, the

7   ZaaZoom Defendants created RCCs in the applicants' names, which drew from the applicants'

8   bank accounts to pay for the coupon programs.  TAC ¶ 1.

9        A brief explanation of checks and RCCs is warranted.  A typical check is a draft drawn on

10  a bank, payable on demand, and which is signed by the drawer.  The drawer is the person who

11  writes the check; the payee is the person to whom the check is made payable; and the drawee or

12  payor bank is the bank with which the drawer has a checking account and from which the check is

13  paid.  A check is an order to the drawee bank to pay the amount on the face of the check to the

14  payee.  Motion for Class Certification ("MFCC") Br. 2.

15       Upon receiving a check, the payee typically signs the back of the check and deposits the

16  check at his or her own bank, the depository bank.  The depository bank then credits the check to

17  the payee's account and sends the check through a check clearing system to the drawee bank for

18  payment from the drawer's account through a process called settlement.  MFCC Br. 3.

19       Checks are typically written by the drawer.  In contrast, an RCC looks like a traditional

20  check, but is created by a third party under the authority of the drawer to charge the drawer's bank

21  account.  MFCC Br. 3.  For that reason, an RCC does not bear the drawer's signature as a

22  traditional check does.  An RCC allows for transactions such as automatic billing.

23       Like traditional checks, after evaluating the authenticity of the RCC, the payee's bank (also

24  the depository bank) sends the RCC to the drawee bank for settlement.  If the drawee bank accepts

25  the check, it will transfer funds to the drawee bank for settlement.  The drawee bank will then

26  deposit those funds into the payee's account.  MFCC Br. 3.  If an RCC is not honored by the payor

27  bank, the check is "returned."  Checks may be returned for any number of reasons, e.g., if the

28  drawer account has insufficient funds or if the check is a forgery.  MFCC Br. 4-5.

United States District Court
Northern District of California

2

The ZaaZoom Defendants worked with defendants Jack Henry, Data Processing Systems, LLC ("DPS"), and Automated Electronic Checking, Inc. (collectively, the "Processors"), who collectively worked as payment processors, to draft the checks.  TAC ¶ 2.  Defendants FNBCT and First Bank of Delaware ("FBD") (collectively, the "Depository Banks") collectively worked to deposit and settle the checks.  *See* TAC ¶ 2.  The Processors and Depository Banks ignored suspicious signs of potential wrongdoing, such as the fact that the ZaaZoom Defendants' checks had a return rate over 100 times the national average.  TAC ¶¶ 72-73.

While a person can voluntarily enroll in a coupon membership program by entering his or her contact and financial information onto the program's website, the plaintiffs allege that they were unknowingly and involuntarily enrolled in membership programs in conjunction with applications they made for payday loans.  MFCC Br. 5-6; Evans Decl. ¶ 9; Marsh Decl. ¶ 9.  The plaintiffs had to enter their checking account numbers and bank routing numbers when applying for the loans.  MFCC Br. 6; Evans Decl. ¶ 5; Marsh Decl. ¶ 5.  The ZaaZoom Defendants then enrolled the plaintiffs without their knowledge in a coupon membership program using the information the plaintiffs provided in their payday loan application.  MFCC 6.  The information was given to a processor, such as Jack Henry, which drafted RCCs from the plaintiffs' checking accounts payable to the ZaaZoom Defendants.  MFCC 6.  The Processors would then deposit the RCC into an account with the Depository Banks.  In the case of Jack Henry, Jack Henry would deposit the RCCs into its bank account at FNBCT.  MFCC 6 (citing Rosenfeld Decl. ¶¶ 37-38, Exs. 20-21).  If a loan applicant's account had enough money, a membership fee was withdrawn to pay for the coupon program; if the account did not have enough money, the RCC was returned, but the account holder is often charged a bank account fee for insufficient funds.  MFCC 6.

Jack Henry is a Delaware corporation based in Monett, Missouri.  TAC ¶ 31.  Around November 2010, Jack Henry began serving as a Processor for the ZaaZoom Defendants, creating and depositing RCCs payable to the ZaaZoom Defendants.  TAC ¶¶ 100-102.  Jack Henry drafted and deposited the RCCs into an account at FNBCT in Jack Henry's name.  TAC ¶ 104.  Jack Henry deposited over 116,000 RCCs as a Processor for the ZaaZoom Defendants, of which at least 61,000 were returned as not payable, resulting in a return rate of more than 53 percent.  TAC ¶¶

110-111.  There were numerous publicly available warnings and complaints about the ZaaZoom

Defendants and their membership programs, about which Jack Henry allegedly knew.  MFCC 7.

Because Jack Henry received $0.045 for each RCC it processed and an additional $0.50 for each

RCC that was returned as unauthorized, however, it had a financial incentive to continue to assist

the ZaaZoom Defendants' scheme and to ignore the warning signs.  MFCC 8 (citing Rosenfeld

Decl. ¶ 40, Ex. 23); TAC ¶ 182.

FNBCT is a Texas corporation based in Waco, Texas.  TAC ¶ 30.  FNBCT served as the

Depository Bank for ZaaZoom RCCs drafted by Jack Henry.  TAC ¶ 177; MFCC Br. 8.  It

accepted the RCCs for deposit, reviewed and authenticated the RCCs, sent them to the drawee

banks, and accepted settled funds.  TAC ¶ 178.  FNBCT knew each time an RCC was returned,

was aware of the excessive return rate, and received complaints from drawee banks.  TAC ¶¶ 181,

183, 197.  Nonetheless, it continued to accept the RCCs from the ZaaZoom Defendants because it

received a fee for each returned check.  TAC ¶ 182.

On January 26, 2011, plaintiff Marsh, without consenting to joining any membership

program, was enrolled in one after she applied for a payday loan online, and has had membership

fees withdrawn from her bank account.  MFCC 7; Marsh Decl. ¶¶ 9-10.  Jack Henry or DPS

created an RCC from her checking account payable to one of the ZaaZoom Defendants'

membership programs.  TAC ¶ 211.  The RCC was then deposited into an account at FNBCT held

in Jack Henry's name.  TAC ¶ 212.

The ZaaZoom Defendants never actually had a depository account with FNBCT.  The

RCCs were payable to the ZaaZoom Defendants, but none of the ZaaZoom Defendants endorsed

the RCCs.  The RCCs simply stated "Authorization On File."  MFCC 8 (citing Rosenfeld Decl.

¶ 37, Ex. 20).  The RCCs also had "astronomically" high check numbers—plaintiff Marsh's RCC

was check number 1,261,849—higher than the number of checks any actual person would issue.

TAC ¶ 193.  These facts, the plaintiffs allege, should have alerted the defendants to potential

wrongdoing.  Numerous other individuals have also complained about the ZaaZoom Defendants

and their scam.  MFCC 9-10.

United States District Court
Northern District of California

4

**PROCEDURAL HISTORY**

The plaintiffs filed their TAC on April 10, 2012.  Dkt. No. 100.  The defendants filed separate motions to dismiss the TAC.  Dkt. Nos. 106, 107, 111, 115.  Judge Yvonne Gonzales Rogers granted in part and denied in part the motions to dismiss.  Dkt. No. 132.  The following causes of action remain against Jack Henry:  Second Cause of Action under the "unlawful" prong of the UCL on behalf of a California class; Fourth Cause of Action under the "fraudulent" prong of the UCL on behalf of a California class; Sixth Cause of Action under the "unfair" prong of the UCL on behalf of a California class; Seventh Cause of Action for conversion on behalf of a nationwide class; and Ninth Cause of Action for negligence on behalf of a nationwide class.  Only the Tenth Cause of Action for negligence on behalf of a nationwide class remains against FNBCT.

On December 2, 2013, the Court entered default judgment against defendants Zaazoom Solutions, LLC, Zaza Pay LLC, MultiEcom, LLC, Online Resource Center, LLC, and Automated Electronic Checking, Inc., because they were unrepresented by counsel before the Court as required by Civil Local Rule 3-9(b) and did not respond to an order to show cause why default should not be entered for being unrepresented.  Dkt. No. 195.

On December 11, 2013, Evans filed an Unopposed Motion for Preliminary Approval of Class Action Settlement with FBD.  Dkt. No. 197.  The Court preliminarily approved the settlement on January 22, 2013.  Dkt. No. 253.  The final approval hearing is currently set for June 25, 2014.

On November 21, 2013, pursuant to an order by Judge Gonzales Rogers, the defendants sought leave to file a motion to strike class allegations.  Dkt. No. 193.  No opposition was filed, so the Court granted leave on December 3, 2013.  Dkt. No. 196.  The defendants filed their Motion to Strike Class Allegations on December 13, 2013.  Dkt. No. 208.

On December 27, 2013, Plaintiff Marsh filed this Motion for Class Certification and for Appointment of Class Counsel.  Dkt. No. 214.  She seeks to certify the following class under Federal Rules of Civil Procedure 23(a) and 23(b)(3):  "All individuals from whom Membership Fees were collected (or who incurred Bank Account Fees in connection with a collection or attempted collection of Membership Fees) by way of remotely created check(s) drafted by

United States District Court
Northern District of California

1    Defendant Jack Henry & Associates, Inc. and deposited with First National Bank of Central

2    Texas, from May 6, 2007 to the date of the preliminary approval order."  Jack Henry and FNBCT

3    (hereinafter "defendants") oppose the motion.  Dkt. No. 227.  The Court held a hearing on

4    February 5, 2014.  Dkt. No. 263.

5                                       **LEGAL STANDARD**

6           Federal Rule of Civil Procedure 23 governs class actions.  "Before certifying a class, the

7    trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification

8    has met the prerequisites of Rule 23."  *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588

9    (9th Cir. 2012).  The party seeking certification bears the burden of showing that Rule 23 has been

10   met.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Conn. Ret. Plans & Trust*

11   *Funds v. Amgen Inc.*, 660 F.3d 1170, 1175 (9th Cir. 2011), *aff'd*, 133 S. Ct. 1184 (2013).  Rule

12   23(a) requires that plaintiffs demonstrate numerosity, commonality, typicality and adequacy of

13   representation in order to maintain a class action.  *Mazza*, 666 F.3d at 588.

14          Rule 23(a) states:  "One or more members of a class may sue or be sued as representative

15   parties on behalf of all members only if:

16          (1) the class is so numerous that joinder of all members is impracticable;

17          (2) there are questions of law or fact common to the class;

18          (3) the claims or defenses of the representative parties are typical of the claims or defenses

19   of the class; and

20          (4) the representative parties will fairly and adequately protect the interests of the class."

21   FED. R. CIV. P. 23(a).  Rule 23(b) continues, "A class action may be maintained if Rule 23(a) is

22   satisfied and if" one of three provisions are met.  FED. R. CIV. P. 23(b).  Subpart (b)(3), the only

23   provision relevant here, states that a class action may be maintained if "the court finds that the

24   questions of law or fact common to class members predominate over any questions affecting only

25   individual members, and that a class action is superior to other available methods for fairly and

26   efficiently adjudicating the controversy.  The matters pertinent to these findings include:

27          (A) the class members' interests in individually controlling the prosecution or defense of

28              separate actions;

United States District Court
Northern District of California

6

1    (B) the extent and nature of any litigation concerning the controversy already begun by or

2    against class members;

3    (C) the desirability or undesirability of concentrating the litigation of the claims in the

4    particular forum; and

5    (D) the likely difficulties in managing a class action."

6    FED. R. CIV. P. 23(b)(3).

7    While the substantive allegations of the complaint must be accepted as true, issues going to

8    class certification itself are not treated similarly.  *Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579,

9    585 (S.D. Cal. 2010); *Hanni v. Am. Airlines, Inc.*, No. 08-cv-732-CW, 2010 WL 289297, at *8

10   (N.D. Cal. Jan. 15, 2010); *see also Jordan v. Paul Fin., LLC*, 285 F.R.D. 435, 447 (N.D. Cal.

11   2012) (Illston, J.) ("The Court is obliged to accept as true the substantive allegations made in the

12   complaint.").  "Neither the possibility that a plaintiff will be unable to prove his allegations, nor

13   the possibility that the later course of the suit might unforeseeably prove the original decision to

14   certify the class wrong, is a basis for declining to certify a class which apparently satisfies Rule

15   23."  *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l*

16   *Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010) (citation and

17   brackets omitted).  "[A] district court retains the flexibility to address problems with a certified

18   class as they arise, including the ability to decertify."  *Id.*

19                                          **DISCUSSION**

20   Marsh has carried her burden of meeting the requisites for certification of a class of

21   California residents with regard to each remaining cause of action.  However, she has not

22   established that the negligence and conversion claims meet the predominance requirement under

23   Rule 23(b)(3), which would allow for certification of a nationwide class.  As explained below, the

24   Order grants the motion for certification but only for a California, not nationwide, class.

25   **I.       THE CLASS IS ASCERTAINABLE.**

26   "Although there is no explicit requirement concerning the class definition in FRCP 23,

27   courts have held that the class must be adequately defined and clearly ascertainable before a class

28   action may proceed."  *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011) (White, J.)

United States District Court
Northern District of California

7

United States District Court
Northern District of California

1   (citation omitted); *Pecover v. Elec. Arts Inc.*, No. 08-cv-2820-VRW, 2010 WL 8742757, at *8

2   (N.D. Cal. Dec. 21, 2010).  "A class is ascertainable if it identifies a group of unnamed plaintiffs

3   by describing a set of common characteristics sufficient to allow a member of that group to

4   identify himself or herself as having a right to recover based on the description."  *Hanni*, 2010 WL

5   289297, at *9 (citation omitted).  In other words, "[a]n identifiable class exists if its members can

6   be ascertained by reference to objective criteria."  *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D.

7   666, 672 (N.D. Cal. 2011) (Henderson, J.) (citation omitted).

8           The proposed class is ascertainable.  Neither party independently addresses this element in

9   their briefs on class certification.  (Marsh discusses this element as part of her numerosity

10  argument.)  The proposed class, however, is simply defined as all individuals who incurred either

11  membership or bank fees through an RCC drafted by Jack Henry and deposited with FNBCT since

12  May 6, 2007.  The Court must assess whether it is "administratively feasible to determine whether

13  a particular person is a class member," and here, Marsh represents that "Defendants have produced

14  records of all RCCs that were drawn—or attempted to be drawn—in Class members' names."

15  MFCC Br. 12 (citing Rosenfeld Decl. ¶¶ 28-30, 37, Exs. 12-13, 20).  These records "identify

16  which Class members had Membership Fees withdrawn from their accounts and which Class

17  members had the RCCs returned for insufficient funds and thus incurred Bank Account Fees."

18  MFCC Br. 12 (citing Rosenfeld Decl. ¶¶ 28-29, Exs. 12-13).  The RCCs created by Jack Henry

19  were then deposited with FNBCT.  TAC ¶¶ 116, 189.  Such information renders the proposed

20  class "sufficiently precise, objective and presently ascertainable."  *Wolph*, 272 F.R.D. at 483

21  (citation and quotation marks omitted).

22  **II.       RULE 23(a) IS SATISFIED.**

23          **A.  The Class Meets The Numerosity Requirement.**

24          Marsh claims that there are approximately 116,000 class members and that this meets the

25  numerosity requirement.  MFCC Br. 11-12.  The defendants provide no argument on this issue.

26          "Courts have certified classes with far fewer members."  *Immigrant Assistance Project of*

27  *L.A. Cnty. Fed'n of Labor (AFL-CIO) v. I.N.S.*, 306 F.3d 842, 869 (9th Cir. 2002) (affirming class

28  of 11,000 and noting that courts have certified classes with far fewer than 100 members).  "As a

1   general rule, classes numbering greater than 41 individuals satisfy the numerosity requirement."

2   *Davis v. Astrue*, 250 F.R.D. 476, 485 (N.D. Cal. 2008).  Marsh has satisfied her burden here.

3       **B.   The Class Meets The Commonality Requirement.**

4       "Commonality requires that the class members' claims depend upon a common contention

5   such that determination of its truth or falsity will resolve an issue that is central to the validity of

6   each claim in one stroke."  *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013)

7   (citation and quotation marks omitted).  "Rule 23(a)(2) has been construed permissively."  *Hanlon*

8   *v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  "[T]he key inquiry is not whether the

9   plaintiffs have raised common questions . . . but rather, whether class treatment will 'generate

10  common *answers* apt to drive the resolution of the litigation.'"  *Abdullah*, 731 F.3d at 957 (quoting

11  *Wal-Mart*, 131 S.Ct. at 2551).  "This does not, however, mean that every question of law or fact

12  must be common to the class; all that Rule 23(a)(2) requires is 'a single *significant* question of law

13  or fact.'"  *Abdullah*, 731 F.3d at 957 (quoting *Mazza*, 666 F.3d at 589).

14      Marsh argues that if she is able to prove that the ZaaZoom Defendants enrolled all of the

15  proposed class members in coupon programs without their consent after they applied for payday

16  loans online, as alleged in the TAC, then she "will resolve an issue that is central to the validity of

17  each claim."  MFCC 12-13.  Marsh maintains that there is no need to individually inquire whether

18  each proposed class member was involuntarily enrolled in a coupon program because, for

19  purposes of class certification, the Court must accept the TAC's allegations as true, and the TAC

20  asserts that *all* proposed class members were enrolled without their knowledge or consent.  MFCC

21  13.  She alleges that the ZaaZoom defendants "*never* disclosed that [the proposed class members]

22  were enrolling in an online coupon program"—it is not merely that the class members failed to

23  read any disclosures or misunderstood them.  MFCC Reply 2.  "[N]o Class member voluntarily

24  enrolled in a Membership Program," and Jack Henry and FNBCT are alleged to have handled all

25  the ZaaZoom RCCs in the same way.  MFCC Br. 4, 13.

26      The defendants argue that each proposed class member's claim hinges on individual facts.

27  They say that "[n]o individuals fall within the defined class, as payday loan customers were

28  required to affirmatively check a box to enroll themselves in the discount coupon clubs, thereby

United States District Court
Northern District of California

consenting to the terms." MFCC Opp'n 6.  They assert,

> In order to assess liability, at a minimum, inquiry must be made into each plaintiffs (1) state of residency, (2) location at the time the subject transactions occurred, (3) date(s) of the subject transactions, (4) understanding, or lack thereof, that s/he was signing up for this program, (5) understanding, or lack thereof, of the terms of the program, (6) what website s/he was using at the time of enrollment, (7) what representations were made on that specific website, (8) whether s/he had to re-input her/his bank account information in compliance with ROSCA, (9) whether s/he recalls affirmatively opting-in to the coupon program, (10) whether s/he made use of the coupon service, (11) whether s/he received one or more confirming emails, (12) whether an RCC was created, (13) if an RCC was created, whether it was rejected, (14) whether a refund was requested, and (15) whether a refund was provided.

MFCC Opp'n 6-7.

The defendants contend that residency information and the location of the transaction is necessary for each proposed class member because those facts are essential to determining which laws apply to each member's claims.  In addition, the defendants argue that the date of the transaction is necessary to determine whether the federal "Restore Online Shoppers Confidence Act" ("ROSCA"), passed by Congress on December 29, 2010, applies.  According to the defendants, ROSCA restricted the practice of "negative option" contracts, e.g., online options that were "pre-checked" and which a consumer had to uncheck in order to avoid enrolling in some program.  MFCC Opp'n 3.  They argue that Evans, who subscribed to the coupon service on October 25, 2010, would not be covered by ROSCA, whereas Marsh, who subscribed to the coupon service on January 17, 2011, would be covered by ROSCA.  MFCC Opp'n 7.

The defendants dispute that all proposed class members were enrolled in the coupon programs without their consent.  MFCC Opp'n 10-11.  Rather, users "were asked to affirmatively check a box on the payday loan websites if they would like to enroll in a coupon club, as evidenced by the screen shots provided in Plaintiffs' papers."  MFCC Opp'n 11.  The defendants assert that commonality cannot be established because "the Court will be required to assess whether each class member consented to enrollment in the coupon services."  MFCC Opp'n 11.  They further argue that each proposed class member would have to be individually analyzed to assess whether they understood that they were being signed up for a coupon service "by checking the box" and what the member intended.  Individual analyses will have to be conducted to see

"whether an RCC was created, whether that RCC was authorized . . . whether the RCC was rejected, whether a refund was requested, and whether a refund was provided."  MFCC Opp'n 7.

Further, the defendants point out that proposed class members "may have different causes of action based on the manner in which they were enrolled in the coupon clubs and the terms of the coupon services in which they were enrolled."  MFCC Opp'n 11.  They note that there were multiple payday loan websites through which the ZaaZoom Defendants provided online coupon services, each with different terms of service.  MFCC Opp'n 11.  According to the defendants, individual factors will therefore exceed any commonality.

The defendants' arguments miss the mark.  While they dispute the merits of the TAC's claims, on a motion for class certification "[t]he court is bound to take the substantive allegations of the complaint as true." *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975).  Accepting the plaintiffs' legal theory as true renders irrelevant most, if not all, of the 15 issues about which the defendants say the Court must "at a minimum" inquire.  For example, the issue of "whether an RCC was created" for a particular proposed class member does not defeat commonality because the Court must, consistent with the TAC, accept as true the allegation that Jack Henry drafted an RCC for every proposed class member without his or her consent.  Similarly, the issue of what representations were made to a proposed class member and what his or her understanding of those representations was does not eliminate commonality because the TAC claims that *no* disclosures concerning the coupon programs were made to the proposed class members.  MFCC Br. 17.  Even if it is true that different coupon programs have different terms, the Court and the jury will still have to determine at the merits stage whether each program failed to disclose that it would enroll the proposed class members—this is a common issue of fact.

Marsh has carried her burden of establishing commonality.  As the Ninth Circuit has said, "The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3)" and are "construed permissively." *Hanlon*, 150 F.3d at 1019. Marsh must only show "a single *significant* question of law or fact" common to the class. *Abdullah*, 731 F.3d at 957.  Under the TAC's theory of harm, no class member voluntarily enrolled in a coupon program.  MFCC Br. 13.  In particular, Jack Henry and FNBCT facilitated

11

1    this "scam" by "drafting, depositing, and settling the RCCs without regard to warning signs" of

2    wrongdoing.  MFCC Br. 13.  The defendants are accused of the same wrongdoing vis-à-vis all

3    proposed class members.  Among other issues to be resolved, questions common to all the

4    proposed class members raised by Marsh's theory of harm include:  whether the defendants knew

5    or should have known of the alleged wrongdoing by the ZaaZoom Defendants but ignored it;

6    whether Jack Henry in fact created RCCs without authorization; whether the check return rate for

7    the ZaaZoom Defendants' RCCs was unusually high; whether the defendants actions were

8    unlawful, etc.  The answers to any of these questions would certainly "drive the resolution of the

9    litigation."  *Abdullah*, 731 F.3d at 957.

To meet the commonality requirement, all that Marsh needs to show is *a single* common
issue of law or fact among the proposed class members.  Here, there are multiple common issues
of law and fact.

### C.  The Class Meets The Typicality Requirement.[2]

"The purpose of the typicality requirement is to assure that the interest of the named
representative aligns with the interests of the class."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497,
508 (9th Cir. 1992).  "Under the rule's permissive standards, representative claims are 'typical' if
they are reasonably co-extensive with those of absent class members; they need not be
substantially identical."  *Hanlon*, 150 F.3d at 1020.  The test of typicality "is whether other
members have the same or similar injury, whether the action is based on conduct which is not
unique to the named plaintiffs, and whether other class members have been injured by the same
course of conduct."  *Hanon*, 976 F.2d at 508.  Importantly, a class representative is not typical if
he or she is subject to unique defenses.  *Id.*

The defendants argue that Marsh is not typical because she and the proposed class
members enrolled in different programs on different websites.  MFCC Opp'n 13.  They argue that
Marsh "signed up for the Liberty Discount Coupon Club through the Last Chance Cash Advance

---

[2] The defendants argue throughout their brief that Stacie Evans does not meet the requirements for
being a class representative.  *See, e.g.*, MFCC Opp'n 12, 14.  However, only Marsh is seeking to
be appointed class representative.  MFCC Br. 2.

United States District Court
Northern District of California

website" which has different terms of service and costs of enrollment from other websites.  MFCC Opp'n 13.  The defendants cite to *Stearns v. Ticketmaster Corporation*, a case in which "a number of entities [ ] were said to have participated in a deceptive internet scheme," in arguing that Marsh is not typical.  655 F.3d 1013, 1016 (9th Cir. 2011).  They argue that the Ninth Circuit, which the defendants call the "California Appellate Court," "determined that the class representatives were not typical of the proposed class" because one prospective class representative "was not really deceived" into joining a rewards program because he said that he had "accidentally" clicked "Yes" to joining.  MFCC Opp'n 12; *Stearns*, 655 F.3d at 1019.  Another prospective class representative "never saw the site or signed up for the program" himself, though his son did, and therefore he was found not typical either.  *Stearns*, 655 F.3d at 1019.  Here, the defendants argue that Marsh "did consent, by affirmatively checking the box to enroll in the coupon programs.  Therefore, they are not typical of the proposed class."  MFCC Opp'n 13.

Marsh argues that her claims are typical of those of the proposed class.  MFCC 13.  She applied for a payday loan; she did not voluntarily enroll in a coupon program; she was enrolled in a coupon program; Jack Henry drafted an RCC in her name payable to the ZaaZoom Defendants and deposited it with FNBCT; and she suffered damages because membership fees were drawn from her bank account.  MFCC 13.  Marsh argues that the proposed class members "suffered the same injury," i.e., "wrongfully withdrawn Membership Fees and/or Bank Fees."  MFCC Reply 7.  In addition, whatever membership program each proposed class member enrolled in, they were all alleged to have been scammed the same way—it does not matter that the membership programs had different names or terms.  MFCC Reply 7.

Marsh meets the typicality "rule's permissive standards."  *Hanlon*, 150 F.3d at 1020.  Her claims are "reasonably co-extensive" with other class members because they were allegedly injured by similar conduct and suffered similar harm:  they were enrolled in a coupon program without their knowledge, a processor drafted an RCC from their bank accounts, and money withdrawn from their account was transferred to a depository bank or they incurred overdraft fees.  *Id.*  Because "[t]ypicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought," *Ellis v. Costco Wholesale*

13

1  *Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (citation omitted), Marsh has carried her burden here.

2       The defendants make no argument that Marsh is subject to unique defenses sufficient to

3  eliminate her status as a typical class member.  They also fail to show that her claims are not

4  "reasonably co-extensive" with other proposed class members.  While the defendants argue that

5  Marsh "did consent" to joining a coupon program, as discussed earlier, the Court must accept the

6  plaintiffs' argument as true.  In the TAC, the plaintiffs claim that every proposed class member

7  was deceived in the same manner.  Marsh's allegations are in accord with those claims.  *See* TAC

8  ¶¶ 204-212.  She is a typical class member.

9       **D.  The Class Meets The Adequacy Requirement.**

10       "To satisfy constitutional due process concerns, absent class members must be afforded

11  adequate representation before entry of a judgment which binds them."  *Hanlon*, 150 F.3d at 1020.

12  "To determine whether named plaintiffs will adequately represent a class, courts must resolve two

13  questions:  (1) do the named plaintiffs and their counsel have any conflicts of interest with other

14  class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously

15  on behalf of the class?"  *Ellis*, 657 F.3d at 985 (citation and quotation marks omitted).

16       Marsh asserts that she has actively participated with her attorneys in litigating this case for

17  over 2.5 years.  Marsh Decl. ¶ 13.  She states that her attorneys have been appointed class counsel

18  in a number of other consumer cases "and have particular experience in the area of consumer fraud

19  perpetrated through net technology."  MFCC Br. 15 (citing Rosenfeld Decl. ¶¶ 2-16; Arias Decl.

20  *passim*).  Marsh and her attorneys have opposed several motions to dismiss brought by multiple

21  defendants and have vigorously litigated this case to date.  MFCC Br. 15.

22       The defendants argue that Marsh is not an adequate class representative because she

23  "entered a guilty plea to a felony possession of a controlled substance charge" and "a history of

24  drug possession and criminal arrests suggests that Ms. Marsh may not be mentally or physically

25  available to vigorously defend the interests of a class."  MFCC Opp'n 14 (citing Edick Decl. Ex.

26  A).  The defendants also question Marsh's credibility by implying that Marsh lied in her

27  declarations about which websites she used and that her "statements are contradicted by the

28  evidence," and therefore she is unsuitable to be the class representative.  MFCC Opp'n 15.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

A would-be class representative's "credibility may be a relevant consideration with respect to the adequacy analysis." *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) (Chen, J.). "Character attacks made by opponents to a class certification motion and not combined with a showing of a conflict of interest have generally not been sympathetically received in this district," but "it is self-evident that a Court must be concerned with the integrity of individuals it designates as representatives for a large class of plaintiffs." *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 682 (N.D. Cal. 1986) (Lynch, J.). The "most important[ ]" issue remains whether the class representative's "interests are antagonistic to those of the class members." *Id.* at 683. "Only when attacks on the credibility of the representative party are so sharp as to jeopardize the interests of absent class members should such attacks render a putative class representative inadequate." *Harris*, 753 F. Supp. 2d at 1015 (citation omitted). There is "inadequacy only where the representative's credibility is questioned on issues directly relevant to the litigation or there are confirmed examples of dishonesty, such as a criminal conviction for fraud." *Id.*

Marsh has satisfied her burden of showing that she will be an adequate class representative. A guilty plea to a drug charge does not automatically cast doubt on a person's credibility. The defendants have not explained how Marsh's ability to represent the class is undermined by her drug-related plea nor shown that she has any conflict with the interests of the proposed class. The defendants' argument that Marsh "may not be mentally or physically available to vigorously defend the interests of a class" is a wholly unfounded and unwarranted smear. This case has gone on for over two years, but the defendants point to no instance in this litigation in which Marsh failed in her capacity as a plaintiff and would-be class representative.

As discussed above, the Court must accept the TAC's substantive allegations as true for purposes of class certification. Even so, the defendants insist that Marsh's "statements [in her declarations] are contradicted by the evidence," and therefore she is unsuitable to be the class representative. MFCC Opp'n 15. All that the defendants cite to for this assertion are nearly 60 pages of purported screenshots of webpages, none of which show on their face when (or, indeed, even if) they were online. *See, e.g.*, MFCC Opp'n 15 (citing Crandell Decl. Ex. C). No web

15

address is provided for any of them, and the defendants do not explain from where these screenshots came.  There is no evidence that these were the webpages that Marsh or any other proposed class member saw.  The Court cannot credit the defendants' attack on Marsh's credibility.  She is an adequate class representative.

## III.   RULE 23(b)(3)

Marsh seeks to certify the proposed class under Rule 23(b)(3).  A class action may be maintained under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).  Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action."  *Hanlon*, 150 F.3d at 1022 (quoting 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1777 (2d ed. 1986)).  "This inquiry is more searching" than Rule 23(a)'s inquiry.  *Wolph*, 272 F.R.D. at 487.

### A.  Marsh Fails To Show Predominance.

"[T]he predominance requirement is far more demanding" than the commonality requirement of Rule 23(a).  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 624 (1997).  The Rule "presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)."  *Hanlon*, 150 F.3d at 1022.  Unlike the commonality requirement in Rule 23(a), "Rule 23(b)(3) focuses on the relationship between the common and individual issues."  *Id.*  In other words, "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *Id.* (quoting 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1778 (2d ed. 1986)).

### 1.  Due Process is not met for non-California residents.

The TAC alleges that the defendants violated California law.  "All class members in a Rule

16

23(b)(3) action are entitled to due process . . . ." *Hanlon*, 150 F.3d at 1024. "To apply California law to claims by a class of nonresidents without violating due process, the Court must find that California has a significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff class, contacts creating state interests, in order to ensure that the choice of the forum state's law is not arbitrary or unfair." *Keilholtz v. Lennox Hearth Products Inc.*, 268 F.R.D. 330, 339 (N.D. Cal. 2010) (Wilken, C.J.) (internal punctuation omitted) (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985)). As the Supreme Court explained, application of a particular state's laws in a class action requires the "modest restriction[ ]" of that showing before the predominance requirement is met. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985).

"[C]onduct by a defendant within a state that is related to a plaintiff's alleged injuries and is not 'slight and casual' establishes a 'significant aggregation of contacts, creating state interests . . . .'" *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1113 (9th Cir. 2013) (citations omitted). "When considering fairness in this context, an important element is the expectation of the parties." *Shutts*, 472 U.S. at 822. A state "may not abrogate the rights of parties beyond its borders having no relation to anything done or to be done within them." *Id.* (citation omitted). "The focus of the *Shutts* analysis is on both the plaintiffs' and defendant[s'] contacts with the forum state." *Pecover*, 2010 WL 8742757, at *17.

What constitutes a " significant contact" or "significant aggregation of contacts," and what factors should be considered in the "aggregation" remain murky issues. One judge in this district has noted that both the location of the harm and the location of the wrongdoing can be relevant. *See Pecover*, 2010 WL 8742757, at *18. Accordingly, "product liability claims under California law against a fireplace manufacturer" constituted "contacts sufficient for nationwide class certification despite the fact that most of the defendant's fireplaces were sold outside California[ ] [b]ecause 79% of fireplaces were either exclusively or partly manufactured, assembled and packaged inside California." *Id.* (discussing *Keilholtz*, 268 F.R.D. 330). The location of the defendant's headquarters is also a factor, *In re Charles Schwab Corp. Sec. Litig.*, 264 F.R.D. 531, 538 (N.D. Cal. 2009) (Alsup, J.), as well as where the defendant resides or conducts business,

United States District Court
Northern District of California

*Church v. Consol. Freightways*, No. 90-cv-2290-DLJ, 1992 WL 370829, at *6 (N.D. Cal. Sept. 14, 1992). Choice-of-law provisions within a party's contracts, in addition to a state's interest in regulating the conduct of those within its borders, can also matter. *Pecover*, 2010 WL 8742757, at *19.

In *Mazza v. American Honda Motor Company*, the Ninth Circuit found "a constitutionally sufficient aggregation of contacts to the claims of each putative class member . . . because [the defendant's] corporate headquarters, [its agent] that produced the allegedly fraudulent misrepresentations, and one fifth of the proposed class members are located in California." 666 F.3d at 590. In *Sullivan v. Oracle Corporation*, a wage-and-hour case, the Ninth Circuit relied on both the location of defendant's headquarters and the fact that "the decision to classify Plaintiffs as teachers and to deny them overtime pay was made in California" to conclude that the contacts were "clearly sufficient" to apply California law to work performed within California by nonresident employees. 662 F.3d 1265, 1270-71 (9th Cir. 2011). A judge in this district concluded that where 19 percent of a defendant's sales are in California and 76 percent of the defendants' goods were partly manufactured, assembled, or packaged at plants in California, there is "a significant amount of contact" with the state. *Keilholtz*, 268 F.R.D. at 339-40. One federal district court in California held that "maintaining [ ] corporate headquarters in California during the class period and selling approximately 30% of the allegedly misrepresented products in California" amounted to a "significant aggregation of contacts with California" even though the products were produced out-of-state. *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 538 (C.D. Cal. 2011). Another federal district court in California found application of California law to all class members appropriate where "it is likely that more class members reside in California than any other state." *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 598 (C.D. Cal. 2008).

The defendants argue that the mere fact that (1) the ZaaZoom Defendants' websites were operated in California and (2) Jack Henry is registered to conduct business in California and has an office in San Diego is insufficient to apply California law. MFCC Opp'n 10. Marsh has not shown how FNBCT is connected to California, and Jack Henry is a Delaware corporation. MFCC Opp'n 10. Applying California law to a nationwide class is improper because many class

members may not have any connection to California and may want to bring their own suits. MFCC Opp'n 10.

Marsh, on the other hand, contends that applying California law to the proposed nationwide class does not violate due process.  The ZaaZoom Defendants' websites were hosted in California and Jack Henry "is registered to conduct business in California and maintains an office in San Diego . . . ."  MFCC Br. 18 (citing Rosenfeld Decl. ¶¶ 55-58, Exs. 37-39, 40).  Further, at least 5,643 checks out of 61,280 Marsh's counsel reviewed involve a payor in California.  MFCC Reply 8 (citing Tamano Decl. ¶ 5 (Dkt. No. 35)).  "These contacts constitute significant contacts between California and the Class claims."  MFCC Reply 8.

Marsh has not carried her burden of showing that California has "a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair."  *Shutts*, 472 U.S. at 818.  She has not demonstrated that the proposed class members' claims and the parties have enough contacts rising to the levels other courts have found sufficient to meet due process requirements, as discussed above.  The TAC itself concedes that "greater than two thirds of the members of all proposed Plaintiff classes in the aggregate are not citizens of California and no Defendant is a citizen of California."  TAC ¶ 16. None of the defendants are alleged to be incorporated in California or have their principal place of business in California.  TAC ¶¶ 19-33.  Marsh has presented almost no evidence about where the defendants' wrongful conduct occurred, such as where they planned the alleged "scam" or took steps to implement it.  Nor has she presented sufficient evidence about how many California residents were harmed.  Without enough facts to show that the claims here are significantly related to California, due process forbids the application of California law to all the claims.

Marsh's arguments to the contrary are unavailing.  Marsh asserts that "100% of the supposed enrollments in the Membership Programs occurred in California, where the ZaaZoom Defendants' websites were hosted," MFCC Reply 8, but she points to no authority stating that the hosting location of a website is the relevant location for a contacts analysis as opposed to where the harm occurred or where the actual wrongful conduct leading to the harm took place.  She also has presented no evidence that the ZaaZoom defendants knew where the servers hosting their

1   websites were physically located such that they could be fairly said to have expected to be subject

2   to California law.[3]  *See Shutts*, 472 U.S. at 822 ("When considering fairness in this context, an

3   important element is the expectation of the parties.").  Marsh asserts that "a large portion of Jack

4   Henry's check processing occurred in California, where Jack Henry maintains a payment

5   processing office," but provides no evidentiary support for her claim.  MFCC Reply 8.  Nor does

6   she explain what constitutes a "large portion."  A mere branch office with no connection to the

7   challenged conduct is insufficient to bind non-Californians to California law.  While Jack Henry's

8   office in California is a relevant contact, that means little unless there is evidence that a significant

9   amount of the wrongdoing occurred through that office.  And except for the fact that some

10  California residents were harmed, Marsh has presented no evidence linking FNBCT to California.

11          The only other connection to California is Marsh's residence.  Though Marsh's injury was

12  felt in California, it is only a "slight and casual" connection to California that does not

13  "establish[ ] a 'significant aggregation of contacts, creating state interests, such that choice of its

14  law [for all class members' claims] is neither arbitrary nor fundamentally unfair.'"  *AT&T*

15  *Mobility*, 707 F.3d at 1113.  If the defendants' actions are as widespread as the TAC alleges,

16  affecting hundreds of thousands, if not millions, of people across the country, then the

17  proportional harm she felt is insufficient to impose California's laws on up to 49 other states'

18  citizens.  This is especially true since Marsh fails to show that enough Californians were harmed

19  such that applying California law to a nationwide class would not be "arbitrary" or "fundamentally

20  unfair."[4]

21          The cases cited by Marsh in her briefs and by her counsel at the hearing do not help her.  In

22  *Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 550 (W.D. Wash. 2008), a federal court in Washington

23  applied Washington law to a nationwide class action because "Defendant created its allegedly

24  deceptive and unfair marketing scheme in Washington.  Defendant is incorporated, does business,

25

26  _____
    [3] Marsh also has not briefed the issue of whether one defendant's contacts with the forum can be
27  attributed to another defendant without such contacts.
    [4] At the hearing, Marsh's counsel stated that they found some evidence that the ZaaZoom
28  Defendants had some activities in California.  This contention, however, was not discussed in the
    briefs and no citation to such evidence was given.  The Court will not consider it.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  and has its principal headquarters in Washington. . . . Further, Defendant contractually required

2  [entities] participating in the allegedly deceptive or unfair scheme to litigate under Washington

3  law." Such a level of contacts is not present here. In *Keilholtz*, the judge applied California law to

4  a nationwide class action because "the fact that seventy-six percent [of an allegedly defective

5  product] maintained a production connection to California weighs in favor of finding that applying

6  California law to the class claims would not be arbitrary or unfair." 268 F.R.D. at 340. Marsh has

7  not provided similar numbers: assuming the 5,643 California checks out of 61,280 that Marsh's

8  counsel reviewed are a suitable proxy for all the RCCs Jack Henry allegedly drafted and FNBCT

9  allegedly deposited, the proportion of California-based payors would amount to a little over nine

10 percent, which the Court finds to be insufficiently "significant" in light of the lack of other

11 contacts with California weighed against substantial out-of-state interests, such as the fact that *at*

12 *least* 66 percent of proposed class members are outside California, none of the defendants are

13 incorporated or headquartered here, and there is no evidence that the defendants' challenged

14 conduct occurred in California. *See* TAC ¶ 16.

15         Because applying California law to the claims of out-of-state proposed class members

16 would violate due process, other states' laws may apply to those claims. The Ninth Circuit has

17 stated, "Understanding which law will apply before making a predominance determination is

18 important when there are variations in applicable state law." *Zinser v. Accufix Research Inst., Inc.*,

19 253 F.3d 1180, 1189. "Variations in state law do not necessarily preclude a 23(b)(3) action, but

20 class counsel should be prepared to demonstrate the commonality of substantive law applicable to

21 all class members." *Hanlon*, 150 F.3d at 1022 (discussing predominance factor).

22         In *Zinser v. Accufix Research Institute, Inc.*, the court said that because the plaintiff "seeks

23 certification of a nationwide class for which the law of forty-eight states potentially applies, she

24 bears the burden of demonstrating 'a suitable and realistic plan for trial of the class claims.'" 253

25 F.3d at 1189 (citation omitted). The same is true of Marsh here. However, Marsh has not told the

26 Court from which states potential class members are from, how many potential class members are

27 in each state, whether a given state's law may apply to this case, and whether she has "a suitable

28 and realistic plan for trial of the class claims." *Id.* She therefore fails to show that the

United States District Court
Northern District of California

1    predominance element in Rule 23(b)(3) has been met.

2         Citing other cases, the Ninth Circuit recognized that a "district court abused its discretion

3    certifying [a] class because plaintiffs did not show how class trial could be conducted," and a

4    "court cannot rely merely on assurances of counsel that any problems with predominance or

5    superiority can be overcome" because "when more than a few state laws differ, [the] court would

6    be faced with impossible task of instructing jury on relevant law." *Id.* (citations omitted). It may

7    very well be the case that all applicable state laws are nearly identical with California's law on

8    conversion and negligence, but it is Marsh's burden to show this, and she has not done so.[5]

9    Accordingly, the proposed nationwide classes fail.

10        Marsh can still maintain a California subclass. Currently, the TAC only brings the

11   conversion and negligence causes of action on behalf of a nationwide class, but the Court will

12   allow amendment of the complaint so that a California subclass may proceed. In addition, the

13   Ninth Circuit has found it proper for plaintiffs to make a "renewed motion for certification only

14   *after* the plaintiffs created subclasses with proper representatives for each" if there are different

15   classes based on the laws of relevant states. *Id.* (citing *In re Telectronics Pacing Sys., Inc.*, 172

16   F.R.D. 271, 277 (S.D. Ohio 1997)). The Court will also allow a renewed motion for certification

17   if Marsh is able to propose "a suitable and realistic plan for trial of the class claims." *Id.*

18                    **2.   California's law applies to the California class.**

19        "When a federal court sitting in diversity hears state law claims, the conflicts laws of the

20   forum state are used to determine which state's substantive law applies." *Orange Street Partners*

21   *v. Arnold*, 179 F.3d 656, 661 (9th Cir. 1999). "[S]o long as the requisite significant contacts to

22   California exist, a showing that is properly borne by the class action proponent, California may

23   constitutionally require the other side to shoulder the burden of demonstrating that foreign law,

24   rather than California law, should apply to the class claims." *Parkinson*, 258 F.R.D. at 597

25   (quoting *Wash. Mut. Bank, FA v. Super. Ct. of Orange Cnty.*, 24 Cal. 4th 906, 921 (2001)).

26        Marsh argues that California law applies to this case. Therefore, the defendants have the

27   "burden of demonstrating that foreign law, rather than California law, should apply to the class

28   _____

[5] At the hearing, Marsh's counsel noted that there may be some variation in state laws.

claims." *Parkinson*, 258 F.R.D. at 597.  The defendants have made no such argument.  Therefore, California law applies.

**B.  A Class Action Is The Superior Method Of Resolving This Action.**

"Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023.  "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation.  A class action is the superior method for managing litigation if no realistic alternative exists." *Valentino*, 97 F.3d at 1234-35 (citation omitted).

Marsh argues that a class action is the superior method to adjudicate the proposed class members' claims because the cost of individual litigation would be prohibitive given that the damages for any single plaintiff would be small and no more than a few hundred dollars.  MFCC Br. 20.  There are no other actions like this one, suggesting that the cost of litigation outweighs any potential benefit.  MFCC Reply 13.  If this action does not proceed, Marsh insists, the proposed class members would not be able to obtain redress.  A class action would "provide for a streamlined method to resolve this controversy . . . in a single forum."  MFCC Reply 13.

A class action is the "superior" method for resolving this action.  As Marsh has shown, each proposed class members' recovery is likely to be too low for that person to bring an individual action.  *See, e.g.*, *Shutts*, 472 U.S. at 809 (finding that where a case "involves claims averaging about $100 per plaintiff[,] most of the plaintiffs would have no realistic day in court if a class action were not available"); *Wolph*, 272 F.R.D. at 489 (finding that claims up to $600 per class member make it "unfeasible and impracticable for each class member to institute an individual claim for relief, making class treatment more efficient than litigating on an individual basis").  The fact that the named plaintiffs have filed this action in this Court and have litigated it for over two years also weighs in favor of maintaining a class action here.  FED. R. CIV. P.

United States District Court
Northern District of California

23(b)(3)(C).  On the other hand, there is no evidence before the Court of any other private actions against any of the defendants alleging the same misconduct or that any likely class member has an interest in prosecuting a separate action.  FED. R. CIV. P. 23(b)(3)(A)-(B).  Although the defendants argue that class action treatment is not superior because they believe individual questions will predominate, the Court has already rejected this argument.  This action satisfies Rule 23(b)(3)'s superiority requirement.[6]

## IV.     THE MOTION TO APPOINT CLASS COUNSEL IS GRANTED.

Marsh argues that her attorneys should be appointed as class counsel because they have been litigating this case for over two years, have special expertise in consumer fraud cases involving technology, and have been working diligently on this case.  MFCC 20-21.

Rule 23(g) governs the appointment of class counsel.  A court must consider:  (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources that counsel will commit to representing the class."  FED. R. CIV. P. 23(g)(1)(A).  In addition, a court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  FED. R. CIV. P. 23(g)(1)(B).

The Court concludes that Marsh's counsel should be appointed class counsel.  Marsh's counsel brought this action, litigated it for over two years, and has maintained the action through many rounds of motion practice.  There is no evidence before the Court that Marsh's counsel has

---

[6] The defendants argue that there are other methods to remedy the plaintiffs' claims.  Proposed class members "may request re-credits from their banks for unauthorized RCC's.  Their payment banks then may request a charge back from the depository bank, resulting in a credit to the plaintiffs account and full compensation."  MFCC Opp'n 15.  "To bring this class action, and address each complex issue of law and fact to assess each plaintiff's individual claims," the defendants assert, "is a waste of judicial resources when plaintiffs have an alternative, complete remedy."  MFCC Opp'n 15.  Marsh responds that California Commercial Code section 4406 limits a person's time to notify his or her bank of an unauthorized payment to 30 days.  MFCC Reply 12.  Further, each proposed class member would have to individually seek redress from his or her own bank, which would in turn have to seek a refund from the depository banks on a check-by-check basis.  This, Marsh argues, is even more complicated and impractical.  MFCC Reply 13.  The parties have not sufficiently briefed this issue, so the Court does not decide it.  In any event, the superiority of the class action as a method to resolve this matter is evident.

United States District Court
Northern District of California

1    interests which conflict with those of the class or that they cannot vigorously prosecute this case.

2    Rule 23(g)'s factors are met.

3    **V.        THE MOTION TO STRIKE CLASS ALLEGATIONS IS DENIED AS MOOT.**

4            The defendants have filed a Motion to Strike Class Allegations.  Dkt. No. 208.  Rule 12(f)

5    authorizes courts to strike "from any pleading any insufficient defense or any redundant,

6    impertinent, or scandalous matter."  A motion to strike class allegations may be appropriate to

7    dispense with issues well before trial or before discovery is taken.  *See Sanders v. Apple Inc.*, 672

8    F. Supp. 2d 978, 99091 (N.D. Cal. 2009) (Fogel, J.).  "Thus, some courts have struck class

9    allegations where it is clear from the pleadings that class claims cannot be maintained."  *In re*

10   *Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1237 (N.D. Cal. 2012) (Conti, J.).  Generally,

11   "motions to strike class allegations are disfavored because a motion for class certification is a

12   more appropriate vehicle for arguments about class propriety."  *Hibbs-Rines v. Seagate*

13   *Technologies, LLC*, No. 08-cv-5430-SI, 2009 WL 513496, at *3 (N.D. Cal. Mar. 2, 2009).

14   Motions to strike class allegations are more common and aptly brought before discovery has

15   commenced.  *Id.*

16          In light of the Court's ruling on class certification, the defendants' motion to strike class

17   allegations is DENIED AS MOOT.

18                                    **CONCLUSION**

19          Based on the foregoing, the Court CERTIFIES a class defined as follows:  "All individuals

20   from whom, and who were California residents when, Membership Fees were collected (or who

21   incurred Bank Account Fees in connection with a collection or attempted collection of

22   Membership Fees) by way of remotely created check(s) drafted by Defendant Jack Henry &

23   Associates, Inc., and deposited with First National Bank of Central Texas, from May 6, 2007, to

24   the date of the preliminary approval order."

25          Plaintiff Amber Kristi Marsh is APPOINTED Class Representative.

26          Marsh's counsel, Kronenberger Rosenfeld, LLP, and Arias Ozzello & Gignac, LLP, are

27   APPOINTED Class Counsel.

28          If Marsh wishes to proceed with only a California class, within seven days, Marsh shall file

an amended complaint that only modifies the causes of action for convergence and negligence to be on behalf of a California class.  *See Wolph*, 272 F.R.D. at 489 (granting "leave to amend the complaint to conform the class definition to the [court's] modified definition of the class").  The Court will treat the defendants' Answers to the TAC (Dkt. Nos. 136, 137) as the operative answers to any amended complaint.

If Marsh wishes to make a renewed motion for certification of a nationwide class or multiple subclasses, within seven days, Marsh shall so notify the Court through a separate notice. Within 45 days thereafter, Marsh may file an amended motion for class certification that addresses the deficiencies identified in this Order by, among other things, identifying the states of residency for proposed class members, explaining with particularity whether any other state's laws apply and how they relate to California law, and providing "a suitable and realistic plan for trial of the class claims."  *Zinser*, 253 F.3d at 1189.  The Court will then determine whether predominance has been shown for the nationwide class or subclasses.  The motion will be heard in accordance with Civil Local Rule 7.

The Motion to Strike Class Allegations is DENIED AS MOOT.

**IT IS SO ORDERED.**

Dated:  February 7, 2014

WILLIAM H. ORRICK
United States District Judge