**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (CA Bar No. 226112)
Jeffrey M. Rosenfeld (CA Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com

**ARIAS, OZZELLO & GIGNAC, LLP**
Mike Arias (CA Bar No. 115385)
Alfredo Torrijos (CA Bar No. 222458)
6701 Center Drive West, 14th Floor
Los Angeles, California 90045-1558
Telephone: (310) 670-1600
Facsimile:  (310) 670-1231
marias@aogllp.com
atorrijos@aogllp.com

Attorneys for Plaintiffs
AMBER KRISTI MARSH AND STACIE EVANS

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **AMBER KRISTI MARSH** and **STACIE EVANS,** individually and on behalf of a class of similarly situated persons,<br><br>       Plaintiffs,<br><br>   v.<br><br>**ZAAZOOM SOLUTIONS, LLC**, *et al.*,<br><br>       Defendants. | **CLASS ACTION**<br><br>Case No. 3:11-cv-05226-WHO<br><br>**PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT FIRST BANK OF DELAWARE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:        June 25, 2014<br>Time:        2:00 p.m.<br>Courtroom: Ctrm. 2, 17th Floor<br>Before:     The Hon. William H. Orrick |

EAST\72489299.1

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on June 25, 2014, at 2:00 p.m., or as soon thereafter as counsel can be heard, before the Honorable William H. Orrick, in Courtroom 2, 17th Floor, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, 94102, Plaintiff Stacie Evans will and hereby does move for an order:

(1)     Approving the Settlement Agreement and the settlement with Defendant First Bank of Delaware ("FBD") embodied therein as fair, reasonable, adequate, and in the best interests of the class, finding that no valid objections to the settlement and the Settlement Agreement have been made and that the requirements of Due Process have been satisfied;

(2)     Finding that all of the elements of Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure are satisfied, and that this action is properly certified as a class action on behalf of the following persons:

All persons whose banking accounts were drawn on by way of remotely created checks created by or on behalf of the ZaaZoom Defendants and deposited at First Bank of Delaware, or from whom Membership Fees were collected and deposited at First Bank of Delaware, or who incurred Bank Account Fees in connection with a collection or attempted collection of Membership Fees by any instrument deposited at First Bank of Delaware, from May 6, 2007 to January 15, 2014 (the "Class").[1]

(3)     Decreeing that Plaintiff Stacie Evans is certified as the sole representative of the Class, and that Arias Ozzello & Gignac LLP and Kronenberger Rosenfeld, LLP (collectively, "Class Counsel") are appointed as the sole counsel to the Class;

(4)     Finding that Class Counsel and Stacie Evans have fairly and adequately represented the Class with respect to this litigation and the settlement;

---

[1] Capitalized terms in the Class definition and in this notice of motion and the accompany memorandum are defined in the Settlement Agreement between Stacie Evans and FBD, attached as Exhibit 1 to the Declaration of Jeffrey M. Rosenfeld in Support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement with Defendant First Bank of Delaware ("Rosenfeld Decl.").

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

1

(5)     Finding that the Class Notice and settlement administration program established

2    and implemented pursuant to the Settlement Agreement satisfies Rule 23(e) of the Federal Rules

3    of Civil Procedure and the requirements of Due Process; and

4

(6)     Entering a final judgment and order dismissing this action as to Defendant FBD

5    only, awarding attorneys' fees and costs to Class Counsel, and awarding an incentive fee award to

6    Stacie Evans in accordance with the terms of the Settlement Agreement.

7

Plaintiff's motion is based on this notice of motion and motion; the accompanying

8    memorandum in support; the declarations of Mike Arias and Jeffrey M. Rosenfeld in support of

9    this motion, the declarations of Stacie Evans and Eric Robin in support of this motion, as well as

10   the attachments thereto; and all other papers filed and proceedings held in this action.

11
                                            Respectfully Submitted,

12

13   DATED:  March 28, 2014                 **KRONENBERGER ROSENFELD, LLP**

14

15                                          By:  ____s/ Jeffrey M. Rosenfeld_____
                                                      Jeffrey M. Rosenfeld

16

17                                          Attorneys for Plaintiffs

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................................. 1

II.     OVERVIEW OF THE ACTION ..................................................................................... 2

    A.      Factual Allegations .............................................................................................. 2

    B.      Litigation, Discovery, and Settlement Negotiations ............................................ 4

    C.      The United States' Lawsuit Against FBD & FBD's Dissolution .......................... 5

III.    TERMS OF THE SETTLEMENT AGREEMENT .......................................................... 6

    A.      Settlement Class ................................................................................................... 6

    B.      Benefits to the Settlement Class .......................................................................... 7

    C.      Electronic Notice and Claims Process ................................................................. 7

    D.      Attorneys' Fees and Incentive Awards ................................................................ 8

    E.      Proportionality ..................................................................................................... 8

IV.     CLASS NOTICE COMPLIED WITH THE COURT'S PRELIMINARY AP-
    PROVAL ORDER, RULE 23(C) AND (E), AND DUE PROCESS .................................. 9

V.      THE COURT SHOULD CONFIRM ITS CERTIFICATION OF THE SETTLE
    MENT CLASS ............................................................................................................... 10

    A.      The Settlement Class Satisfies the Requirements of Rule 23(a) ........................... 11

        1.      Numerosity ................................................................................................ 11

        2.      Commonality .............................................................................................. 11

        3.      Typicality ................................................................................................... 12

        4.      Adequacy of Representation ...................................................................... 13

    B.      The Settlement Class Should be Certified Pursuant to Rule 23(b)(3) ................... 13

        1.      Predominance ............................................................................................ 14

        2.      Superiority ................................................................................................. 14

VI.     FINAL APPROVAL IS APPROPRIATE BECAUSE THE PROPOSED SET-
    TLEMENT IS "FAIR, ADEQUATE, AND REASONABLE" ......................................... 15

1

**TABLE OF CONTENTS**

(continued)

2

**Page**

3

A.   The Settlement is the Result of Arm's-Length Negotiations ................................ 16

B.   FBD's Financial Condition Weighs In Favor of Final Approval of the Set-
     tlement .................................................................................................................. 17

C.   Continued Litigation Poses Substantial Risks In Establishing FBD's Liabil-
     ity .......................................................................................................................... 19

D.   Class Counsel Performed Sufficient Research and Analysis to Adequately
     Assess the Settlement and to Identify the Strengths and Weaknesses of
     Plaintiff's Claim Against FBD ........................................................................... 21

E.   The Recommendations of Experienced Class Counsel and an Impartial Me-
     diator Heavily Favor Approval of the Settlement ............................................. 22

F.   The Reaction of the Class Supports Approval of the Settlement .......................... 23

G.   There Was No Collusion Between the Parties In Reaching the Settlement .......... 23

VII.   CONCLUSION ......................................................................................................... 25

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

CASES

4

*Amchem Products, Inc. v. Windsor,*

5
    521 U.S. 591 (1997) ..................................................................................................10, 14

6

*Armstrong v. Davis,*
    275 F.3d 849 (9th Cir. 2001) ............................................................................................13

7

8

*Boyd v. Bechtel Corp.,*
    485 F. Supp. 610 (N.D. Cal. 1979) .............................................................................22, 23

9

*Class Plaintiffs v. City of Seattle,*

10
    955 F.2d 1268 (9th Cir. 1992) ...............................................................................15, 16, 19

11

*Comcast Corp. v. Behrend,*
    133 S.Ct. 1426 (2013) .......................................................................................................12

12

13

*County of Suffolk v. Long Island Lighting Co.,*
    907 F.2d 1295 (2d Cir. 1990) ...........................................................................................17

14

*Eisen v. Carlisle & Jacquelin,*

15
    417 U.S. 156 (1974). Notice .............................................................................................9

16

*Ellis v. Naval Air Rework Facility,*
    87 F.R.D. 15 (N.D. Cal. 1980) *aff'd,* 661 F.2d 939 (9th Cir. 1981) .......................................22

17

18

*Estrella v. Freedom Fin. Network,*
    No. No. C 09–03156-SI, 2010 WL 2231790 (N.D. Cal. June 2, 2010)...................................12

19

*Evans v. Jeff D.,*

20
    475 U.S. 717 (1986)..........................................................................................................9

21

*Garner v. State Farm Mut. Auto. Ins. Co.,*
    No. CV 08 1365 CW EMC, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)...........................20

22

*Hanlon v. Chrysler Corp.,*

23
    150 F.3d 1011 (9th Cir. 1998) .......................................................................8, 10, 12, 13, 14

24

*In re Austrian & German Bank Holocaust Litig.,*
    80 F. Supp. 2d 164 (S.D.N.Y. 2000).................................................................................23

25

*In re Bluetooth Headset Prods. Liab. Litig.,*

26
    654 F.3d 935 (9th Cir. 2011) .......................................................................................23, 24

27

*In re Holocaust Victim Assets Litigation,*

28
    105 F. Supp. 2d 139 (E.D.N.Y. 2000) ..........................................................................16, 17

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Lorazepam*,
  205 F.R.D. 369 (D.D.C. 2002)........................................................................16, 21

*In re Mego Financial Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ................................................................................19

*In re Omnivision*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................19

*In re Oracle Securities Litig.*,
  131 F.R.D. 688 (N.D. Cal. 1990)..........................................................................25

*In re Pacific Enterprises Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ............................................................................15, 22

*In re Warner Communications Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986) ...................21

*Laguna v. Coverall N. Am., Inc.*,
  No. 3:09-CV-02131-JM, 2012 WL 607622 (BGS) (S.D. Cal. Feb. 23, 2012) .......19

*Lerwill v. Inflight Motion Pictures, Inc.*,
  582 F.2d 507 (9th Cir. 1978) ................................................................................13

*Linney v. Cellular Alaska Partnership*,
  151 F.3d 1234 (9th Cir. 1998) ..............................................................................16

*Lozano v. AT&T Wireless Services, Inc.*,
  504 F.3d 718 (9th Cir. 2007) ................................................................................12

*Luevano v. Campbell*,
  93 F.R.D. 68 (D.D.C. 1981)..................................................................................21

*M. Berenson Co. v. Faneuil Hall Marketplace*,
  671 F. Supp. 819 (D. Mass. 1987) ........................................................................22

*Marisol v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997).................................................................................13

*Martin v. AmeriPride Servs., Inc.*,
  No. 08CV440-MMA JMA, 2011 WL 2313604 (S.D. Cal. June 9, 2011).............22

*Mendoza v. Tucson Sch. Dist. No. 1*,
  623 F.2d 1338 (9th Cir.1980) .................................................................................9

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ..........................................................................15, 19, 22, 23

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
    238 F.R.D. 482 (C.D. Cal. 2006) ...........................................................................................11

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) .........................................................................15, 16, 17, 20

*Protective Comm. for Indep. Stockholders v. Anderson*,
    390 U.S. 414 (1968).................................................................................................................19

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) .............................................................................................12

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ......................................................................................17, 20

*SFS Check, LLC v. FBD et. al.*,
    No. 2:12-cv-14607 (E.D. Mich.).........................................................................................18

*Shames v. Hertz Corp.*,
    No. 07-CV-2174-MMA-WMC, 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) .................17, 19

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ..............................................................................................24

*Stoetzner v. U.S. Steel Corp.*,
    897 F.2d 115 (3d Cir. 1990).................................................................................................23

*Torrisi v. Tucson Electric Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ........................................................................................15, 16

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998) .............................................................................................12

*White v. Experian Info. Solutions, Inc.*,
    No. SACV 05-1070 DOC (MLGx), 2011 WL 2971836, at *2 (C.D. Cal. July 15, 2011) ........8

*Williams v. Costco Wholesale Corp.*,
    No. 02CV2003 IEG(AJB), 2010 WL 2721452, at *5 (S.D. Cal. July 7, 2010).....................23

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 *opinion amended on denial of reh'g,* 273 F.3d 1266 (9th Cir. 2001).............14

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

**STATUTES**

4

Freedom of Information Act ........................................................................................................21

5

**RULES**

6

Fed. R. Civ. P. 23.................................................................................................................9, 15

7

Fed. R. Civ. P. 23(a) ......................................................................................................10, 11, 12

8

Fed. R. Civ. P. 23(a)(1).............................................................................................................11

9

Fed. R. Civ. P. 23(a)(2).............................................................................................................11

10

11

Fed. R. Civ. P. 23(a)(4).............................................................................................................13

12

Fed. R. Civ. P. 23(b) .................................................................................................................10

13

Fed. R. Civ. P. 23(b)(1).............................................................................................................13

14

Fed. R. Civ. P. 23(b)(2).............................................................................................................13

15

Fed. R. Civ. P. 23(b)(3).................................................................................................10, 11, 13, 14

16

Fed. R. Civ. P. 23(c) ...................................................................................................................9

17

Fed. R. Civ. P. 23(c)(2) ...............................................................................................................9

18

Fed. R. Civ. P. 23(c)(2)(B) ..........................................................................................................9

19

Fed. R. Civ. P. 23(e) .................................................................................................1, 10 , 15

20

**OTHER AUTHORITIES**

21

Manual for Complex Litigation, Third, §30.41, at 236-37 (1995) ...........................................15, 17

22

Wright, A.R. Miller, & M. K. Kane, Federal Practice & Procedure (2d ed. 1986), §1778, p.
    121..................................................................................................................................14

23

24

25

26

27

28

vi

PLAINTIFF'S NOT OF MOT. AND MOT.  FOR
FINAL APPROVAL OF CLASS SETTLEMENT

1    I.    **INTRODUCTION**

2        Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiff Stacie Evans submits this

3    memorandum in support of her motion for final approval of a negotiated class settlement with

4    Defendant First Bank of Delaware ("FBD") only.[2]   The terms of the settlement are set forth in the

5    Settlement Agreement attached as Exhibit 1 to the Declaration of Jeffrey M. Rosenfeld

6    ("Rosenfeld Decl.").  The Settlement Agreement was previously filed with the Court on December

7    11, 2013 in connection with Plaintiff's unopposed motion for preliminary approval.  [D.E. No.

8    198-1 at Ex. 1.]  The Court preliminarily approved the settlement on January 22, 2014.  [D.E. No.

9    253].

10        Plaintiff brought this putative class action on behalf of consumers who, like Plaintiff, were

11   victims of an unlawful Internet scheme perpetrated by Defendants ZaaZoom Solutions, LLC,

12   ZaZa Pay LLC, MultiECom, LLC, Online Resource Center, LLC (the "ZaaZoom Defendants").

13   Plaintiff has alleged that the ZaaZoom Defendants operated online membership programs that

14   claimed to provide participants with coupons, shopping discounts, and/or shopping credits (the

15   "Membership Program(s)").  Plaintiff further alleged that the ZaaZoom Defendants registered

16   Plaintiff and the other Class Members in the Membership Programs without their knowledge or

17   consent.  The ZaaZoom Defendants engaged multiple check processors to create remotely created

18   checks ("RCCs") payable to the ZaaZoom Defendants and to deposit those checks in accounts

19   with Defendant FBD and other depository banks.  Plaintiff has alleged that FBD disregarded signs

20   that the ZaaZoom Defendants were engaging in misconduct while providing material assistance to

21   the ZaaZoom Defendants in operating the Membership Programs.

22        During the course of this litigation, FBD became financially compromised and ceased its

23   operations.  As a result, the principal assets potentially available to FBD to satisfy a judgment or

24   settlement in this action are two wasting insurance policies—one of which is already exhausted

25   and the other of which has no confirmation of coverage.  Recognizing that continued litigation

26   would quickly diminish any remaining funds available to compensate the Class, and faced with

27   _____

28   [2] This memorandum refers to Plaintiff Stacie Evans and FBD collectively as the "Parties," though
     this term does not include any other Defendant in this action.

KRONENBERG ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

the certainty that proceeding through class certification and trial would deplete any remaining insurance coverage, Plaintiff entered into the proposed settlement, which is presently before the Court.

The Settlement Agreement establishes a $527,750 Settlement Fund for the benefit of the Class. (Settlement Agreement at ¶36.)  Importantly, there is no reversion in the settlement—that is, no part of the $527,750 Settlement Fund will return to FBD.  The $527,750 Settlement Fund will be used to pay Settlement Class Members who submit a claim a Cash Payment of up to $60. (Settlement Agreement at ¶¶44-47.)  In short, the settlement provides Class Members with the opportunity to receive a Cash Payment today and thereby avoid the delay, risk and continued depletion of FBD's insurance policies, which would inevitably result from continued litigation.

In summary, the settlement provides substantial monetary benefits to Class Members and it represents the product of diligent efforts by Class Counsel to obtain the best possible result for the Class.  The settlement is fair, adequate, and reasonable, and is the result of extensive, arm's-length negotiations between Class Counsel and counsel for FBD, assisted by an experienced retired judge mediator, all of whom are experienced in class action litigation.  For the reasons set forth herein, and in the accompanying declarations, Plaintiff and Class Counsel respectfully request that the Court grant this motion and finally approve the settlement.

## II.   OVERVIEW OF THE ACTION

### A.   Factual Allegations

The ZaaZoom Defendants marketed and operated several online membership programs that claimed to provide participants with coupons, shopping discounts, and/or shopping credits. (Third Amended Complaint ("TAC") ¶¶57-59.)  The ZaaZoom Defendants charged a monthly subscription fee of up to $49.98 per month to participate in a Membership Program (the "Membership Fee(s)"), though with respect to the RCCs deposited with FBD, most of the Membership Fees were for $19.99 per month or less.  (TAC ¶¶211, 227-30.)  Plaintiff has alleged that the ZaaZoom Defendants registered Plaintiff and the other Class Members in the Membership Programs without their knowledge or consent.  (TAC ¶¶66-67.)  Specifically, Plaintiff has alleged that the ZaaZoom Defendants obtained information regarding Class Members from payday loan

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1   websites that the ZaaZoom Defendants operated.  (TAC ¶¶63-65.)  After a Class Member

2   completed an online application for a payday loan, the ZaaZoom Defendants used the Class

3   Member's personal information to register him/her in the Membership Programs, without the

4   Class Member's knowledge or consent. (TAC ¶¶63-67.)  Next, the ZaaZoom Defendants drafted

5   RCCs from the Class Members' checking accounts payable to the ZaaZoom Defendants, again

6   without the Class Members' knowledge or consent. (TAC ¶69.)  The ZaaZoom Defendants then

7   withdrew, or attempted to withdraw, the Membership Fees from the Class Members' bank

8   accounts using the RCCs.  (TAC ¶¶70-71.)  These attempted withdrawals caused many Class

9   Members to incur penalties or fees from their banks as the result of having insufficient funds in

10  their checking accounts to settle the RCCs ("Bank Account Fees").

11      The ZaaZoom Defendants used check processors to assist with the creation, batching, and

12  depositing of the RCCs.  (TAC ¶69.)  Defendants Jack Henry & Associates, Inc. ("Jack Henry"),

13  Data Processing Systems, LLC ("DPS"), and Automated Electronic Checking, Inc. ("AEC")

14  served as "Processors," which helped create and deposit the RCCs in depository bank accounts

15  with Defendants FBD and First National Bank of Central Texas ("FNBOCT") (collectively, the

16  "Depository Banks").  (TAC ¶¶75-143.)  Plaintiff has alleged that the Processors and the

17  Depository Banks recklessly disregarded the ZaaZoom Defendants' misconduct while providing

18  material assistance to the ZaaZoom Defendants in operating the fraudulent Membership Programs.

19  (TAC ¶¶75-143.)

20      Plaintiff had her banking information wrongfully used by the ZaaZoom Defendants to

21  draft RCCs payable to the ZaaZoom Defendants.  (TAC ¶¶220-37.)  In October 2010, Plaintiff

22  applied online for a payday loan.  (TAC ¶221.)  Plaintiff later discovered that the ZaaZoom

23  Defendants had withdrawn a Membership Fee of $22.99 for the "Discount Web Member"

24  Membership Program and two separate Membership Fees of $12.99 for the "UClip Coupon"

25  Membership Program, all three of which were deposited at FBD.[3]  (TAC ¶228-30.)  Plaintiff has

26  alleged that she did not voluntarily enroll in any of Defendants' Membership Programs and that

27  ---

[3] Plaintiff also discovered that the ZaaZoom Defendants had withdrawn a Membership Fee of
28  $49.98 from her checking account for the "Liberty Discount Club" Membership Program, but this
    RCC was not deposited at FBD.  (See TAC ¶227.)

1  she did not give her informed consent to have the Membership Fees withdrawn.  (TAC ¶¶222-25.)

2  Plaintiff has also alleged that FBD served as the depository bank for the deposit of at least one of

3  the unauthorized RCCs drafted in Plaintiff's name.  (TAC ¶232.)  Finally, Plaintiff has alleged

4  that FBD disregarded warning signs that the ZaaZoom Defendants were operating fraudulent

5  Membership Programs when they accepted the RCCs for deposit.  (TAC ¶236.)

6      FBD disputes these allegations, denies all wrongdoing, and contends that all participants in

7  the Membership Programs enrolled voluntarily and agreed to the terms and conditions of the

8  Membership Programs, including the use of RCCs for withdrawal of the Membership Fees.

9      **B.    Litigation, Discovery, and Settlement Negotiations**

10     On May 9, 2011, Plaintiffs filed their initial complaint in the San Francisco Superior Court

11  against Defendant ZaaZoom Solutions, LLC.  Plaintiffs filed their first amended complaint on July

12  22, 2011 and their second amended complaint on August 30, 2011, both in the San Francisco

13  Superior Court.  The second amended complaint named all of the current Defendants, including

14  FBD.  The complaint was not served immediately and was timely removed to this Court on

15  October 28, 2011.  [D.E. No. 1.]

16     After removal to this Court, several Defendants filed motions to dismiss the second

17  amended complaint.  On March 20, 2012, the Court issued an order granting FBD's motion to

18  dismiss and granting in part and denying in part the ZaaZoom Defendants' motion to dismiss

19  [D.E. No. 99].

20     After the issuance of the Court's March 20, 2012 order, the parties agreed that Plaintiffs

21  would file a third amended complaint and that Defendants would file new motions to dismiss.

22  The parties further agreed that if Plaintiffs' claims survived the new motions to dismiss, the

23  parties would attend private mediation.

24     On April 10, 2012, Plaintiffs filed their third amended complaint.  All of the Defendants

25  filed motions to dismiss this complaint.  On December 13, 2012, the Court granted in part and

26  denied in part the motions to dismiss as they related to the Depository Banks and denied the

27  motions as to the ZaaZoom Defendants and the Processors.  [D.E. No. 132].  Following the

28

4

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

1   Court's December 13, 2012 order, the sole remaining claim against the Depository Banks,

2   including FBD, is for negligence.

3        On March 8, 2013, the parties attended private mediation before the Honorable James L.

4   Warren (Ret.) of JAMS.  The mediation was not immediately successful as to any Defendant.

5   However, with the active assistance of Judge Warren, Plaintiff Stacie Evans and FBD continued

6   their settlement discussions for several months following the mediation, and eventually reached a

7   proposed classwide settlement as to FBD only after Judge Warren presented the Parties with a

8   mediator's proposal, which both sides accepted.

9        As of the filing of this motion, Plaintiffs continue to litigate their claims against the

10  remaining Defendants.  In particular, the Court has certified a California class of individuals with

11  claims against Jack Henry and FNBCT [D.E. No. 265], and concurrently with this motion,

12  Plaintiff Amber Marsh has filed a renewed motion for certification of a nationwide class pursuant

13  to the Court's order.  [D.E. No. 266.]

14  **C.      The United States' Lawsuit Against FBD & FBD's Dissolution**

15       On March 19, 2012 the United States filed a civil lawsuit against FBD in the Eastern

16  District of Pennsylvania, Case No. 2:12-cv-06500-HB (the "U.S. Action").  The U.S. alleged that

17  "[f]rom 2009 to 2011, First Bank of Delaware engaged in a scheme to defraud consumers by

18  originating electronic-payment transactions knowing, or by remaining willfully blind to the fact,

19  that the consumer authorizations for the transactions had not been obtained, or had been obtained

20  by dishonest merchants using fraud, trickery, and deceit."  The U.S. further alleged that "First

21  Bank of Delaware originated more than two million debit transactions - worth more than a

22  hundred million dollars - on behalf of third-party payment processors in cahoots with fraudulent

23  Internet and telemarketer merchants, and directly with other fraudulent merchants."  As with this

24  lawsuit, the U.S. went on to explain that "RCCs are notorious in the banking industry and in the

25  consumer protection community as instruments of fraud," and that "the Attorneys General of 35

26  states jointly urged that RCCs be eliminated from the banking system."  The United States'

27  complaint devotes several paragraphs to FBD's involvement in the ZaaZoom Defendants'

28  Membership Programs.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

In May 2012, FBD announced that it would cease operations, and it outlined the steps it would take to wind down its business.  On November 15, 2012, FBD entered into a $15.5 million settlement agreement with the United States, thereby resolving the U.S. Action.  On November 16, 2012, FBD announced the sale of its loans, deposit accounts, and a bank branch to Bryn Mawr Bank.

Immediately following the sale to Bryn Mawr, FBD was dissolved and its assets and liabilities were transferred to a liquidating trust in accordance with the plans approved by FBD's stockholders on October 23, 2012.  That same day, FBD's common stock was removed from the OTC Bulletin Board.  As a result of the above-described circumstances, FBD became severely financially compromised.  As set forth in the previously-filed Declaration of Joseph J. Manion, Jr. in Support of (1) Plaintiff's Unopposed Motion for Preliminary Approval of Settlement, and (2) First Bank of Delaware's Motion for Good Faith Settlement Determination and Confirmation of Contribution Protection [D.E. No. 201] ("Prior Manion Decl."), this settlement and two other cases with claims under the same policy coverage will exhaust FBD's insurance resources. (Prior Manion Decl. ¶¶1-13.)

## III.    TERMS OF THE SETTLEMENT AGREEMENT

The terms of the settlement preliminarily approved by the Court are set forth in the Settlement Agreement, which is attached to the Declaration of Jeffrey M. Rosenfeld as Exhibit 1.  Below is a summary of the terms and benefits in the Settlement Agreement.

### A.    Settlement Class

The proposed Settlement Class is defined in the Agreement and the preliminary approval order as:

> All persons whose banking accounts were drawn on by way of remotely created checks created by or on behalf of the ZaaZoom Defendants and deposited at First Bank of Delaware, or from whom Membership Fees were collected and deposited at First Bank of Delaware, or who incurred Bank Account Fees in connection with a collection or attempted collection of Membership Fees by any instrument deposited at First Bank of Delaware, from May 6, 2007 to January 15, 2014.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

1    (Settlement Agreement ¶ 40.)

2        **B.    Benefits to the Settlement Class**

3        Pursuant to the Settlement Agreement, FBD will create a Settlement Fund of five hundred

4    twenty-seven thousand seven hundred fifty dollars ($527,750).   (Settlement Agreement ¶36.)

5    Members of the Settlement Class who complete and submit a Claim Form will be able to receive a

6    Cash Payment of the lesser of up to three months of Membership Fees paid or sixty dollars ($60).[4]

7    The exact payment amounts will be determined by the claims rate. (*Id.* ¶44.)

8        **C.    Electronic Notice and Claims Process**

9        Pursuant to the Court's order granting preliminary approval [D.E. No. 253], the Settlement

10   Administrator disseminated a Short Form Notice via e-mail to the approximately 350,439

11   Settlement Class Members for whom the Parties identified an e-mail address.  (Declaration of Eric

12   Robin in Support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement

13   with Defendant First Bank of Delaware ("Robin Decl.") ¶10.)[5]  The Short Form Notice provided a

14   link to the complete Class Notice, which is displayed on a dedicated settlement website located at

15   <www.fbdsettlement.com> (the "Settlement Website").   (Robin Decl. ¶10.)   The Settlement

16   Administrator disseminated Postcard Notice to the approximately 41,199 Settlement Class

17   Members for whom the Parties identified a postal address but had not identified an e-mail address.

18   (Robin Decl. ¶11.)   The Postcard Notice provided a link to the complete Class Notice on the

19

20   [4] Since most of the Membership Fees at issue were at the level of $19.99 per month or less, this
would give Settlement Class Members reimbursement in most cases for up to three months of
Membership Fees.

21   [5] The Settlement Administrator's actions were correct and consistent with the Court's as-signed
22   Preliminary Approval Order ("PAO")(D.E. 253).   There was one minor inconsistency between the
text of the as-signed PAO and the as-approved Class Notice attached thereto, which is immaterial
23   because both the as-signed text of the PAO and the actions of the Settlement Administrator were
more favorable to class members by applying the "postmark rule" to the date for any objections to
24   the Settlement.  Specifically, the as-signed PAO states at page 5, line 10 that objections to the
settlement shall be "postmarked no later than May 26, 2014, or by hand no later than the same
25   date" whereas the as-approved Class Notice attached thereto states in paragraph 13 that objections
shall be "filed by the deadline of May 26, 2014" (compare D.E. 253 text at page 5, line 10 with
26   page 15 at para. 13).   The as-signed PAO is more favorable to class members by stating
"postmarked" and the Settlement Administrator so stated in its one-page summary of key
27   deadlines (see Robin Decl., para. 7 and Exhibit 4-1).  Thus, the Settlement Administrator's one
page summary of key deadlines was correct, and the Court may resolve the minor inconsistency
28   between the PAO text and the attached Class Notice in favor of class members by considering
objections (if any) that are either filed or postmarked by May 26, 2014.

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

Settlement Website. (Robin Decl. ¶11.) The Settlement Administrator also arranged for the publication of a 1/8 page notice in the Marketplace—Legal Notices Section of the USA Today on February 10 & 17, 2014. (Robin Decl. ¶¶ 5,6.) As with the Short Form Notice and the Postcard Notice, the Publication Notice provided a link to the complete Class Notice on the Settlement Website. (*Id.*)

Settlement Class Members are able to submit a Claim Form through an online process on the Settlement Website. Alternatively, Settlement Class Members can print a copy of the Claim Form from the Settlement Website and mail it to the Settlement Administrator. (Robin Decl. ¶¶2,7.)

### D. **Attorneys' Fees and Incentive Awards**

Concurrently with the filing this motion for final approval, Class Counsel will file a separate motion for an award of attorneys' fees, expenses, and incentive awards, all of which will be paid from the Settlement Fund. Class Counsel's motion will request an award of (1) attorneys' fees in the amount of $131,000 (*i.e.*, approximately 25% of the Settlement Fund); (2) expenses of up to $18,000; and (3) incentive payment to the Named Plaintiff in the sum of $2,500. (Settlement Agreement ¶¶3, 23.) Class Counsel will provide the Court with full briefing on this request in a separate motion, but note that the amount of fees requested is consistent with the Ninth Circuit's benchmark for reasonableness in common fund cases. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); *see also White v. Experian Info. Solutions, Inc.*, No. SACV 05-1070 DOC (MLGx), 2011 WL 2971836, at *2, (C.D. Cal. July 15, 2011) ("Under the percentage method for calculating attorney's fees in a common fund case, a request that totals twenty-five percent of the class recovery is presumptively reasonable.").

### E. **Proportionality**

With expected Settlement Administration costs of approximately $93,334 (Robin Decl. at ¶9), and if all the requested fees above were granted, payments to the Class would be 55% of the Settlement Amount, and Settlement Administration costs; the Attorney Fee and Cost Award and the Class Representative Incentive Award would be 45% of the Settlement Amount.

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

**IV.     CLASS NOTICE COMPLIED WITH THE COURT'S PRELIMINARY APPROV-AL ORDER, RULE 23(C) AND (E), AND DUE PROCESS**

Rule 23(c)(2) of the Federal Rules of Civil Procedure requires the Court to ensure that the settlement provides the Class with the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).   Notice is satisfactory where it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir.1980), *disapproved of on other grounds by Evans v. Jeff D.*, 475 U.S. 717 (1986).   Adequate notice sets forth the nature of the action, defines the class to be certified, the class claims and defenses at issue, while also explaining to class members that they may enter an appearance through counsel if so desired, request exclusion from the settlement class, and that any judgment will be binding on all class members.  *See* Fed. R. Civ. P. 23(c)(2)(B).

In its preliminary approval order [D.E. No. 253], the Court found "that the Class Notice dissemination procedure set forth in Section VI of the Settlement Agreement (i) is the best practicable notice; (ii) is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action and of their right to object or to exclude themselves from the proposed settlement; (iii) is reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meets all applicable requirements as set forth by law." [D.E. No. 253 at ¶5.]   The Court appointed KCC Class Action Services, LLC ("KCC") as the Settlement Administrator to disseminate notice to the Settlement Class and to administer the settlement.   [D.E. No. 253 at ¶7.]   The Court further ordered KCC to complete dissemination of notice to the Settlement Class by February 27, 2014 in accordance with Section VI of the Settlement Agreement. [D.E. NO. 253 at ¶7.]

The notice plan approved by the Court has been—and continues to be—carried out by KCC in compliance with Due Process and Rule 23.  As discussed above, this notice plan included the publication of notice in USA Today, the dissemination of Postcard Notice, the dissemination

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA   94108

1    of e-mail notice, the creation and ongoing maintenance of the Settlement Website, and the

2    establishment of a post office box for receiving requests for exclusions, objections, notices of

3    intention to appear, and any other communications regarding this action and the settlement.  (See

4    Robin Decl. ¶¶ 2-11.)

5          As of March 24, 2014, KCC has received 1,058 claims either via U.S. Mail or through the

6    online claim form; no Class Member has requested to be excluded from the settlement; and no

7    Class Member has objected to the settlement.  (Robin Decl. ¶¶13-14.)   KCC will continue to

8    process claims submitted on or before April 28, 2014, meaning there will undoubtedly be

9    additional claims made before the claims period expires.  (Robin Decl. ¶12-13.)

10   **V.      THE COURT SHOULD CONFIRM ITS CERTIFICATION OF THE SETTLE-**

11   **MENT CLASS**

12         Federal Rule of Civil Procedure 23(e) requires court approval of any settlement that results

13   in the dismissal of a class action.  Settlement agreements reached before class certification must

14   be reviewed as to both the requirements for class certification and the fairness of the settlement.

15   *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 621-22 (1997).   First, a court must

16   determine whether a certifiable class exists.  *See id*.  Then, "the district court [must] determine that

17   a class action settlement is fair, adequate, and reasonable."  *Hanlon*, 150 F.3d at 1026.

18         A class action should be certified where, as here, the class satisfies the four prerequisites of

19   Rule 23(a) (*i.e.* numerosity, commonality, typicality and adequacy), as well as one of the three

20   subsections of Rule 23(b).  Although the usual standards for Rule 23(a) and (b) certification apply

21   in the settlement context, issues regarding trial management need not be considered because there

22   will be no trial.  *Amchem*, 521 U.S. at 621-22.

23         On January 22, 2014, the Court in its preliminary approval order found that the Settlement

24   Class satisfied the requirements or Rule 23(a) and 23(b)(3).   [D.E. No. 253.]   Based on this

25   determination, the Court certified the following Settlement Class pursuant to Rule 23(b)(3) of the

26   Federal Rules of Civil Procedure:

27         All persons whose banking accounts were drawn on by way of remotely created

28         checks created by or on behalf of the ZaaZoom Defendants and deposited at First

1   Bank of Delaware, or from whom Membership Fees were collected and deposited

2   at First Bank of Delaware, or who incurred Bank Account Fees in connection with

3   a collection or attempted collection of Membership Fees by any instrument

4   deposited at First Bank of Delaware, from May 6, 2007 to January 15, 2014.

5   [D.E. No. 253 at ¶2.]  The Settlement Class satisfies each of the requirements of Rule 23(a) as well

6   as Rule 23(b)(3).  As such, the Court should confirm its certification of the Settlement Class.

7       **A.**    **The Settlement Class Satisfies the Requirements of Rule 23(a).**

8       Rule 23(a) enumerates four prerequisites for class certification: (1) numerosity; (2)

9   commonality; (3) typicality; and (4) adequacy.   The Settlement Class satisfies each of these

10  requirements.

11      1.    <u>Numerosity</u>

12      The numerosity requirement is met where "the class is so numerous that joinder of all

13  members is impracticable." Fed. R. Civ. P. 23(a)(1).  It need not be impossible, but only difficult

14  or inconvenient to join all members of the class.  *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238

15  F.R.D. 482, 487 (C.D. Cal. 2006).

16      Here, the proposed Settlement Class consists of approximately 559,500 people whom the

17  ZaaZoom Defendants charged, or attempted to charge, a Membership Fee by way of RCC, and

18  deposited these individuals' RCCs in an account with FBD. (Declaration of Alec Cierny in

19  Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement

20  with Defendant First Bank of Delaware [D.E. No. 202] ("Prior Cierny Declaration") ¶33.)[6]  This

21  large number of Class members satisfies the numerosity requirement.

22      2.    <u>Commonality</u>

23      Commonality is satisfied if "there are questions of law or fact common to the class."  Fed.

24  R. Civ. P. 23(a)(2).  "The commonality requirement 'serves chiefly two purposes: (1) ensuring

25  that absentee members are fairly and adequately represented; and (2) ensuring practical and

---

[6] Prior to the dissemination of the Class Notice, KCC performed a supplemental deduplication analysis to ensure that each entry on the Class List represented a unique individual. This deduplication effort reduced the estimated size of the Class (estimated to be approximately 700,000 at the time of the Preliminary Approval Hearing) by approximately 20%. (Robin Decl. ¶9.)

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1  efficient case management.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting

2  *Walters v. Reno*, 145 F.3d 1032, 1045 (9th Cir. 1998)). This "requirement has been 'construed

3  permissively,' and its requirements deemed 'minimal.'" *Estrella v. Freedom Fin. Network*, No.

4  No. C 09–03156-SI, 2010 WL 2231790, at *7 (N.D. Cal. June 2, 2010) (quoting *Hanlon*, 150 F.3d

5  at 1019-20).

6        Common questions of law and fact pervade this litigation. Plaintiff and the Class have

7  made the common factual allegation that the ZaaZoom Defendants enrolled them in Membership

8  Programs and withdrew, or attempted to withdraw, Membership Fees without their knowledge or

9  consent. Plaintiff and the Class have also made the common factual allegations that the ZaaZoom

10  Defendants effected these unlawful withdrawals by RCCs, which they deposited in an account

11  with FBD. Moreover, Plaintiff and the Class have uniformly alleged that FBD engaged in

12  common law negligence by disregarding warning signs that the ZaaZoom Defendants'

13  Membership Programs—and the RCCs associated with those programs—were fraudulent.

14  Finally, because the ZaaZoom Defendants' records identify the amounts withdrawn from

15  Settlement Class Members' bank accounts, the Class damages can be measured with a common

16  methodology that is directly connected to the alleged wrong. *See Comcast Corp. v. Behrend*, 133

17  S.Ct. 1426, 1433-35 (2013) (requiring a connection between the theory of liability and the

18  methodology for calculating class damages).

19        These common factual and legal questions satisfy Rule 23(a)'s commonality requirement.

20        3.   <u>Typicality</u>

21        "Like the commonality requirement, the typicality requirement is 'permissive' and requires

22  only that the representative's claims are 'reasonably co-extensive with those of absent class

23  members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d at 1124

24  (quoting *Hanlon*, 150 F.3d at 1020). "In determining whether typicality is met, the focus should

25  be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff."

26  *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 734 (9th Cir. 2007). Thus, typicality is

27  "satisfied when each class member's claim arises from the same course of events, and each class

28

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

1    member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*,

2    275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)).

3         Here, typicality is satisfied because Plaintiff's and the Class Members' claims all derive

4    from the ZaaZoom Defendants' uniform business practices.  More specifically, Plaintiff's and the

5    Class Members' claims are based on the fact that the ZaaZoom Defendants collected or attempted

6    to collect Membership Fees without Class Members' consent through RCCs deposited in an

7    account with FBD.

8                          4.      Adequacy of Representation

9         The Court must also consider whether "the representative parties will fairly and adequately

10   protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Representation is adequate where the

11   plaintiff's counsel is qualified and competent to represent the class, and the class representatives

12   do not possess interests that are antagonistic to the remainder of the class.  *Lerwill v. Inflight*

13   *Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *Hanlon*, 150 F.3d at 1020.

14        Here, there is no conflict between the claims of the individual class representative and the

15   Class, and Plaintiff's counsel have vigorously pursued the Class's claims.  Moreover, Plaintiff's

16   counsel have litigated or been appointed class counsel in a number of other consumer cases.

17   (Declaration of Mike Arias in Support of Plaintiff's Unopposed Motion for Preliminary Approval

18   of Class Action Settlement with Defendant First Bank of Delaware [D.E. No. 199] ("Prior Arias

19   Decl.") ¶¶3-13; Declaration of Karl S. Kronenberger in Support of Plaintiff's Unopposed Motion

20   for Preliminary Approval of Class Action Settlement with Defendant First Bank of Delaware

21   [D.E. No. 198] ("Prior Kronenberger Decl.") ¶¶3-13.)

22        Based on the foregoing, the adequacy requirements have been met.

23   **B.      The Settlement Class Should be Certified Pursuant to Rule 23(b)(3).**

24        "In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class

25   certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or

26   (3)."  *Hanlon*, 150 F.3d at 1022.  Certification under Rule 23(b)(3) is appropriate "whenever the

27   actual interests of the parties can be served best by settling their difference in a single action."  *Id*.

28   at 1022.  Plaintiffs are seeking class certification pursuant to Federal Rule of Civil Procedure

23(b)(3), which permits class certification upon a showing of predominance and superiority—*i.e.*, that the questions common to class members' legal claims predominate over individualized questions, and that a class proceeding is superior to any alternative methods for resolving the controversy. *See id.*

### 1.   Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "Predominance is a test readily met in certain cases alleging consumer . . . fraud . . . ." *Id.* at 625. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." Wright, A.R. Miller, & M. K. Kane, Federal Practice & Procedure (2d ed. 1986), §1778, p. 121 (quoted in *Hanlon*, 150 F.3d at 1022).

Here, the Class satisfies the predominance inquiry. As discussed above, members of the Settlement Class are entitled to the same legal remedies premised on the same alleged wrongdoing. The central issues for every Class Member are: a) whether the ZaaZoom Defendants obtained their personal and banking information without their knowledge or consent through a uniform fraudulent business practice; b) whether the ZaaZoom Defendants used Class Members' information to draft RCCs, which were deposited in an account with FBD; and c) whether FBD was negligent in accepting and settling those RCCs.

Because liability turns on the propriety of the manner and methods by which Defendants operated their business generally, and not on their specific treatment of any one Class Member, the predominance requirement is satisfied.

### 2.   Superiority

Rule 23(b)(3)'s superiority requirement is satisfied where, as here, the claims of the individual class members are small, but the aggregate is large. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 *opinion amended on denial of reh'g,* 273 F.3d 1266 (9th Cir. 2001). In this case, the dispute concerns Membership Fees of no more than $49.98 for Class Members who had money withdrawn from their accounts, and Bank Account Fees of

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

approximately $27 per attempted withdrawal.  This relatively low amount of damages for any one Class Member makes a class action the superior method for adjudicating these claims.

Because the class action device provides the superior means to effectively and efficiently resolve this controversy, and because the other requirements of Federal Rule of Civil Procedure 23 are satisfied, certification of the Settlement Class is appropriate.

## VI.   FINAL APPROVAL IS APPROPRIATE BECAUSE THE PROPOSED SETTLE-MENT IS "FAIR, ADEQUATE, AND REASONABLE"

Court approval of a class action settlement is a two-step process, with the first step being preliminary approval, and the second step being final approval.  *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citing Manual for Complex Litigation, Third, §30.41, at 236-37 (1995)).   "Strong judicial policy [] favors settlements, particularly where complex class action litigation is concerned."  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

Under Federal Rule of Civil Procedure 23(e), a court should approve the settlement of a class action if it is "fair, adequate and reasonable."  *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995); *see also Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  The authority to approve a class settlement is committed to the sound discretion of the trial court.  *Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).  While the district court exercises discretion in approving a settlement, the court's evaluation of a proposed class settlement "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice*, 688 F.2d at 625.  In *Officers for Justice*, the Ninth Circuit explained:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits.  Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1    wasteful and expensive litigation that induce consensual settlements. The

2    proposed settlement is not to be judged against a hypothetical or speculative

3    measure of what might have been achieved by the negotiators.

4    *Officers for Justice*, 688 F.2d at 625 (internal citations omitted).  The Ninth Circuit has delineated

5    a non-exhaustive list of factors that a trial court may consider in making this determination,

6    including:

7        [T]he strength of plaintiffs' case; the risk, expense, complexity, and likely

8        duration of further litigation; the risk of maintaining class action status throughout

9        the trial; the amount offered in settlement; the extent of discovery completed, and

10       the stage of the proceedings; the experience and views of counsel; the presence of

11       a governmental participant; and the reaction of the class members to the proposed

12       settlement.

13   *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting *Torrisi*, 8

14   F.3d at 1375).  No one factor controls the analysis, and the "importance to be attached to any

15   particular factor will depend upon . . . the nature of the claim(s) advanced, the type(s) of relief

16   sought, and the unique facts and circumstances presented by each individual case."  *Officers for

17   Justice*, 688 F.2d at 625.

18       Here, the settlement embodies all of the key features of a settlement that is fair, reasonable,

19   adequate, and in the best interests of the Class Members.  Thus, the settlement meets all of the

20   criteria necessary for final approval.

21       A.    **The Settlement is the Result of Arm's-Length Negotiations.**

22       A proposed settlement is presumed to be fair and reasonable when it is the result of arm's-

23   length negotiations.  *See City of Seattle*, 955 F.2d at 1276; *In re Lorazepam*, 205 F.R.D. 369, 375-

24   76 (D.D.C. 2002) ("A 'presumption of fairness, adequacy, and reasonableness may attach to a

25   class settlement reached in arm's-length negotiations'") (internal citations omitted); *In re

26   Holocaust Victim Assets Litigation*, 105 F. Supp. 2d 139, 145-46 (E.D.N.Y. 2000) (in determining

27   fairness, the "consideration focuses on the negotiating process by which the settlement was

28   reached").

When settlement negotiations are conducted at arm's-length by experienced counsel, a "strong initial presumption of fairness attaches to the proposed settlement." *In re Holocaust Victim Assets Litigation*, 105 F.Supp.2d at 145-46 (internal citations and quotations omitted). Here, the Settlement Agreement is the result of arm's-length negotiations between experienced Class Counsel and counsel for Defendants. (Prior Kronenberger Decl. ¶¶14-16.)  On March 8, 2013, the parties attended private mediation before the Honorable James L. Warren (Ret.) of JAMS.  The mediation was not immediately successful as to any Defendant.  However, with the active assistance of Judge Warren, Plaintiff Stacie Evans and FBD continued their settlement discussions for several months following the mediation.  Only after several months of active negotiations, and only after Judge Warren made a mediator's proposal, did the Parties agree to the proposed classwide settlement.

This extensive involvement of skilled attorneys in settlement discussions in tandem with the active assistance of an impartial and experienced mediator, strongly supports the conclusion that the settlement was not the result of any collusion between the parties.  *See County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1323 (2d Cir. 1990).  In short, nothing in the negotiations or the substance of the Settlement Agreement "disclose[s] grounds to doubt its fairness."  Manual for Complex Litigation, Third, §30.41.  Thus, the settlement is entitled to the presumption that it is fair and reasonable.

### B.   FBD's Financial Condition Weighs In Favor of Final Approval of the Settlement.

Approval of a class settlement is warranted when the settlement helps to avoid continued litigation that would delay or deprive the class of relief, and would "save [] the time, expense, and inevitable risk of litigation."  *Officers for Justice*, 688 F.2d at 624; *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (favoring settlement where "[i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years"); *Shames v. Hertz Corp.*, No. 07-CV-2174-MMA-WMC, 2012 WL 5392159, *6 (S.D. Cal. Nov. 5, 2012) (where plaintiffs faced "significant uncertainty and risk of nonrecovery at trial," pre-trial settlement was "a reasonable tactical choice.").

Here, FBD's financial condition raises significant uncertainty about the ultimate success of Plaintiff's case. During the course of this litigation, FBD disclosed that it had entered into a $15.5 million settlement with the United States, that it had ceased its operations and sold its accounts, and all that remained of FBD was a liquidating trust. (Prior Manion Decl. ¶2.). In light of FBD's financial condition, the principal source of funding available to satisfy any judgment in this action is a $3 million insurance policy.[7] (Prior Manion Decl. ¶2.) Importantly, this is a "wasting policy" under which the funds available for settlement are reduced by the defense costs in attorneys' fees and expenses. (Prior Manion Decl. ¶ 6 & Ex. 1.) The coverage limits of the Policy are now exhausted by virtue of the defense fees and settlement costs in this action and two other unrelated matters. (Prior Manion Decl. ¶¶8-9.) This action was not the only case potentially covered under FBD's Policy. Another lawsuit, which does not involve RCCs, was also covered under the same Policy and subject to the same $3,000,000 wasting limit. (Prior Manion Decl. ¶¶8-9.) That case was *SFS Check, LLC v. FBD et. al.*, No. 2:12-cv-14607 (E.D. Mich.) (the "SFS Action"). (Prior Manion Decl. ¶8.) Additionally, FBD claimed coverage under the same BPL coverage in the Policy for its defense fees in a joint Department of Justice and FDIC investigation, which led to a settlement with those government entities (the "DOJ Claim") and which preceded FBD's dissolution and winding up. (Prior Manion Decl. ¶¶8-9.) While FBD has a potentially applicable excess policy, that insurer has reserved rights and has not yet confirmed any coverage. Moreover,

---

[7] This policy is a three million dollar ($3,000,000) insurance policy issued by Continental Casualty Company (a CNA affiliate), policy no. 425362605 ("the Policy"). (Prior Manion Decl. ¶6.) The Policy is an "Epack Extra" policy, which is a type of insurance policy commonly issued to smaller banks that combines various different types of coverages into one policy. (Prior Manion Decl. ¶6.) In this case, the Policy provides coverage for Directors & Officers (D&O), Bankers' Professional Liability (BPL), Fiduciary Liability, Employment Practices Liability (EPLI), Including Third Party Liability. (Prior Manion Decl. ¶6.) The Bankers' Professional Liability (BPL) coverage was the coverage agreed by the insurer to be potentially applicable to the present action, and it had a policy limit of $3,000,000, subject to a $100,000 self-insured retention ("SIR"). (Prior Manion Decl. ¶6.) This was a "wasting limits" insurance policy, meaning that attorneys' fees and costs of defense, as well as loss or settlement payments, are charged against the Policy, thus reducing its available coverage as the defense of a case progresses. (Prior Manion Decl. ¶6.) The "Policy Aggregate Limit" of the Policy was $8,000,000, but only the $3,000,000 Bankers' Professional Liability (BPL) coverage was conceded by the insurer to be potentially implicated by this case. ((Prior Manion Decl. ¶6.)

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

1    this excess policy would be exhausted by this case and the other claims even if coverage were

2    extended. (Prior Manion Decl. ¶¶10-13.)

3          FBD is no longer a functioning business, and its insurance Policy is the principal source of

4    funding for this settlement.  FBD's dissolution and compromised financial circumstances are in

5    significant part due to the following circumstances: a) the fact that FBD entered into a $15.5

6    million settlement agreement with the United States to resolve the U.S. Action, b) the fact that

7    FBD ceased all of its operations and sold all of its accounts and loans to a third party bank, and c)

8    the fact that FBD transferred all of its remaining assets to a liquidating trust.

9          "[A] settling defendant's ability to pay may be a proper factor to be considered in

10   evaluating a proposed class action settlement."  *City of Seattle,* 955 F.2d at 1295; *see also Laguna*

11   *v. Coverall N. Am., Inc.*, No. 3:09-CV-02131-JM, 2012 WL 607622, at *3, (BGS) (S.D. Cal. Feb.

12   23, 2012) (considering defendants' "financial health" and "ability to pay").  Thus, "it is well

13   settled law that a proposed settlement may be acceptable even though it amounts to only a fraction

14   of the potential recovery that might be available to the class members at trial. *See Nat'l Rural*

15   *Telecommunications Coop.*, 221 F.R.D. at 527.  Based on FBD's financial health, the settlement is

16   reasonable and provides Class Members with redress they would not otherwise receive.

17         **C.**      **Continued Litigation Poses Substantial Risks In Establishing FBD's Liability.**

18         In evaluating the settlement, the Court should also consider "the risk of continued

19   litigation balanced against the certainty and immediacy of recovery from the Settlement."  *In re*

20   *Omnivision*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (citing *In re Mego Financial Corp. Sec.*

21   *Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)).  Examining the strength of the plaintiff's claims in

22   order to determine the fairness, reasonableness, and adequacy of a settlement, requires the

23   balancing of "the vagaries of litigation and [] the significance of immediate recovery by way of

24   the compromise to the mere possibility of relief in the future, after protracted and expensive

25   litigation."  *Shames v. Hertz Corp.*, 2012 WL 5392159 at *5 (citing *Nat'l Rural*

26   *Telecommunications*, 221 F.R.D. at 526); *see also Protective Comm. for Indep. Stockholders v.*

27   *Anderson*, 390 U.S. 414, 424-25 (1968) ("Basic to [analyzing a proposed settlement] in every

28

KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

1    instance, of course, is the need to compare the terms of the compromise with the likely rewards of

2    litigation.").

3          The analysis of a plaintiff's probability of success on the merits is not subject to any

4    "particular formula by which the outcome must be tested," nor is the court expected to "reach any

5    ultimate conclusions of the contested issues of fact and law which underlie the merits of the

6    dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and

7    expensive litigation that induce consensual settlements."   *Garner v. State Farm Mut. Auto. Ins.*

8    *Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing

9    *Rodriguez v. West Publishing Corp.*, 563 F.3d at 965; *Officers for Justice*, 688 F.2d at 625).

10   "Rather, the Court's assessment of the likelihood of success is nothing more than an amalgam of

11   delicate balancing, gross approximations and rough justice."   *Garner*, 2010 WL 1687832, at *9

12   (citing *Officers for Justice*, 688 F.2d at 625) (internal quotations omitted).   Given the subjective

13   components inherent in evaluating the potential range of recovery, "the Court may presume that

14   through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement

15   by considering Plaintiff's likelihood of recovery."   *Garner*, 2010 WL 1687832, at *9 (citing

16   *Rodriguez v. West*, 563 F.3d at 965).

17         Here, the settlement will allow Plaintiff to sidestep a number of obstacles she would face

18   in litigating her claim against FBD through class certification and to judgment.   In particular,

19   FBD, as a depository bank, is further removed from the misconduct than the ZaaZoom Defendants

20   and the Processors, who were directly involved in the collection of the personal information of

21   Plaintiff and the Class Members and in the drafting of the RCCs.   As a result of FBD's indirect

22   involvement in the misconduct, to date FBD has vigorously contested liability in this case,

23   including through two successful motions to dismiss.   After extensive briefing on these two

24   motions and multiple oral arguments, FBD persuaded the Court to dismiss all but one claim

25   against FBD.   As a result, Plaintiff's sole remaining claim against FBD is a claim for negligence.

26   In comparison, the Court denied the ZaaZoom Defendants' and the Processor Defendants' second

27   set of motions to dismiss in their entirety, leaving intact all of Plaintiff's claims against these

28   Defendants.

1    Plaintiff is mindful of the complexity of the statutory and common law structure governing

2    her claim against FBD along with the risk associated with any litigation.  By settling this action

3    with FBD, Plaintiff and the Class avoid the uncertainty in litigating Plaintiff's negligence claims

4    against FBD.

5    **D.    Class Counsel Performed Sufficient Research and Analysis to Adequately As-**

6    **sess the Settlement and to Identify the Strengths and Weaknesses of Plaintiff's**

7    **Claim Against FBD.**

8    "[T]he stage of the proceedings and the amount of discovery completed" is a factor that

9    courts consider in determining the fairness, adequacy, and reasonableness of a settlement.  *In re*

10   *Warner Communications Sec. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35

11   (2d Cir. 1986) (citations omitted).

12   This settlement follows substantial factual investigation and legal analysis of the claims

13   and defenses of the parties, as well as substantial motion practice, and it was reached only after

14   Class Counsel had conducted extensive due diligence inquiries.  (Prior Kronenberger Decl. ¶¶14-

15   16.)  During this litigation, Plaintiffs propounded multiple sets of discovery requests, and after

16   extensively meeting and conferring on various discovery objections, Defendants produced

17   thousands of documents, including financial records, internal e-mails, website design documents,

18   class member enrollment data, and check return data.  (Prior Kronenberger Decl. ¶¶14-16.)  In

19   addition to formal discovery and motion practice, Class Counsel engaged in a significant

20   investigation into the facts and the law at issue in this case through informal discovery, Freedom

21   of Information Act requests, reviewing extensive information provided by Defendants,

22   interviewing witnesses and engaging in extensive settlement discussions.  (Prior Kronenberger

23   Decl. ¶¶14-16.)  In that vein, FBD voluntarily produced significant documents germane to the

24   settlement, including copies of their insurance policies.  (Prior Kronenberger Decl. ¶15.)

25   Based upon the foregoing, Class Counsel concluded that a settlement according to the

26   terms and conditions set forth in the Settlement Agreement would be fair, adequate and

27   reasonable, and in the best interests of the Class.  (Prior Kronenberger Decl. ¶16.)  *See In re*

28   *Lorazepam*, 205 F.R.D. at 377 (citing *Luevano v. Campbell*, 93 F.R.D. 68, 86 (D.D.C. 1981) ("In

1    evaluating the fairness and adequacy of a settlement, it is important to consider whether the

2    settlement was reached after extensive factual development, so that counsel on both sides would

3    have had information sufficient to make a reasonable assessment of their risks of litigation.").

4    **E.      The Recommendations of Experienced Class Counsel and an Impartial Medi-**

5    **ator Heavily Favor Approval of the Settlement.**

6         Courts consistently rely on settlements reached by experienced counsel given that

7    "[p]arties represented by competent counsel are better positioned than courts to produce a

8    settlement that fairly reflects each party's expected outcome in litigation."   *In re Pacific*

9    *Enterprises,* 47 F.3d at 378.  This presumption is strengthened when class counsel have specific

10   experience in the type of claims being litigated.   *See Martin v. AmeriPride Servs., Inc.*, No.

11   08CV440-MMA JMA, 2011 WL 2313604, at *7 (S.D. Cal. June 9, 2011); *see also Nat'l Rural*

12   *Telecommunications*, 221 F.R.D. at 528 ("'[g]reat weight' is accorded to the recommendation of

13   counsel, who are most closely acquainted with the facts of the underlying litigation.").  "The

14   recommendations of plaintiffs' counsel should be given a presumption of reasonableness."

15   *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *see also M. Berenson Co. v.*

16   *Faneuil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987); *Ellis v. Naval Air Rework*

17   *Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) *aff'd*, 661 F.2d 939 (9th Cir. 1981) ("the fact that

18   experienced counsel involved in the case approved the settlement after hard-fought negotiations is

19   entitled to considerable weight").

20        Here, Class Counsel and counsel for FBD—all of whom are experienced complex

21   litigation and class action attorneys—entered into the Settlement Agreement after extensive,

22   arduous, arm's-length negotiations following substantial factual investigation and legal analysis of

23   the claims and defenses of the parties. (Prior Kronenberger Decl. ¶¶15-16.)  Additionally, Class

24   Counsel and counsel for FBD only entered the Settlement Agreement after conducting a full-day

25   mediation before an experienced, impartial mediator (*i.e.*, Judge James Warren (Ret.)), and after

26   engaging in months of follow-up negotiations with Judge Warren's assistance.   (Prior

27   Kronenberger Decl. ¶15.)

28

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

The fact that qualified and well-informed counsel operating at arm's-length endorse the settlement as being fair, adequate, reasonable and adequate militates in favor of this Court's approval of the settlement.

### F.    The Reaction of the Class Supports Approval of the Settlement.

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *Nat'l Rural Telecommunications*, 221 F.R.D. at 529.  Indeed, "[t]he absence of any objector strongly supports the fairness, reasonableness, and adequacy of the settlement."  *Williams v. Costco Wholesale Corp.*, No. 02CV2003 IEG(AJB), 2010 WL 2721452, at *5 (S.D. Cal. July 7, 2010) (citing *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") and *Boyd*, 485 F. Supp. at 624 (finding "persuasive" the fact that 84% of the class has filed no opposition); *see also Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (concluding that when "only" 29 members of 281 class members objected, the response of the class as a whole "strongly favors settlement").

The deadline for Class Members to submit claims or requests for exclusions is April 28, 2014, and the deadline for Class Members to file objections is May 26, 2014.  [D.E. No. 253 ¶11.]  Accordingly, Plaintiff will address this element in full in her reply brief.  At this point, Plaintiff simply notes that as of March 24, 2014 there have been no objections to the settlement and no requests to opt-out of the settlement. (Robin Decl. ¶14.)

### G.    There Was No Collusion Between the Parties In Reaching the Settlement.

In addition to the foregoing factors—all of which support final approval of the settlement here—the Ninth Circuit has instructed courts to carefully scrutinize cases that are settled without adversarial certification for possible collusion.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 46-947 (9th Cir. 2011).  In *In re Bluetooth*, the Ninth Circuit identified the following factors as the most indicative of collusion between the parties: "(1) when counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

1   but class counsel are amply rewarded; (2) when the parties negotiate a clear sailing arrangement

2   providing for the payment of attorneys' fees separate and apart from class funds; . . . and (3) when

3   the parties arrange for fees not awarded to revert to defendants rather than be added to the class

4   fund." *Id*. at 947 (internal citations and quotations omitted).  Each of these "warning signs" is

5   designed to reveal evidence of collusion that "may not always be evident on the face of a

6   settlement." *Id*.  None of these elements is present here.

7       First, Class Counsel are not receiving a disproportionate amount of the settlement.  Class

8   Counsel are seeking an award of attorneys' fees equal to 25% of the common fund established by

9   the settlement.  This percentage falls in line with the Ninth Circuit's benchmark of 25% in

10  common fund cases.  *See In re Bluetooth,* 654 F.3d at 942.  In addition, the Settlement Agreement

11  does not provide for the payment of attorneys' fees separate and apart from the funds paid to the

12  Class.  *See Staton v. Boeing Co.*, 327 F.3d 938, 970 (9th Cir. 2003); *In re Bluetooth*, 654 F.3d at

13  948-49.  Rather, Class Counsel is seeking its fees as a percentage of the total value created by the

14  settlement.

15      Second, there is no reversion of the Settlement Fund to FBD.  Moreover, any reduction in

16  attorneys' fees will not be paid to FBD, but will revert to the Settlement Fund.  Any such funds

17  will be used to pay approved claims.  *See In re Bluetooth*, 654 F.3d at 949 ("a kicker arrangement

18  reverting unpaid attorneys' fees to the defendant rather than the class amplifies the danger of

19  collusion").

20      Third, unlike *Staton*, the settlement is not contingent on the Court awarding a specific fee

21  to Class Counsel.  Instead, the parties have agreed to a total Settlement Fund and have "left the

22  division of that fund as between the class and counsel to the district court, as is usual in common

23  fund cases." *Staton*, 327 F.3d at 971.

24      Finally, while there is a "clear sailing" provision in the Settlement Agreement, the

25  requested fees were negotiated solely as a percentage of the overall value of the settlement,

26  inextricably linking Class Counsel's fees to the value obtained for the Class.  The Ninth Circuit's

27  concerns regarding "clear sailing" provisions stem from instances where the requested fee is

28  agreed upon independently of the amount provided for the class.  *See In re Bluetooth*, 654 F.3d at

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

947.  Such arrangements can enable a defendant to "pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class." *Id.* (citation omitted); *see also In re Oracle Securities Litig.*, 131 F.R.D. 688, 694 (N.D. Cal. 1990) (noting that contingent, percentage based fees act as "a monitoring device" and "align the interests of lawyer and client. The lawyer gains only to the extent his client gains.").  These concerns are not present here since the fees are a percentage of the total Settlement Fund.   Furthermore, the fee negotiations here came only after class relief was agreed upon by the Parties. (Rosenfeld Decl. ¶52.)  Thus, an increased fee amount could not have been offered in exchange for reduced benefits to the class.

The non-collusive nature of this settlement, which was reached after a series of arm's-length negotiations and a contested mediation, fully establishes that there are no "warning signs" of collusion here.

**VII.   CONCLUSION**

Based upon all of the foregoing, Plaintiff respectfully requests that this Court confirm certification of the Settlement Class and grant final approval of the settlement.

Respectfully Submitted,

DATED: March 28, 2014                    **KRONENBERGER ROSENFELD, LLP**


By: ____s/ Jeffrey M. Rosenfeld_____
         Jeffrey M. Rosenfeld


Attorneys for Plaintiffs