UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBER KRISTI MARSH, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>FIRST BANK OF DELAWARE, et al.,<br><br>　　　　Defendants. | Case No. 11-cv-05226-WHO<br><br>**ORDER DENYING RENEWED MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**<br><br>Re: Dkt. No. 267 |

## INTRODUCTION

Plaintiff Amber Kristi Marsh has filed a Renewed Motion for Class Certification and for Appointment of Class Counsel in her action on behalf of individuals injured through the use of remotely created checks ("RCC") drafted by defendant Jack Henry & Associates, Inc. ("Jack Henry"), and deposited with defendant First National Bank of Central Texas ("FNBCT") (collectively, "defendants").[1] Because she has not carried her burden of showing that California or Texas law should apply to non-California residents or that a class action involving 50 subclasses applying the laws of different jurisdictions is manageable and satisfies Federal Rule of Civil Procedure 23, her renewed motion is DENIED.

## BACKGROUND

This order incorporates by reference the factual and legal discussions in my earlier Order Granting Plaintiff's Motion for Class Certification and Appointment of Class Counsel and Denying Defendants Jack Henry & Associates and First National Bank of Central Texas's Motion

---

[1] The other defendants in this action, who are not relevant to this motion, are ZaaZoom Solutions, LLC, ZaZa Pay LLC, MultiECom, LLC, and Online Resource Center, LLC (collectively, "ZaaZoom Defendants").

to Strike Class Allegations (Dkt. No. 265) ("Order").  In the Order, I certified the following class: "All individuals from whom, and who were California residents when, Membership Fees were collected (or who incurred Bank Account Fees in connection with a collection or attempted collection of Membership Fees) by way of remotely created check(s) drafted by Defendant Jack Henry & Associates, Inc., and deposited with First National Bank of Central Texas, from May 6, 2007, to the date of the preliminary approval order."  I also appointed Marsh as the class representative and her counsel, Kronenberger Rosenfeld, LLP, and Arias Ozzello & Gignac, LLP, as class counsel.

While Marsh's original motion sought to certify a nationwide class, I held that she had not shown that the predominance requirement in Federal Rule of Civil Procedure 23(b)(3) was met with regard to her causes of action under California law on behalf of a nationwide class because it would violate due process to apply California law to non-Californians.  In particular, I concluded that Marsh "has not demonstrated that the proposed class members' claims and the parties have enough contacts rising to the levels other courts have found sufficient to meet due process requirements."  Order 19.  Accordingly, I only certified a California class, but granted Marsh leave to make a renewed motion for certification of a nationwide class or multiple subclasses with different states' laws applying to each subclass.

In the Order, I noted that "the Ninth Circuit has found it proper for plaintiffs to make a 'renewed motion for certification only *after* the plaintiffs created subclasses with proper representatives for each.'"  Order 22.  I ordered that the new motion must, "among other things, identify[ ] the states of residency for proposed class members, explain[ ] with particularity whether any other state's laws apply and how they relate to California law, and provid[e] 'a suitable and realistic plan for trial of the class claims.'"  Order 26 (citation omitted).  I would then determine whether predominance has been shown for the nationwide class or subclasses.

On March 27, 2014, Marsh filed her renewed motion for class certification.  Dkt. No. 267.  In her motion, Marsh again asks that I certify a nationwide class under California negligence and conversion law.  In the alternative, Marsh asks that I certify either a nationwide class under Texas law or a nationwide class applying the law of each state to that state's residents.

**DISCUSSION**

**I.    CALIFORNIA LAW CANNOT APPLY TO A NATIONWIDE CLASS.**

In the Order, I held that the mere fact that the ZaaZoom Defendants' websites were operated in California, that Jack Henry is registered to conduct business in California and has a branch office (in which it is unclear what work is being done) in San Diego, California, and that some undefined number of California residents were harmed was insufficient to warrant applying California law to non-Californian residents. Order 18, 20. I also pointed out that "Marsh has presented no evidence linking FNBCT to California" aside from the harm it allegedly caused to California residents. Order 20.

In support of her renewed argument that the defendants and the proposed nationwide class members have sufficient contacts with California that warrant applying California law to a nationwide class, Marsh points to the following facts:

- While ZaaZoom Solutions and ZaZa Pay were registered in Arizona, their principal and CEO, Gary Thomas Vojtesak, had a driver's license showing his residence as being in Playa Del Ray, California. Rosenfeld Decl. (Dkt. No. 268) ¶¶ 3-8, Exs. 1-6.
- Vojtesak opened a post office box in Los Angeles, California, that may have been used to receive correspondence about the coupon programs. In addition to references to Vojtesak, information about the California post office box connected it to ZaaZoom email addresses, e.g., linda@zaazoom.com and christi@zaazoom.com, and other business names used to run the coupon programs, e.g., "Payday Resource" and "Market Power Solutions." Rosenfeld Decl. ¶¶ 9-10, Exs. 7-8.
- The ZaaZoom Defendants received consumer complaints at this California post office box and has responded to at least one of those complaints. These consumer complaints echoed the same issues raised in this action, i.e., complaints about unauthorized withdrawals from bank accounts after the account owners applied for payday loans. Rosenfeld Decl. ¶¶ 11-14, Exs. 9-12.
- Vojtesak regularly sent emails about the operation of the ZaaZoom Defendants, and his mobile and fax numbers listed in his emails had a California area code. Rosenfeld

3

1    Decl. ¶¶ 15-18, Exs. 13-16.

2    - The ZaaZoom Defendants' websites were hosted in California. Rosenfeld Decl. ¶ 19,
3      Ex. 17.
4    - After Texas, California residents had the most RCCs created by Jack Henry and
5      deposited with FNBCT. Of the approximately 117,000 RCCs created by Jack Henry
6      and deposited with FNBCT, 11,920 (10 percent) were from California residents.
7      Overall, the ZaaZoom Defendants created 125,320 RCCs in the names of California
8      residents. Rosenfeld Decl. ¶¶ 39-40, Ex. 37 at 1-2.

9    Based on these contacts, the plaintiffs argue that the burden shifts to the defendants to
10   show that foreign law, rather than California law, applies. Mot. (Dkt. No. 267) 6. They claim that
11   the defendants "disregard several significant contacts between California on the one hand and
12   Defendants' misconduct and Class members' injuries on the other hand." Reply (Dkt. No. 278) 3.

13   Marsh again fails to show that due process would allow California law to be applied to a
14   nationwide class. For California's law to be applied in that way, it must have a "significant
15   contact or significant aggregation of contacts *to the claims asserted* by *each* member of the
16   plaintiff class, contacts creating state interests, in order to ensure that the choice of [its] law is not
17   arbitrary or unfair."[2] *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985) (emphases
18   added) (internal quotation marks omitted). The problem for Marsh is that she only provides facts
19   about the actions of the ZaaZoom Defendants and not the defendants that are at issue in this
20   motion: Jack Henry and FNBCT. *See, e.g.*, Reply 3-4. For example, Marsh argues that "the

---

[2] At the hearing, Marsh's counsel cited *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 742 F.3d 377 (9th Cir. 2014), in support of her argument that there are sufficient contacts here to support application of California law to a nationwide class. In that case, the Ninth Circuit held that Washington law could apply in an action involving a Nevada corporation alleged to have committed trademark infringement by selling infringing products "to the public through Internet websites and brick-and-mortar retail stores throughout the United States, including the state of Washington." *Id.* at 381. Although the factual discussion in that opinion is limited, that case is distinguishable because, as the court noted, the defendant had actual locations in Washington from which it committed the alleged wrongdoing. That is far more than what has been shown here about either Jack Henry or FNBCT. In any event, *Experience Hendrix* did not involve a class action and does not help explain the more discrete question of what constitutes "significant contact or significant aggregation of contacts *to the claims asserted* by *each* member of [a] plaintiff class." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (emphases added).

4

ZaaZoom Defendants were a collection of sham Internet companies that have ceased operations and disappeared. There is no evidence that they had the bona fide offices, infrastructure, or manufacturing centers that a legitimate business would have, and which might be used in a conventional choice-of-law analysis." Reply 4. But the negligence and conversion claims involve the RCCs drafted by Jack Henry and deposited by FNBCT, not the conduct of the ZaaZoom Defendants.

There are no new facts showing contacts between Jack Henry and FNBCT with California relating to the class members' claims, only that the CEO of ZaaZoom had a personal residence in California and conducted some business in California, and that approximately 10 percent of the remotely created checks created by Jack Henry and deposited by FNBCT were from California. Opp'n (Dkt. No. 277) 3. While Marsh argues that all the allegations in this case are interrelated, the ZaaZoom Defendants' contacts with California are irrelevant for purposes of the negligence and convergence claims at issue. Based on nearly identical facts relating to Jack Henry and FNBCT, I found that Marsh did not meet her burden of showing sufficient contacts in her initial motion. Marsh again fails to show that a nationwide class based on California negligence and conversion law comports with due process.[3]

## II. MARSH FAILS TO SHOW THAT TEXAS LAW SHOULD APPLY TO A NATIONWIDE CLASS.

### A. Due Process

Marsh argues that Texas law should apply to a nationwide class if I found that California

---

[3] At the hearing, I asked Marsh's counsel whether there is any case in which a court has certified a nationwide class bringing a negligence or conversion cause of action. Counsel identified *Joint Equity Committee of Investors of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp.*, 281 F.R.D. 422 (C.D. Cal. 2012), in which the court certified a nationwide class bringing fraud, negligent misrepresentation, negligence, and aiding and abetting claims under California law. While the motion brief for the plaintiffs in that case argued that the court should apply California law to the nationwide class and that doing so would not offend due process, the defendants never addressed those issues in their opposition brief. *See id.*, No. 10-cv-401, at Dkt. No. 58 at 25, Dkt. No. 153 at 25 n.23. Not surprisingly, the court also did not address those issues. Lacking any discussion about the matter, the case sheds no light on the question before me.

I also asked counsel whether there is any case in which a federal court in California has applied another state's law in a nationwide class action. Counsel was unable to identify any, and I am aware of none.

1  law could not.  "Because [she] seeks to invoke the law of a jurisdiction other than California, she

2  bears the burden of proof."  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187, *opinion*

3  *amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001).

4      Marsh argues that Texas has sufficient contacts with the class members' claims to satisfy

5  due process.  Jack Henry, doing business as ProfitStars, is headquartered in Texas and FNBCT has

6  locations in Texas.  Rosenfeld Decl. ¶¶ 20-25, 32, 33, Exs. 18-23, 30, 31.  Under the proposed

7  class definition, every class member's RCC was created by Jack Henry and deposited with

8  FNBCT.  Reply 5.  Indeed, the defendants concede that "the RCCs [were] authenticated by

9  FNBCT."  Opp'n 4.  And there is no real dispute that the defendants' alleged conduct occurred in

10  Texas.  *See, e.g.*, Rosenfeld Decl. ¶¶ 26-31, Exs. 24-29.  Finally, 11 percent of the proposed class

11  members are in Texas—the largest number of any state.  Rosenfeld Decl. ¶¶ 39-40, Ex. 37, at 2.

12      Marsh has shown that the "modest restriction[ ]" imposed by due process is satisfied.

13  *Phillips Petroleum*, 472 U.S. at 818.  As noted in the Order, the location of the defendant's

14  headquarters is a relevant contact for due process purposes, *In re Charles Schwab Corp. Sec.*

15  *Litig.*, 264 F.R.D. 531, 538 (N.D. Cal. 2009) (Alsup, J.), as well as where the defendant conducts

16  business, *Church v. Consol. Freightways*, No. 90-cv-2290-DLJ, 1992 WL 370829, at *6 (N.D.

17  Cal. Sept. 14, 1992).  Marsh has shown that both defendants are located or headquartered in Texas

18  and that they transact business there.  There is also no dispute that the defendants' alleged conduct

19  occurred in Texas, and Texas has more residents affected by the alleged conduct than any other

20  state.  *See* Rosenfeld Decl. ¶¶ 39-40, Ex. 37, at 1-2.  Based on these facts, due process is not

21  offended by applying Texas law to a nationwide class.  However, a conflict-of-law analysis must

22  still be applied.

23      **B. Choice of Law**

24          **1. Legal Standard**

25      "A federal court sitting in diversity must look to the forum state's choice of law rules to

26  determine the controlling substantive law."  *Zinser*, 253 F.3d at 1187.  "Generally speaking the

27  forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign

28  state.  In such event that party must demonstrate that the latter rule of decision will further the

interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it." *Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 919 (2001) (citations and internal punctuation omitted); *see also Keilholtz v. Lennox Hearth Products Inc.*, 268 F.R.D. 330, 341 (N.D. Cal. 2010) (holding that the party advocating application of foreign law bears the burden of showing that that foreign law should apply).

A court should apply California's three-step governmental interest test to make this determination: (i) the court must first determine whether the relevant law of each of the potentially affected jurisdictions is the same or different; (ii) if there is a difference, the court must examine each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists; and (iii) if there is a true conflict, the court must compare the nature and strength of the interest of each jurisdiction to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then apply the law of the state whose interest would be more impaired. *Id.* This analysis must be performed separately with respect to each state and each claim. *Zinser*, 253 F.3d at 1188.

### 2. Whether the laws of each state differ.

"Under the first step of the governmental interest approach, the foreign law proponent must identify the applicable rule of law in each potentially concerned state and must show it materially differs" from the state whose law is to be applied. *Wash. Mut. Bank*, 24 Cal. 4th at 919-20. "The fact that two or more states are involved does not in itself indicate there is a conflict of laws problem." *Id.* "There can be no injury in applying [one state's] law if it is not in conflict with that of any other jurisdiction connected to this suit." *Phillips Petroleum*, 472 U.S. at 816. If Marsh seeks to apply Texas law to a nationwide class, she must show that there is no conflict between each state's law and Texas's law. *See Zinser*, 253 F.3d at 1188.

Marsh argues that "the law of negligence and conversion is substantially uniform among the 50 states and the District of Columbia," and thus there is no true conflict between Texas's laws and those of other states. Mot. 7. In support of her contention, Marsh has submitted what she says are surveys of state laws on conversion and negligence. Rosenfeld Decl. Ex. 37. Based on her

1   analysis, she argues that the only issue of difference in the laws is with regard to joint and several
2   liability: some states have eliminated joint and several liability in tort claims (e.g., Alaska), while
3   other states have eliminated joint and several liability only for non-intentional torts (e.g., Arizona),
4   while other states still maintain joint and several liability generally (e.g., Alabama). Mot. 7.
5   Marsh asserts that "the question of joint and several liability does not affect the liability of any
6   Defendant; rather, it only affects the apportionment of damages." She claims that "courts
7   addressing choice of law with respect to joint and several liability have severed the joint and
8   several liability issue from the remainder of the tort in deciding what law applies." Mot. 8 (citing
9   *Camp v. Forwarders Transp., Inc.,* 537 F. Supp. 636, 639 (C.D. Cal. 1982); *Browne v. McDonnell*
10  *Douglas Corp.*, 504 F. Supp. 514, 518 (N.D. Cal. 1980); *Caterpillar Tractor Co. v. Teledyne*
11  *Indus., Inc.*, 53 Cal. App. 3d 693, 697-98 (1975)). Thus, she says, differences among states' joint
12  and several liability laws do not create a "material difference" among their conversion and
13  negligence laws. Mot. 8.
14       On the other hand, the defendants argue that Texas law "greatly disadvantages" plaintiffs
15  who live in states which impose joint and several liability because they will not receive full
16  damages if the jury determines that one defendant is less than 50 percent liable and the other is
17  insolvent. Opp'n 8.
18       I am not persuaded that the laws of the states in which proposed class members reside are
19  substantially similar. A review of Marsh's own surveys shows significant differences in the
20  states' laws. For example, while in Delaware, "[c]onversion is always an intentional exercise of
21  dominion or control over the chattel" and "[m]ere Non-Feasance or negligence, without such an
22  intent, is not sufficient for a conversion," in Hawaii, "[c]onversion does not require wrongful
23  intent." Rosenberg Decl. Ex. 37 at 22, 30. Similarly, in Colorado, conversion requires proving
24  ownership and possession, while in Iowa, conversion only requires the "intentional exercise of
25  control over property which [ ] seriously interferes with the right of another to control it."
26  Rosenberg Decl. Ex. 37 at 18, 38. But in Louisiana, conversion may occur if the property is
27  merely "altered" or "used improperly." Rosenberg Decl. Ex. 37 at 44. Nevada, in turn, holds that
28  conversion may occur simply through "an unjustified claim of title to property that causes actual

interference with the owner's rights." Rosenberg Decl. Ex. 37 at 62. Kentucky and Maine have the additional requirement that, to prove conversion, a plaintiff must have made a demand for the property's return which the defendant refused, but few other states have such a requirement. Rosenberg Decl. Ex. 37 at 42, 46. Similarly, in Indiana, money alleged to have been converted "must be a determinate sum with which the defendant *was entrusted to apply to a certain purpose*," Rosenberg Decl. Ex. 37 at 36 (emphasis added), but almost no other states have this requirement.

State laws also appear to differ with regard to negligence. In New Hampshire, whether a duty exists depends on "whether the social importance of protecting the plaintiff's interest outweighs the importance of immunizing the defendant from extended liability." Rosenberg Decl. Ex. 37 at 139. In Nevada, there does not seem to be any balancing required since whether a duty exists depends only on "the aggregate of those policy considerations which cause the law to conclude that protection is owed." Rosenberg Decl. Ex. 37 at 157. Wyoming, however, requires that a duty be "recognized by law." Rosenberg Decl. Ex. 37 at 204. In Colorado, Hawaii, and South Dakota, whether an act was negligent depends on its having been a "substantial factor" in causing the injury. Rosenberg Decl. Ex. 37 at 110, 122; *Musch v. H-D Co-op., Inc.*, 487 N.W.2d 623, 626 (S.D. 1992). Louisiana, Florida, and South Carolina apply a "but for" inquiry. Rosenberg Decl. Ex. 37 at 118, 137, 184. New Jersey makes clear that this distinction matters because it explicitly distinguishes the "but for" test from the "substantial factor" test, Rosenberg Decl. Ex. 37 at 162, and South Dakota has explicitly rejected the "but for" test, *Musch*, 487 N.W.2d at 625. Indeed, the Ninth Circuit has recognized and affirmed a district court's finding that negligence laws differ from state to state. *Zinser*, 253 F.3d at 1188.

Based on these differences that Marsh's own surveys exhibit among state laws, it is clear that the laws conflict. Importantly, the differences appear to be material: for example, the conversion laws vary in their conduct requirement, and some negligence laws vary in their causation requirements. *See Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 590-91 (9th Cir. 2012). These differences can be outcome-determinative. Because the conflicts in the law are material, I must proceed to apply the second step of the choice of law analysis.

### 3. The relative interests of each state.

Where the plaintiff "allege[s] that consumers from [all] states were defrauded into buying [ ] a product in their state[,] . . . all 50 states have an interest in having their own laws applied to the consumer transactions that took place within their borders." *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1102 (C.D. Cal. 2012); *see also Zinser*, 253 F.3d at 1187 ("[E]very state has an interest in having its law applied to its resident claimants."). "Although the [ ] potentially concerned states have different laws, there is still no problem in choosing the applicable rule of law where only one of the states has an interest in having its law applied." *Hurtado v. Super. Ct.*, 11 Cal. 3d 574, 580 (1974). "This means the trial court may properly find [one state's] law applicable without proceeding to the third step in the analysis if the foreign law proponent fails to identify any actual conflict or to establish the other state's interest in having its own law applied." *Wash. Mut. Bank*, 24 Cal. 4th at 920.

Marsh argues that "[n]o state has any interest in fostering the type of business conduct that led to the massive fraud at issue." Mot. 9. She claims that "national and state government agencies have uniformly warned against the use of RCCs and have placed the responsibility of detecting RCC fraud on the processors and banks that create and accept these instruments." Mot. 9. Accordingly, "[t]hese national policy interests outweigh any individual state's interest in applying its own negligence or conversion law." Mot. 9. Marsh cites various statements from the Federal Reserve Bank and the Federal Trade Commission, as well as quotes from a complaint filed by the United States in a related case, but she cites no authority from any court. Mot. 9-11. She asserts that there is a "strong national policy in preventing processors and banks from turning a blind eye to RCC fraud . . . and thus states should feel comfortable subordinating aspects of their laws for the purpose of providing nationwide Class relief." Mot. 11.

Marsh has not carried her burden of identifying any state's relevant interests. While she argues broadly about various "national" policies, she cites no authority to show that they are cognizable in a choice-of-law analysis. As the Ninth Circuit has explained, what matters in deciding whether one state's laws should be applied in favor of other states' laws are the interests of the states whose residents may be affected. *Mazza*, 666 F.3d at 592. The conflict analysis

1  looks at "whether *each* non-forum state has an interest in having its law applied" and "whether
2  *each* non-forum state has an interest outweighing [the] interest" of the state whose law is being
3  proposed for application. *Zinser*, 253 F.3d at 1188 (emphases added). Without detailing those
4  interests, Marsh fails to explain why Texas law should apply, at the exclusion of other states' laws,
5  to the claims of a nationwide class.[4]

6  Marsh argued at the hearing that if I did not certify a nationwide class, putative class
7  members in every state other than California would not obtain any relief from defendants'
8  wrongful conduct. She posited that, surely, every state would want its citizens protected from the
9  fraud that allegedly occurred here. But she proposed no limiting principle, and the logical
10 extension of her argument would eliminate every barrier to any class that seeks certification for
11 multistate or nationwide relief and undermine well-recognized doctrines of federalism. There is
12 no authority for that proposition.

### III.  SUB-CLASSES

Marsh argues that I can still certify a nationwide class applying the laws of 49 states and the District of Columbia.[5]

"Courts routinely deny class certification where the laws of multiple states must be applied . . . ." *Grayson v. 7-Eleven, Inc.*, No. 09-cv-1353, 2011 WL 2414378, at *3 (S.D. Cal. June 10, 2011) (decertifying class bringing conversion claim because of difficulty in applying varying state laws); *but see In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 315 (3d Cir. 1998) ("Courts have expressed a willingness to certify nationwide classes on the ground that relatively minor differences in state law could be overcome at trial by grouping similar state laws together and applying them as a unit."). One court has observed, "no matter how similar—or comparable—each state's law on negligence may be, it is clear—despite

---

[4] Even if Marsh had identified other jurisdictions' relevant interests, I am skeptical that the outcome of this order would have been different because as the Ninth Circuit has noted, "California's interest in applying its law to residents of foreign states is attenuated." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 594 (9th Cir. 2012). In making this observation, the Ninth Circuit cited language from the Supreme Court indicating that states generally have "no legitimate interest in protecting nonresident[s]," *id.* (citing *Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982)), and Marsh has provided no reason to believe that this principle would not also apply to Texas.
[5] There are no proposed class members in West Virginia. Mot. 12 n.2.

1    plaintiffs' argument—that the negligence laws of the fifty states have some differences." *Haley v.*
2    *Medtronic, Inc.*, 169 F.R.D. 643, 653 (C.D. Cal. 1996); *see also Bresson v. Thomson McKinnon*
3    *Sec. Inc.,* 118 F.R.D. 339, 344 (S.D.N.Y. 1988) ("The state laws governing [negligence] claims do
4    vary significantly" and "are therefore unsuited to class treatment."). The Seventh Circuit
5    memorably puts it, "It is no doubt true that at some level of generality the law of negligence is
6    one, not only nationwide but worldwide. . . . [but t]he voices of the quasi-sovereigns that are the
7    states of the United States sing negligence with a different pitch." *Matter of Rhone-Poulenc*
8    *Rorer, Inc.*, 51 F.3d 1293, 1300-01 (7th Cir. 1995) (Posner, J.). Another court has found that
9    variations in only three states' law concerning conversion "militate against a predominance
10   finding." *Jim Moore Ins. Agency, Inc. v. State Farm Mut. Auto. Ins. Co., Inc.*, No. 02-cv-80381,
11   2003 WL 21146714, at *11 (S.D. Fla. May 6, 2003), *report and recommendation adopted*, 2003
12   WL 22097937 (S.D. Fla. Sept. 2, 2003). As the Sixth Circuit explained, "If more than a few of the
13   laws of the fifty states differ, the district judge would face an impossible task of instructing a jury
14   on the relevant law, yet another reason why class certification would not be the appropriate course
15   of action." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996).

16   I decline to certify a nationwide class that will have 50 subclasses applying the laws of 50
17   different jurisdictions. As one court explained, "Although plaintiff contends that this hurdle is not
18   a major problem in the instant case since state laws on negligence [ ] are likely to be quite similar,
19   the problems and complexities raised by having to consider so many different state laws—even if
20   they are relatively the same—convince the Court that class certification would be inappropriate in
21   the instant litigation. . . . As a result, the Court would be forced to go through—and to have the
22   jury go through—an individual analysis of each state's negligence law in order to determine
23   defendant's liability for negligence with regard to each individual defendant." *Haley*, 169 F.R.D.
24   at 653. Such a class would fail to meet the predominance or superiority requirements of Rule 23.
25   *See Zinser*, 253 F.3d at 1190 ("The complexity of the trial would be further exacerbated to the
26   extent that the laws of forty-eight states must be consulted to answer such questions.") (internal
27   punctuation omitted). That would be true here if I adopted Marsh's proposal.
28

12

I have serious concerns about the practicality of such a class action.[6] While it was Marsh's responsibility to provide "a suitable and realistic plan for the trial of the class claims," Order 22, all that she has provided me is a suggestion that I use different jury instructions "state-by-state." Reply 14. That is insufficient. "[A] court cannot rely on assurances of counsel that any problems with predominance or superiority can be overcome." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 742 (5th Cir. 1996). Further, Marsh has not identified a proper representative for each subclass as my Order indicated she must. Order 22. Indeed, Marsh did not even identify a plaintiff for the proposed nationwide class under Texas law. Certification of a class broader than the one I already certified is not warranted.

## CONCLUSION

On her second attempt, Marsh has not carried her burden of showing that California's or another state's laws should apply to non-California residents, or that such a class action is manageable. Accordingly, the renewed motion for certification of a nationwide class for the negligence and conversion causes of action, as well as for appointment of class counsel, is DENIED. The case shall proceed with the California class as previously determined.

**IT IS SO ORDERED.**

Dated: May 19, 2014



WILLIAM H. ORRICK
United States District Judge

---

[6] "It is one thing to apply California law to adjudicate the claims of a California class (this is a normal occurrence) but quite another to [ ] to adjudicate the rights of the residents of the other 49 states. The undersigned judge has worked through this issue in many previous proposed nationwide class actions. When the claims are based on *state* law, as here, the law of fifty states is likely to apply [ ] and it is unmanageable." *Rodriguez v. Instagram, LLC*, No. 12-cv-6482 WHA, 2013 WL 3732883, at *3 (N.D. Cal. July 15, 2013).